David S. Markun (SBN 108067)
Edward S. Zusman (SBN 154366)
Kevin K. Eng (SBN 209036)
Mark A. Ozzello (SBN 116595)
Ari Y. Basser (SBN 272618)
**MARKUN ZUSMAN FRENIERE
& COMPTON LLP**
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Telephone: (310) 454-5900
Fax: (310) 454-5970
dmarkun@mzclaw.com
ezusman@mzclaw.com
keng@mzclaw.com
mozzello@mzclaw.com
abasser@mzclaw.com

*Attorneys for Plaintiff Gaylia Pickles*

Che' D. Williamson (TX SBN 21617150)
Michelle Eddington (TX SBN 24041034)
**WILLIAMSON   LAW   FIRM,   LLC**
1770 St. James Pl. #100
Houston, Texas 77056
Telephone: (713) 523-5500
Fax: (713) 523-5501
che@williamsonlegal.net
meddington@welaw.net

*Attorneys for Plaintiff, Donna Vandiver*
*[Application for pro hac vice to be filed]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLIA PICKLES & DONNA VANDIVER, individually and on behalf of all other similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>KATE SPADE AND COMPANY, a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR:<br><br>1. Violation of the "Unfair" Prong of the UCL;<br>2. Violation of the "Fraudulent" Prong of the UCL;<br>3. Violation of the "Unlawful" Prong of the UCL;<br>4. Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, et seq.;<br>5. Violation of the Consumers Legal Remedies Act, California Civil Code Sections 1750, et seq.; and,<br>6. Violations of the Deceptive Trade Practices Act; Tex. Bus. & Com Code §17.46 et seq.<br><br>**DEMANDED FOR JURY TRIAL** |

Plaintiffs GAYLIA PICKLES and DONNA VANDIVER (collectively "Plaintiffs"), by their undersigned attorneys, on behalf of themselves and upon information and belief as to all matters, bring this class action against Kate Spade and Company ("Kate Spade" or "Defendant") individually and on behalf of all others similarly situated. Plaintiffs allege the following based upon personal knowledge as to the allegations regarding Plaintiffs and on information and belief as to other allegations:

## I.   INTRODUCTION

1.    This is a civil class action filed under the 28 U.S.C. 1332(d)(2) and (6) seeking monetary damages (for all claims for relief except the Fifth and Sixth, as set forth below), restitution, injunctive and declaratory relief from Defendant, Kate Spade and Company, for falsely advertising original prices and corresponding price discounts for its Kate Spade Outlet Products ("Outlet Products"). During the Class Periods (defined below), Kate Spade advertised false former prices and false price discounts for its Kate Spade Outlet Products. The classes consist of a class of California consumers (Class 1) and a class of Texas consumers (Class 2).

2.    As of 2015, Kate Spade operates 159 retail stores in North America comprising of 97 specialty boutique stores and 62 outlet stores in the United States. California and Texas represent the states having the most locations with eight (8) stores located in each state. Kate Spade's in-store advertising scheme used in its outlet stores is the subject of this class action.

3.    During the Class Periods, upon information and belief, Kate Spade misrepresented the existence, nature and amount of price discounts to consumers in its outlet stores by purporting to offer specific percentage discounts from expressly referenced former retail prices, which were represented as "our price" retail prices. Kate Spade's in-store pricing scheme was prominently displayed directly above its products and on tags which made reference to former "our price" retail prices that never existed and/or did not constitute the prevailing market retail prices for such

products within the three months next immediately preceding the publication of the advertisement.   Furthermore, upon check-out, Kate Spade provided consumers, including Plaintiffs, with sales receipts continuing the misrepresentations regarding false price reductions.  For example, the stated discount from the false former price was listed for each item purchased.  Below the original price is a line with large, upper case print stating "50%+20% OFF HANDBAG," followed by the total amount of dollar savings.

4.    The Federal Trade Commission ("FTC") explicitly defines the fictitious pricing scheme employed at Kate Spade Outlet stores as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.   If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price. 16 C.F.R. § 233.1.

5.    Similarly, California statutory and regulatory law expressly prohibits false pricing schemes.   Business & Professions Code § 17501, entitled "Value determination; Former price advertisements," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. (emphasis added).

6.     Kate Spade's false price discounting scheme was disseminated to consumers via its in-store display advertising and was consistent across all of Kate Spade Outlet stores.  Those purposed discounts were false, however, because the referenced former retail prices were fabricated and did not represent Kate Spade's true original retail prices for its Kate Spade Outlet Products.  Furthermore, the advertised original "our price" prices for Kate Spade Outlet Products were not the prevailing market prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

7.     Upon information and belief, thousands of consumers in California and Texas were victims of Kate Spade's deceptive, misleading and unlawful pricing scheme and thousands more will be deceived if Kate Spade's practices continue.

8.     Kate Spade knew that its comparative price advertising was false, deceptive, and misleading as defined by state and federal statutory and regulatory laws.

9.     Kate Spade fraudulently concealed from and intentionally failed to disclose to Plaintiffs and others similarly situated the truth about its advertised price discounts and former prices.

10.     At all relevant times, Kate Spade has been under a duty to Plaintiffs and others similarly situated to disclose the truth about its reference "our price" prices and illusory discounts.

/ / /

/ / /

11.  The facts which Kate Spade misrepresented and/or failed to disclose (and which Kate Spade continues to misrepresent and/or fail to disclose) are material facts that a reasonable person would consider material, i.e., facts which contribute to a reasonable person's decision to purchase apparel and accessories.  Kate Spade's false representations about original "our price" prices and false representations about purported savings, discounts and bargains are objectively material to the reasonable consumer.  Therefore reliance upon such representations may be presumed as a matter of law.

12.  Plaintiffs relied upon such false representations of original "our price" prices and discounts when purchasing apparel at Kate Spade Outlets.  Plaintiffs would not have made such purchases but for Kate Spade's false representations of original "our price" prices and illusory price discounts.

13.  Plaintiffs  reasonably and justifiably acted and relied to their detriment on Kate Spade's false original "our price" price representations and failure to disclose, and concealment of, the truth about Kate Spade's false price-comparison advertising scheme in purchasing apparel from Kate Spade Outlets.

14.  Kate Spade intentionally concealed and failed to disclose the truth about its misrepresentations and false former price advertising scheme for the purpose of inducing Plaintiffs, and others similarly situated, to purchase apparel at Kate Spade Outlet stores.

15.  Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased products at Kate Spade Outlet stores and seek to stop the dissemination of Kate Spade's false, deceptive and misleading advertising, correct the false and misleading perception that Kate Spade has created in the minds of consumers, and to obtain monetary redress for those who have purchased Kate Spade Outlet items. Herein, Plaintiffs allege violations of the consumer protection statutes of the states of California and Texas.

16.     Through its false and deceptive marketing, advertising and pricing scheme, Kate Spade violated (and continues to violate) California and Texas law prohibiting advertising goods for sale as discounted former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.  Specifically, Kate Spade violated (and continues to violate) California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"), California's Business & Professions Code §§17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); the Texas Business and Commerce Code § 17.50 *et seq.;* and, the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a)).

## II.     PARTIES

17.     Plaintiff, GAYLIA PICKLES, is an individual who is a citizen of the city of Los Angeles, in the County of Los Angeles, California.  In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Pickles purchased 1 item from the Kate Spade Outlet store located in Commerce, California, on July 1, 2015, and as detailed herein, was damaged as a result thereof.

18.     Plaintiff, DONNA VANDIVER is an individual who is a citizen of the city of New Braunfels in the County of Comal, Texas. In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Vandiver purchased 2 items from the Kate Spade Outlet store located in San Marcos, Texas, on July 13, 2015 and as detailed herein, was damaged as a result thereof.

19.     Defendant Kate Spade and Company is a publicly traded corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 2 Park Avenue, New York, New York, 10016 and registered to do business in the State of California and the State of Texas.  According to its Form 10-K for the fiscal year ending January 3, 2015, Kate Spade and Company "designs

1  and markets accessories and apparel under three global, multichannel lifestyle brands:

2  Kate Spade New York, KATE SPADE SATURDAY and JACK SPADE." Kate

3  Spade transacts domestic direct-to-consumer sales "through [its] own retail and outlet

4  stores and e-commerce websites."

5      20.   Plaintiffs are informed and believe that each co-defendant, by and

6  through its officers, directors or managing agents ratified, authorized and approved,

7  expressly or implicitly, all of the conduct alleged herein.

8      21.   When in this Complaint reference is made to any act of "Kate Spade" or

9  "Defendant," such shall be deemed to mean that officers, directors, agents,

10 employees, or representatives of Defendant named in this lawsuit committed or

11 authorized such acts, or failed and omitted to adequately supervise or properly control

12 or direct their employees while engaged in the management, direction, operation or

13 control of the affairs of the Defendant and did so while acting within the scope of

14 their employment or agency.

15           **III.**    **JURISDICTION AND VENUE**

16     22.   This Court has original jurisdiction of this action under the Class Action

17 Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has

18 original jurisdiction because the aggregate claims of the members of the putative

19 Class exceed $5 million, exclusive of costs, and at least one of the members of the

20 proposed classes is a citizen of a different state than Kate Spade and Company. The

21 total number of members of the proposed classes is greater than one hundred (100).

22     23.   The Northern District of California has personal jurisdiction over Kate

23 Spade and Company because Kate Spade and Company is licensed and doing

24 business in Alameda County, State of California, authorized to do business in

25 California and registered with the California Secretary of State, has sufficient

26 minimum contacts with California, having intentionally availed itself of the

27 California market so as to render the exercise of jurisdiction over it by this District

28 Court consistent with traditional notions of fair play and substantial justice.

24.     Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. § 1391, because the Defendant named in this action resides, transacts business, or is found within this District, and a substantial part of the events giving rise to Plaintiffs' claims arose here.

25.     The misrepresentations and unfair business practices forming the basis of the claims of Plaintiffs and the classes emanated from California because Kate Spade regularly conducts business and a substantial number of Outlet stores are located in California.   Furthermore, a significant number of Class Members are located in California.

## IV.     FACTUAL ALLEGATIONS

26.     Outlet malls have largely replaced warehouse stores – which typically maintained an inventory of defective and excess merchandise.   Outlet malls have gained popularity amongst consumers for offering products at deep discounts, in some cases as much as 65% off the retail price.[1]

27.     Whereas, traditionally, warehouse outlet stores carried merchandise that was intended for sale at their boutique store counterparts but were not purchased, in an effort to drive higher profit margins, retailers such as Kate Spade Outlet stores began using company-owned outlet stores to sell products that were made exclusively for sale at the outlets and never intended to be sold at non-outlet stores.   In fact, 82% of products at outlet centers are made specifically for the outlets.[2]

28.     On June 16, 2015, California Plaintiff, GAYLIA PICKLES entered the Kate Spade Outlet store located in Commerce, California.   She observed that handbags were advertised with price tags that represented an "our price" value. Above the handbags she observed a sign indicating a 50% discount applicable to all

---

[1] *See,* e.g. http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/; last visited August 28, 2015.  "Although the sign says 65% off the retail price, it is likely that you would have never paid the retail price anyway."

[2] *See,* e.g. http://www.dailyfinance.com/2010/11/02/10-things-outlet-malls-wont-tell-you/; last visited August 28, 2015. "These changes mean outlets are no longer a place to 'dump the crummy stuff'… says Anne Coughlan, a marketing professor at Northwestern's Kellogg School of Management.   In fact, 82% of products at outlet centers are made specifically for the outlets, says NPD Group retail analyst Marshal Cohen.

1  merchandise and an additional 20% discount for handbags.  Believing the "our price"

2  to be an original price and that she could purchase a handbag for significantly less

3  than what those products were worth and normally sell for in the retail marketplace,

4  Ms. Pickles  was induced to purchase a handbag which was offered at a price

5  significantly lower than its stated original price.  Plaintiffs purchased a handbag after

6  relying on Kate Spade's false discounts and false original or former "our price"

7  designation for the product.

8      29.  Specifically, relying on Kate Spade's misrepresentations and false and

9  deceptive advertising, Ms. Pickles  purchased a handbag that contained a Kate Spade

10  green price tag representing it to have an original price of $355.00 and a discount of

11  $213.00, leaving a purchase price or "deal" at $142.00.  She believed and relied on

12  the fact that she was obtaining the handbag at 70% off the original price and that it

13  regularly sold in the retail marketplace for $355.00.  Upon information and belief,

14  these purported original "our price" prices and corresponding price reductions and

15  savings were false and deceptive, as the prevailing retail price for the handbag during

16  the three months immediately prior to Plaintiff's purchase of such item was no more

17  than $142.00, and not the $355.00 original "our price" represented by Kate Spade.

18  Plaintiff would not have purchased the handbag in the absence of Kate Spade's

19  misrepresentations.  Consequently, Ms. Pickles and similar California consumers

20  have been personally victimized by and suffered economic injury as a direct result of

21  Kate Spade's unlawful, unfair and fraudulent conduct.

22      30.  Furthermore, upon check-out on June 11, 2015, Kate Spade provided

23  Ms. Pickles with a sales receipt containing the same misrepresentation regarding the

24  false original price and price reduction on the handbag she purchased.  The false

25  original price is set forth on the line item following the quantity count.  Below the

26  original price is a line with large, upper case print stating "50%+20% OFF

27  HANDBAG," followed by the promised savings of $213.00.

28

31.    Plaintiff would not have purchased the handbag in the absence of Kate Spade's misrepresentations.    Consequently, Ms. Pickles and similar California consumers have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

32.    On July 13, 2015, Texas Plaintiff, DONNA VANDIVER went to the Kate Spade Outlet located in New Braunfels, Texas.  The bags were advertised with price tags that represented an "our price" value.  Believing the "our price" to be an original price and that she could purchase a handbag for 50% less than what those products were worth and normally sell for in the retail marketplace, Ms. Vandiver, was induced to purchase a handbag and a wallet which was offered at a price significantly lower than its stated original price.  She purchased a handbag after relying on Kate Spade's false discounts and false original or former "our price" designations for the products.

33.    Specifically, relying on Kate Spade's misrepresentations and false and deceptive advertising, Ms. Vandiver purchased a handbag and wallet that had attached green Kate Spade price tags representing each to have original prices of $275.00 and $145.00 (respectively) that were advertised in the store at a discount of 50%, leaving a purchase price or "deal" at $137.50 for the handbag and $72.50 for the wallet.   Ms. Vandiver believed and relied on the fact that she was obtaining the handbag and wallet at 50% off the original price and that the handbag regularly sold for $275.00 and the wallet for $145.00 by Kate Spade.

34.    Furthermore, upon check-out on July 13, 2015 Kate Spade provided her with a sales receipt containing the same misrepresentation regarding the false original price and price reduction on the handbag she purchased.  The false original price is set forth on the line item following the quantity count.  Below the original price is a line with large, upper case print stating "50% OFF HANDBAG," followed by the promised savings of $137.50 for the handbag and $72.50 for the wallet for a total savings of $210.00.

35.     Plaintiffs would not have purchased the handbags and wallet in the absence of Kate Spade's misrepresentations.   Consequently, Plaintiffs have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

36.     Plaintiffs' and Class Members' reliance upon Kate Spade's false, illusory price comparison advertising was not only reasonable, but entirely intended by Kate Spade to drive sales and profit margins.   Empirical marketing studies indicate retailers have an incentive to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings...[A] comparative price advertisement can be construed as deceptive if it makes any representation,...or involves any practice that may materially mislead a reasonable consumer.[3]

In sum:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product...Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

37.     Without tracking Kate Spade's advertisements on a daily basis for each and every item, Plaintiffs and all other consumers have no realistic way of knowing which of Kate Spade's current or future price comparisons are false or deceptive. The Court should issue injunctive relief ordering Kate Spade to comply with California's and Texas' comparative price advertising laws, and prohibiting Kate Spade from using the deceptive practices discussed herein.

/ / /

/ / /

---

[3] *Comparative Price Advertising:  Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992).

**COMPLAINT**

1

## V.    CLASS ACTION ALLEGATIONS

2      38.    Plaintiffs incorporate and reallege by reference each and every allegation

3   contained in the preceding paragraphs as if set forth herein in full.

4      39.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure

5   23(a); 23(b)(2) and (b)(3) on behalf the members of the proposed classes.    The

6   proposed California Class is brought by California Plaintiff, Gaylia Pickles (the

7   "California Plaintiff"), and consists of:

8
> All consumers who, while in the State of California, purchased a Kate
9   > Spade wallet or handbag at a Kate Spade Outlet store at a discount of
10  > at least 20% off of the stated original "our price" on the price tag and
> who have not received a refund or credit for their purchase(s) during
11  > the class period of four years preceding the date of the filing of this
12  > lawsuit until the date of disposition of this action. (the "California
> Class").
13

14     40.    Texas Plaintiff Donna Vandiver ("Texas Plaintiff"), also brings this

15  action pursuant to Rule 23 on behalf of a proposed Texas Class which consists of:

16  > All consumers who, while in the State of Texas, purchased a Kate
> Spade wallet or handbag at a Kate Spade Outlet store at a discount of
17  > at least 20% off of the stated original "our price" on the price tag and
18  > who have not received a refund or credit for their purchase(s) during
> the class period of four years preceding the date of the filing of this
19  > lawsuit until the date of disposition of this action. (the "Texas Class").

20

21     41.    Paragraphs 39 and 40 are collectively referred to herein as the

22  subclasses.

23     42.    The claims asserted herein are applicable to all consumers who

24  purchased Kate Spade handbags or wallets at Kate Spade Outlet stores in California

25  and Texas that had Kate Spade price tags that stated an "our price" and were never

26  offered at the original price and advertised as 20% off or more.

27     43.    There is a well-defined community of interest among members of the

28  California Class and the Texas Class, and the disposition of the claims of these

1   members of the classes in a single action will provide substantial benefits to all

2   parties and to the Court.

3        44.   Notice can be provided to the members of the California Class and all

4   members of the Texas Class through publication or otherwise using techniques and a

5   form of notice to those customarily used in consumer class actions arising under

6   California and Texas state and federal law.

7        45.   Excluded from members of the Class are Kate Spade, its parents,

8   subsidiaries, affiliates, officers and directors, any entity in which Kate Spade has a

9   controlling interest, all customers who make a timely election to be excluded,

10  governmental entities, and all judges assigned to hear any aspect of this litigation, as

11  well as their immediate family members.

12       46.   *Numerosity*:  The members of the California Class and Texas Class are

13  so numerous that joinder is impractical.   The California Class and Texas Class

14  consists of thousands of members, the precise number which is within the knowledge

15  of and can be ascertained by resort to Kate Spade's records.   Therefore the classes

16  are sufficiently numerous that joinder of all members of the California Class and

17  Texas Class in a single action is impracticable under Federal Rule of Civil Procedure

18  23(a)(1), and the resolutions of their claims through the procedure of a class action

19  will be of benefit to the parties and the court.

20       47.   *Existence and Predominance of Common Questions of Fact and Law*:

21  This action involves numerous questions of law and fact common to members of the

22  California Class and Texas Class which predominate over any questions affecting

23  only individual members of the classes.   These common questions of law and fact

24  arise out of Kate Spade's practice and policy of engaging in false and deceptive and

25  advertising and pricing schemes in its Outlet Stores include, but are not limited, to the

26  following:

27

28

a.   Whether, during the Class Periods, Kate Spade used false regular or "our price" price tags  and falsely advertised price discounts on Kate Spade Outlet Products;

b.   Whether, during the Class Periods, the "our price" prices advertised by Kate Spade were the prevailing market prices for the Kate Spade Outlet Products during the three month periods preceding the dissemination and/or publication of the advertised former prices;

c.   Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under California Law;

d.   Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under California Law;

e.   Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under Texas Law;

f.   Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under Texas Law; and,

g.   Whether Kate Spade made false and/or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

48.   *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the California Class and Texas Class is economically unfeasible and procedurally impracticable. Furthermore, although the aggregate damages sustained by the California Class and Texas Class may well be in the millions of dollars, the damages suffered by individual Class Members may be relatively small as compared to the cost of litigation, and the expense and burden of individual litigation would make it difficult or impossible for individual members of the California Class and Texas Class to address the wrongs done to them.   The

1  likelihood of individual Class Members prosecuting their own separate claims is
2  remote and, even if every member of the California Class and Texas Class could
3  afford the cost of independently litigating its claim, the cost to the court system of
4  adjudication of such litigation by individual Plaintiffs would be substantial and
5  unduly burdensome.  Individualized litigation would also present the potential for
6  inconsistent or contradictory judgments and would magnify the delay and expense to
7  all parties with multiple trials of complex factual issues of the case. By contrast, the
8  conduct of this action as a class action presents fewer management difficulties,
9  conserves the resources of the parties and the judicial system and protects the right of
10 each member of the California Class and Texas Class.

11      49.  *Typicality*:  The Plaintiffs' claims are typical of the claims of the
12 California Class and Texas Class whom they seek to represent because Plaintiffs and
13 each member of the classes have suffered damages as a result of Kate Spade's
14 wrongful pricing strategy when they purchased goods from Kate Spade Outlet stores
15 that falsely conveyed a fictitious "our price" and purported discount.  Accordingly,
16 Plaintiffs have no interests antagonistic to the interests of any other member of the
17 classes.

18      50.  *Adequacy*:  Plaintiffs are adequate representatives who will fully, fairly
19 and adequately assert and protect the interests of the California Class and Texas
20 Class.  Plaintiffs have retained counsel competent and experienced in class action
21 litigation who will zealously prosecute this matter on behalf of the classes to its
22 conclusion.

23      51.  *Ascertainability*:  Kate Spade keeps extensive computerized records of
24 its customers.  Kate Spade has one or more databases through which a significant
25 majority of Class Members may be identified and ascertained, and it maintains
26 contact information, including email and home mailing addresses, through which
27 notice of this action could be disseminated in accordance with due process
28 requirements.

**COMPLAINT**

1    52.    All Class Members, including Plaintiffs, were exposed to one or more of

2    Kate Spade's misrepresentations or omissions of material fact claiming that former

3    "our price" advertised prices were in fact sold at that price.  Due to the scope and

4    extent of Kate Spade's consistent false price advertising scheme, disseminated

5    through an extensive, years-long campaign to consumers via in-store display

6    advertising, it can be reasonably inferred that such misrepresentations or omission of

7    material fact were uniformly made to all members of California Class and Texas

8    Class.  In addition, it can be reasonably presumed that all Class Members including

9    Plaintiffs, affirmatively acted in response to the representations made through Kate

10   Spade's false advertising scheme when purchasing Kate Spade Products.

12                    **FIRST CLAIM FOR RELIEF**

13                *(Violation of the "Unfair Prong of the UCL)*

14   53.    California Plaintiff incorporates and re alleges by reference each and

15   every allegation contained in the preceding paragraphs as if fully set forth herein.

16   54.    The UCL defines unfair business competition to include any "unlawful,

17   unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

18   misleading" advertising. *Business and Professions Code* § 17200.

19   55.    A business act or practice is "unfair" under the UCL if the reasons,

20   justifications and motives of the alleged wrongdoer are outweighed by the gravity of

21   the harm to the alleged victims.

22   56.    Kate Spade's representation of an inflated "our price" price and

23   corresponding percentage discount price to consumers constituted only a false,

24   misleading and deceptive *illusion* of a discount.  As a result, Kate Spade has violated

25   the "unfair" prong of the UCL by representing to its customers a false "Compare At"

26   price and corresponding percentage discount price for Kate Spade Outlet Products.

27   57.    Such acts and practices are unfair because they induced the California

28   Plaintiff, and are likely to induce consumers, into the false belief that Kate Spade is

1   offering their products with values, discounts or bargains that exceed the prevailing

2   values of other products sold on the marketplace.   Consequently, purchasers,

3   including Plaintiff, reasonably believed that they were obtaining products at a bargain

4   that regularly sold in the non-outlet retail marketplace at substantially higher prices

5   (and were, therefore, worth more) than what they paid.   But for the fact that

6   consumers ascribe an artificially higher value to the Kate Spade Outlet Products, they

7   would not have purchased them.

8        58.   The weight of the harm to members of the California Class that resulted

9   from these unfair acts and practices outweighed any justifiable business reason of

10   Kate Spade for engaging in such deceptive acts and practices.   By committing the

11   acts and practices alleged above, Kate Spade engaged in unfair business practices

12   within the meaning of California Business and Professions Code §§ 17200, *et seq.*

13        59.   Kate Spade's unfair acts and practices have enabled it to improperly

14   obtain money from Plaintiff and the California Class.   As a result of this unjust

15   enrichment, Plaintiff requests that this Court cause Kate Spade to restore this money

16   to Plaintiff and all Class Members, to enjoin Kate Spade from continuing to violate

17   the UCL as discussed herein and/or from violating the UCL in the future.   If such an

18   order is not granted, Plaintiff, members of the Class, and of the general public may be

19   irreparably harmed and/or denied an effective and complete remedy.

20                      **SECOND CLAIM FOR RELIEF**

21                *(Violation of the "Fraudulent" Prong of the UCL)*

22        60.   California Plaintiff incorporates and re alleges by reference each and

23   every allegation contained in the preceding paragraphs as if fully set forth herein.

24        61.   The UCL defines unfair business competition to include any "unlawful,

25   unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

26   misleading" advertising. *Business and Professions Code § 17200.*

27        62.   A business act or practice is "fraudulent" under the UCL if it is likely to

28   deceive members of the consuming public.

63. The Kate Spade price tags on the Kate Spade Outlet Products and advertising materials concerning false former "our price" prices were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class, into believing that Kate Spade Outlets were offering products with value, discounts or bargains as distinct from the prevailing market value or worth of products sold on the market that did not, in fact, exist.

64. Kate Spade's representation of an inflated "our price" price and corresponding percentage discount price deceived consumers into believing that it was offering value, discounts or bargains at Kate Spade Outlet stores as distinct from the prevailing market value or worth of products sold on the market that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff and members of the Class, to buy Kate Spade Outlet Products, which they otherwise would not have purchased.

65. Kate Spade's acts and practice as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. In deciding to purchase Kate Spade Outlet Products, Plaintiff relied on Kate Spade's misleading and deceptive representations regarding its original "our price" and percentage discount prices. Each of these factors contributed to Plaintiff's decision to purchase those products, and Plaintiff and members of the Class would not have purchased those products but for Kate Spade's misrepresentations. Accordingly, Plaintiff and members of the Class suffered monetary loss as a direct result of Kate Spade's pricing practices described herein.

66. Kate Spade's unfair acts and practices have enabled it to improperly obtain revenues and profits from the Plaintiff and the proposed Class that it would not otherwise have obtained but for its false, misleading and deceptive conduct. As a

result of this unjust enrichment, Plaintiff requests that this Court order that Kate Spade restore this money to Plaintiff and all Class Members, to enjoin Kate Spade from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. If such an order is not granted, Plaintiff and the members of the Class may be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CLAIM FOR RELIEF

### *(Violation of the "Unlawful" Prong of the UCL)*

67. California Plaintiff incorporates and re alleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business and Professions Code § 17200.*

69. A business act or practice is "unlawful" under the UCL if it violates any law or regulation. California Business & Professions Code § 17501, entitled "*Value determinations; Former price advertisements,*" expressly prohibits false former pricing schemes, and states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. (emphasis added).

70. Kate Spade also violated and continues to violate Business & Professions Code § 17501 by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next

1    preceding the publication and dissemination of advertisements containing the false

2    former prices.

3         71.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting

4    commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and

5    15 U.S.C. § 52(a)).  The FTC has established guidelines which prohibit false former

6    pricing schemes, similar to Kate Spade's in all material respects, as deceptive

7    practices that would violate the FTCA:

8

9         (a)    One of the most commonly used forms of bargain advertising is
          to offer a reduction from the advertiser's own former price for an
10        article.  If the former price is the actual, bona fide price at which the
          article was offered to the public on a regular basis for a reasonably
11        substantial period of time, it provides a legitimate basis for the
          advertising of a price comparison.  Where the former price is genuine,
12        the bargain being advertised is a true one.  If, on the other hand, the
          former price being advertised is not bona fide but fictitious – for
13        example, where an artificial, inflated price was established for the
14        purpose of enabling the subsequent offer of a large reduction – the
          "bargain" being advertised is a false one; the purchaser is not
15        receiving the unusual value he expects.  In such a case, the "reduced"
16        price is, in reality, probably just the seller's original price.

17

18        (b)    A former price is not necessarily fictitious merely because no
          sales at the advertised price were made.  The advertiser should be
19        especially careful, however, in such a case, that the price is one at
          which the product was openly and actively offered for sale, for a
20        reasonably substantial period of time, in the recent, regular course of
21        her business, honestly and in good faith – and, of course, not for the
          purpose of establishing a fictitious higher price on which a deceptive
22        comparison might be based.  16 C.F.R. § 233.1.
23

24

25        72.    Kate Spade's use of and reference to a materially false "our price" price

26   and purported discounts of "__% off," in connection with its marketing and

27   advertisements concerning the Kate Spade Outlet Products violated and continues to

28   violate the FTCA, 15. U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC

1  Guidelines published at Title 16, C.F.R. § 233.   Kate Spade also violated and
2  continues to violate Cal. Bus. & Prof. Code § 17501, and Cal. Civ. Code § 1770,
3  sections (a)(9) and (a)(13) by advertising false discounts from purported former
4  prices that were, in fact, not the prevailing market prices within three months next
5  preceding the publication and dissemination of advertisements containing the false
6  former prices.

7      73.   Kate Spade's unfair acts and practices have enabled it to improperly
8  obtain revenues and profits from the Plaintiff and the proposed Class Members that it
9  would not otherwise have obtained but for its false, misleading and deceptive
10  conduct.  As a result of this unjust enrichment, Plaintiff requests that this Court cause
11  Kate Spade to restore this money to Plaintiff and all Class Members and to enjoin
12  Kate Spade from continuing to violate the UCL as discussed herein and/or from
13  violating the UCL in the future.   If such an order is not granted, Plaintiff and the
14  Class Members may be irreparably harmed and/or denied an effective and complete
15  remedy.

16  **FOURTH CLAIM FOR RELIEF**

17  *(Violation of the California False Advertising Law, California Business &*
18  *Professions Code Sections 17500, et seq.)*

19      74.   California Plaintiff incorporates and re allege by reference each and
20  every allegation contained in the preceding paragraphs as if fully set forth herein.

21      75.   The California False Advertising Law prohibits unfair, deceptive, untrue,
22  or misleading advertising, including, but not limited to, false statements as to worth,
23  value and former price.

24      76.   Kate Spade's practice of advertising original "our price" sales prices
25  associated with its Kate Spade Outlet Products, which were materially greater than
26  the true prevailing prices of those products was an unfair, deceptive and misleading
27  advertising practice because it gave the reasonable consumer the false impression that
28  the products sold by Kate Spade regularly sold in the retail market price at

1  substantially higher prices (and were, therefore, worth more) than they actually were.

2  In fact, Kate Spade Outlet Products never had a prevailing market price anywhere

3  close to the original "our price" price advertised.

4      77.    Kate Spade's unfair acts and practices have enabled it to improperly

5  obtain revenues and profits from the Plaintiff and the proposed Class that it would not

6  otherwise have obtained but for its false, misleading and deceptive conduct.  As a

7  result of this unjust enrichment, Plaintiff requests that this Court cause Kate Spade to

8  restore this money to Plaintiff and all Class Members and to enjoin Kate Spade from

9  continuing to violate the False Advertising Law as discussed herein and/or from

10  violating the UCL in the future.  If such an order is not granted, Plaintiff and the

11  Class Members may be irreparably harmed and/or denied an effective and complete

12  remedy.

13  **FIFTH CLAIM FOR RELIEF**

14  *(Violation of the Consumers Legal Remedies Act,*

15  *California Civil Code Sections 1750, et seq.: Injunctive Relief)*

16      78.    California Plaintiff incorporates and re alleges by reference each and

17  every allegation contained in the preceding paragraphs as if fully set forth herein.

18      79.    This claim for relief is brought pursuant to the CLRA.

19      80.    Kate Spade's sales of Kate Spade Outlet Products to Plaintiff and to

20  members of the Class were "transactions" within the meaning of California Civil

21  Code § 1761(e).  The products purchased by Plaintiff and members of the Class are

22  "goods" within the meaning of California Civil Code § 1761(a).

23      81.    As described herein, Kate Spade violated the CLRA by falsely

24  representing the nature, existence and amount of price discounts from reference or

25  purported original "our price" sales prices of its Kate Spade Outlet Products where

26  Kate Spade artificially inflated the purported original "our price" prices such that the

27  promised discount, value or bargain was false, in violation of the following prohibited

28  types of conduct articulated in Cal. Civ. Code § 1770, subsections:

(a)(5) "Representing that goods or services have…characteristics…which they do not have."

(a)(7) "Representing that goods or services are of a particular standard, quality, or grade…if they are of another."

(a)(9) "Advertising goods or services with intent not to sell them as advertised."

(a)(13) "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

Kate Spade also violated the CLRA by leading consumers to believe that they were purchasing goods that had characteristics, standards, qualities and grades which they did not possess where Kate Spade represented the nature of its Kate Spade Outlet Products as being designed and manufactured for sale in its retail stores.

82.    Plaintiff relied on Kate Spade's false representations and advertising regarding original prices and discount prices on Kate Spade handbags and wallets offered for sale in its' outlet stores.  Plaintiff would not have purchased such items absent Kate Spade's unlawful conduct.

83.    Pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and members of the Class,  requests that this Court enjoin Kate Spade from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above.   Unless Kate Spade is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

84.    Pursuant to Section 1782(a) of the CLRA, on September 10, 2015, Plaintiff's counsel, on behalf of Plaintiff Pickles, served Kate Spade by United States certified mail, return receipt requested, with notice of Kate Spade's violations of the CLRA and requested that Kate Spade identify victims and remedy its illegal conduct

1   within 30 days.

2       85.   Plaintiff Pickles has requested that Kate Spade timely respond to the

3   CLRA demand notice and presently seeks only injunctive relief pursuant to the

4   CLRA. If Kate Spade fails to fully, completely and timely comply with Plaintiff's

5   demand letter, Plaintiff will amend this complaint to seek damages under the CLRA.

6   Under California Civil Code § 1782(d), after the commencement of an action for

7   injunctive relief, and after compliance with the provisions of Section 1782(a),

8   Plaintiff may amend her complaint without leave of court to include a request for

9   damages.

10   **SIXTH CLAIM FOR RELIEF**

11   *(Violation of the Texas DTPA, Tex. Bus. & Com. Code Sections 17.50 et seq.)*

12       86.   Texas Plaintiff incorporates and re alleges by reference each and every

13   allegation contained in the preceding paragraphs as if fully set forth herein.

14       87.   The Texas Plaintiff brings this cause of action on behalf of the Texas

15   Class.

16       88.   The Texas Plaintiff and the Texas Class are consumers as defined by the

17   Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus.

18   & Com. Code Ann. §17.50, et seq. Kate Spade may be sued under the DTPA. At all

19   times relevant, Kate Spade was a "seller" of goods to Texas consumers.

20       89.   Texas Business and Commerce Code §§ 17.50, et seq., is part of Texas'

21   Deceptive Trade Practices-Consumer Protection Act ("DTPA") and provides in

22   relevant part:

23       (a)   A consumer may maintain an action where any of the following
constitute a producing cause of economic damages or damages

24            for mental anguish:

25          (1)   The use or employment by any person of a false,
misleading, or deceptive act or practice;

26          (2)   breach of an express or implied warranty; [or]

27          (3)   any unconscionable action or course of action by any
person.....

28

90.     The DTPA prohibits conduct directed toward consumers, who in this case were led to believe that they were receiving discounts on Kate Spade products, when in fact those discounts were illusory.  Tex. Bus. & Com. Code §17.46(b)(1) (k) prohibits:

> *Making false or misleading statements of fact concerning the reason*
> *for, existence of, or amount of price reductions.*

91.     Further, under the Texas DTPA, any act or practice prohibited by the Federal Trade Commission pursuant to the Federal Trade Commission Act (FTCA) (15 U.S.C. 45(a)) is also prohibited act under the DTPA. Tex. Bus. & Com Code §17.49(b) provides the following:

> Nothing in this subchapter shall apply to acts or practices authorized under specific rules or regulations promulgated by the Federal Trade Commission under Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. 45(a)(1) ]. <u>The provisions of this subchapter do apply to any act or practice prohibited</u> or not specifically authorized by a rule or regulation of the Federal Trade Commission. An act or practice is not specifically authorized if no rule or regulation has been issued on the act or practice. (emphasis added)

92.     The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements.  (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)).  The FTC has established guidelines which prohibit false former pricing schemes, similar to Kate Spade's, in all material respects, as deceptive practices that would violate the FTCA:

> (a)     One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine,

the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's original price.

(b)    A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. 16 C.F.R. § 233.1.

93.    The DTPA prohibits conduct directed toward consumers, who in this case, were led to believe that they were receiving discounts on Kate Spade products, when in fact those discounts were illusory.  Tex. Bus. & Com. Code §17.46(b)(1) (k) prohibits:

*Making false or misleading statements of fact concerning the reason for, existence of, or amount of price reductions.*

94.    Kate Spade violated the provisions of the DTPA contained in Tex. Bus. & Com. Code§ 17.46(b) which prohibit the following practices:

(a)    Causing confusion or misunderstanding about the source, sponsorship, approval or certification of good or services. (Tex. Bus. & Com. Code §17.46(b)(2));

(b)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. (Tex. Bus. & Com. Code §17.46(b)(5));

/ / /

(c)     Representing that goods or services are of a particular standard, quality or, grade or that goods are of a particular style or model, if they are not. (Tex. Bus. & Com. Code §17.46(b)(7));

(d)     Advertising goods or services with intent not to sell them as advertised. (Tex. Bus. & Com. Code§ 17.46(b)(9));

(e)     Making false or misleading statements of fact concerning the reason for, existence of, or amount of price reductions. (Tex. Bus. & Com. Code § 17.46(b)(11)); and,

(f)     Failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into if the information had been disclosed. (Tex. Bus. & Com. Code § 17.46(b)(24)).

95.     Kate Spade & Company violated the DTPA by falsely representing the nature, existence and amount of price discounts from referenced or purported original sales prices of its Kate Spade Outlet Products where Kate Spade artificially inflated the purported original prices such that the promised discount, value or bargain was false.  Kate Spade & Company also made misrepresentations about the standards, qualities and grades of its Kate Spade Outlet Products.

96.     Kate Spade knew at the time that it made its representations and omissions that they were false. Nevertheless, Defendant took advantage of the Texas Plaintiff and members of the Texas Class by making false and misleading statements about the original price of the goods purchased which were not offered at the original price.

97.     Kate Spade & Company has engaged and continues to engage in conduct in violation of Tex. Bus. & Com Code §17.46 *et seq.* by falsely advertising its products at Kate Spade stores located in outlet malls as on "sale" with % discounts

where the products, namely handbags and wallets, had never been offered by Kate Spade at the "our price" amount, thereby misleading and inducing consumers to purchase handbags believing that they were getting Kate Spade designer handbags at a deeply discounted rate. Kate Spade also advertised and displayed handbags and wallets at its outlet stores which were manufactured only for outlets without disclosing that the merchandise included products that had not been manufactured for, marketed for, or sold at Kate Spade designer boutiques.

98.     Kate Spade further acted unconscionably by committing acts or practices that were to the Texas Plaintiff and the Texas Class' detriments and took advantage of the Texas Plaintiff and the Texas Class' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

99.     Kate Spade's violations of the DTPA were committed knowingly and intentionally.

100.    The Texas Plaintiff and Texas Class Members have sustained "economic damages" as defined in the DTPA as a result of Defendant's violations of the DTPA.

101.    The Texas Plaintiff served notice of her allegations under the DTPA via certified mail return receipt requested pursuant to §17.505 of the Texas Business and Commerce Code, which was received by Kate Spade on September 26, 2015. The Texas Plaintiff agrees to abate this cause of action for sixty days after notice was received.

102.    The Texas Plaintiff and Texas Class Members are entitled to restitution of the money that Kate Spade acquired in violation of the DTPA.   Defendant's conduct was committed "knowingly" as that term is defined in section 17.45(9) in that Kate Spade had actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the Texas Plaintiff's and Class Members' claims.

103.    Kate Spade's conduct was committed "intentionally" as that term is defined in section 17.45(13) in that Defendant had an actual awareness of the falsity,

1    deception, or unfairness of the act or practice, or the condition, defect, or failure

2    constituting a breach of warranty giving rise to the Texas Plaintiff's and Class

3    Members' claims.

4        104.    The Texas Plaintiff and Class Members are entitled to injunctive and

5    other appropriate relief as a result of Kate Spade's violations of the §17.50 *et seq.* of

6    the Texas Business and Commerce Code, including without limitation, an order for

7    restitution, attorneys' fees and costs.

8                  **VI.**    **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the

10    members of the California Class and Texas Class request that this Court award relief

11    against Kate Spade and Company, as follows:

12        1.    For an order certifying that this action may be maintained as a class

13    action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be

14    appointed Class Counsel for the California Class and Texas Class;

15        2.    On the First, Second, Third, and Fourth Claims for Relief:

16             (a)    For an order enjoining Kate Spade from continuing to violate the

17                  UCL and the False Advertising Law as described herein;

18             (b)    For general damages, according to proof;

19             (c)    For restitution and disgorgement, according to proof;

20             (d)    For an award of interest, including prejudgment interest at the

21    legal        rate; and,

22             (e)    For statutory damages, including reasonable attorneys' fees and

23                  costs of suit pursuant to California Civil Code § 1780(d) and Code

24                  of Civil Procedure § 1021.5.

25        3.    On the Fifth and Sixth Claims for Relief:

26             (a)    For injunctive relief only.

27        4.    For such other and further relief as the Court may deem just and proper.

28    / / /

**COMPLAINT**

## VII.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), Plaintiffs hereby demands a trial by jury on all issues so triable.


Date: November 20, 2015          **MARKUN ZUSMAN FRENIERE & COMPTON LLP**


By: _____

Mark A. Ozzello, Esq.
*Attorneys for Plaintiffs Gaylia Pickles and the putative classes*

**COMPLAINT**