David S. Markun (SBN 108067)
Mark A. Ozzello (SBN 150628)
Ari Y. Basser (SBN 272618)
**MARKUN ZUSMAN FRENIERE**
**& COMPTON LLP**
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Telephone: (310) 454-5900
Facsimile:  (310) 454-5970
dmarkun@mzclaw.com
mozzello@mzclaw.com
abasser@mzclaw.com

*[Additional Counsel on Signature Page]*

*Attorneys for Plaintiffs Laura Marks and*
*Gaylia Pickles, individually and on behalf*
*of all those similarly situated*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MARKS, GAYLIA PICKLES & DONNA VANDIVER individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>KATE SPADE AND COMPANY., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 4:15-CV-05329-DMR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Violation of the "Unfair" Prong of the UCL;<br>2. Violation of the "Fraudulent" Prong of the UCL;<br>3. Violation of the "Unlawful" Prong of the UCL;<br>4. Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, et seq.;<br>5. Violation of the Consumers Legal Remedies Act, California Civil Code Sections 1750, et seq.; and,<br>6. Violations of the Deceptive Trade Practices Act; Tex. Bus. & Com Code §17.46 et seq.<br><br>**DEMANDED FOR JURY TRIAL** |

1    Plaintiffs LAURA MARKS, GAYLIA PICKLES and DONNA VANDIVER
2    (collectively "Plaintiffs"), by their undersigned attorneys, on behalf of themselves and
3    upon information and belief as to all matters, bring this class action against Kate Spade
4    and Company ("Kate Spade" or "Defendant") individually and on behalf of all others
5    similarly situated.  Plaintiffs allege the following based upon personal knowledge as to
6    the allegations regarding Plaintiffs and on information and belief as to other
7    allegations:

8                              **I.    <u>INTRODUCTION</u>**

9        1.    This is a civil class action filed under the 28 *U.S.C.* 1332(d)(2) and (6)
10   seeking monetary damages, restitution, injunctive and declaratory relief from
11   Defendant, Kate Spade and Company, for falsely advertising original prices and
12   corresponding price discounts for its Kate Spade Outlet Products ("Outlet Products").
13   During the Class Periods (defined below), Kate Spade advertised false former prices
14   and false price discounts for its Kate Spade Outlet Products.   The classes consist of a
15   class of California consumers (Class 1) and a class of Texas consumers (Class 2).

16       2.    As of 2015, Kate Spade operated 159 retail stores in North America
17   comprising of 97 specialty boutique stores and 62 Outlet stores in the United States.
18   California and Texas represent the states having the most locations with eight (8) stores
19   located in each state.  Kate Spade's in-store advertising scheme used in its Outlet stores
20   is the subject of this class action.

21       3.    During the Class Periods, upon information and belief, Kate Spade
22   misrepresented the existence, nature and amount of price discounts to consumers in its
23   Outlet stores by purporting to offer specific percentage discounts from expressly
24   referenced former retail prices, which were represented as "our price" retail prices.
25   Kate Spade's in-store pricing scheme was prominently displayed directly above its
26   products and on tags which made reference to former "our price" retail prices that never
27   existed and/or did not constitute the prevailing market retail prices for such products
28   within the three months next immediately preceding the publication of the

**FIRST AMENDED COMPLAINT**

1   advertisement.   Furthermore, upon check-out, Kate Spade provided consumers,

2   including Plaintiffs, with sales receipts continuing the misrepresentations regarding

3   false price reductions.  For example, the stated discount from the false former price

4   was listed for each item purchased.  Below the original price is a line with large, upper

5   case print stating "50%+20% OFF HANDBAG" or "40% OFF" followed by the total

6   amount of dollar savings.

7          4.      The Federal Trade Commission ("FTC") explicitly defines the fictitious

8   pricing scheme employed at Kate Spade Outlet stores as deceptive:

9

10             One of the most commonly used forms of bargain
               advertising is to offer a reduction from the advertiser's
11             own former price for an article.  If the former price is the
               actual, bona fide price at which the article was offered to
12             the public on a regular basis for a reasonably substantial
               period of time, it provides a legitimate basis for the
13             advertising of a price comparison.  Where the former price
               is genuine, the bargain being advertised is a true one.  If,
14             on the other hand, the former price being advertised is not
               bona fide but fictitious – for example, where an artificial,
15             inflated price was established for the purpose of enabling
16             the subsequent offer of a large reduction – the "bargain"
               being advertised is a false one; the purchaser is not
17             receiving the unusual value he expects.  In such a case, the
               "reduced" price is, in reality, probably just the seller's
18             regular price.  16 *C.F.R.* § 233.1.
19

20

21

22          5.      Similarly, California statutory and regulatory law expressly prohibits false

23   pricing schemes.   *Business & Professions Code* § 17501, entitled "Value

24   determination; Former price advertisements," states:

25

26             For the purpose of this article the worth or value of anything advertised
               is the prevailing market price, wholesale if the offer is at wholesale,
27             retail if the offer at retail, at the time of publication of such
               advertisement in the locality wherein the advertisement is published.
28

**FIRST AMENDED COMPLAINT**

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. (emphasis added).

6.     Kate Spade's false price discounting scheme was disseminated to consumers via its in-store display advertising and was consistent across all of Kate Spade Outlet stores.  Those purposed discounts were false, however, because the referenced former retail prices were fabricated and did not represent Kate Spade's true original retail prices for its Kate Spade Outlet Products.  Furthermore, the advertised original "our price" prices for Kate Spade Outlet Products were not the prevailing market prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

7.     Upon information and belief, thousands of consumers in California and Texas were victims of Kate Spade's deceptive, misleading and unlawful pricing scheme and thousands more will be deceived if Kate Spade's practices continue.

8.     Kate Spade knew that its comparative price advertising was false, deceptive, and misleading as defined by state and federal statutory and regulatory laws.

9.     Kate Spade fraudulently concealed from and intentionally failed to disclose to Plaintiffs and others similarly situated the truth about its advertised price discounts and former prices.

10.     At all relevant times, Kate Spade has been under a duty to Plaintiffs and others similarly situated to disclose the truth about its reference "our price" prices and illusory discounts.

11.     The facts which Kate Spade misrepresented and/or failed to disclose (and which Kate Spade continues to misrepresent and/or fail to disclose) are material facts that a reasonable person would consider material, i.e., facts which contribute to a reasonable person's decision to purchase apparel and accessories.  Kate Spade's false representations about original "our price" prices and false representations about

**FIRST AMENDED COMPLAINT**

purported savings, discounts and bargains are objectively material to the reasonable consumer.  Therefore reliance upon such representations may be presumed as a matter of law.

12.     Plaintiffs relied upon such false representations of original "our price" prices and discounts when purchasing apparel at Kate Spade Outlets.  Plaintiffs would not have made such purchases but for Kate Spade's false representations of original "our price" prices and illusory price discounts.

13.     Plaintiffs  reasonably and justifiably acted and relied to their detriment on Kate Spade's false original "our price" price representations and failure to disclose, and concealment of, the truth about Kate Spade's false price-comparison advertising scheme in purchasing apparel from Kate Spade Outlets.

14.     Kate Spade intentionally concealed and failed to disclose the truth about its misrepresentations and false former price advertising scheme for the purpose of inducing Plaintiffs, and others similarly situated, to purchase apparel at Kate Spade Outlet stores.

15.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased products at Kate Spade Outlet stores and seek to stop the dissemination of Kate Spade's false, deceptive and misleading advertising, correct the false and misleading perception that Kate Spade has created in the minds of consumers, and to obtain monetary redress for those who have purchased Kate Spade Outlet items. Herein, Plaintiffs allege violations of the consumer protection statutes of the states of California and Texas.

16.     Through its false and deceptive marketing, advertising and pricing scheme, Kate Spade violated (and continues to violate) California and Texas law prohibiting advertising goods for sale as discounted former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Kate Spade violated (and continues to violate) *California's Business & Professions Code* §§ 17200, *et seq*. (the "UCL"), California's Business & Professions

Code §§17500, *et seq*. (the "FAL"), the California Consumers' Legal Remedies Act, *California Civil Code* §§ 1750, *et seq*. (the "CLRA"); the *Texas Business and Commerce Code* § 17.50 *et seq.;* and, the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 *U.S.C.* § 45(a)(1)) and specifically prohibits false advertisements. 15 *U.S.C.* § 52(a)).

## II.   <u>PARTIES</u>

17.     Plaintiff, LAURA MARKS, is an individual who is a citizen of the city of Dublin, in the County of Alameda, California.  In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Marks purchased 2 items from the Kate Spade Outlet store located in Livermore, California, on March 16, 2015, and as detailed herein was damaged as a result thereof.

18.     Plaintiff, GAYLIA PICKLES, is an individual who is a citizen of the city of Los Angeles, in the County of Los Angeles, California.  In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Pickles purchased 1 item from the Kate Spade Outlet store located in Commerce, California, on July 1, 2015, and as detailed herein, was damaged as a result thereof.

19.     Plaintiff, DONNA VANDIVER is an individual who is a citizen of the city of New Braunfels in the County of Comal, Texas. In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Vandiver  purchased 2 items from the Kate Spade Outlet store located in San Marcos, Texas, on July 13, 2015 and as detailed herein, was damaged as a result thereof.

20.     Defendant Kate Spade and Company is a publicly traded corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 2 Park Avenue, New York, New York, 10016 and registered to do business in the State of California and the State of Texas.  According to its Form 10-K for the fiscal year ending January 3, 2015, Kate Spade and Company "designs and markets accessories and apparel under three global, multichannel lifestyle brands:  Kate Spade New York, KATE SPADE SATURDAY and JACK SPADE."  Kate Spade

**FIRST AMENDED COMPLAINT**

1    transacts domestic direct-to-consumer sales "through [its] own retail and outlet stores

2    and e-commerce websites."

3        21.    Plaintiffs are informed and believe that each co-defendant, by and through

4    its officers, directors or managing agents ratified, authorized and approved, expressly

5    or implicitly, all of the conduct alleged herein.

6        22.    When in this Complaint reference is made to any act of "Kate Spade" or

7    "Defendant," such shall be deemed to mean that officers, directors, agents, employees,

8    or representatives of Defendant named in this lawsuit committed or authorized such

9    acts, or failed and omitted to adequately supervise or properly control or direct their

10   employees while engaged in the management, direction, operation or control of the

11   affairs of the Defendant and did so while acting within the scope of their employment

12   or agency.

13               ### III.    JURISDICTION AND VENUE

14       23.    This Court has original jurisdiction of this action under the Class Action

15   Fairness Act of 2005.  Pursuant to 28 *U.S.C.* §§ 1332(d)(2) and (6), this Court has

16   original jurisdiction because the aggregate claims of the members of the putative Class

17   exceed $5 million, exclusive of costs, and at least one of the members of the proposed

18   classes is a citizen of a different state than Kate Spade and Company.  The total number

19   of members of the proposed classes is greater than one hundred (100).

20       24.    The Northern District of California has personal jurisdiction over Kate

21   Spade and Company because Kate Spade and Company is licensed and doing business

22   in Alameda County, State of California, authorized to do business in California and

23   registered with the California Secretary of State, has sufficient minimum contacts with

24   California, having intentionally availed itself of the California market so as to render

25   the exercise of jurisdiction over it by this District Court consistent with traditional

26   notions of fair play and substantial justice.

27       25.    Venue is proper in the United States District Court, Northern District of

28   California pursuant to 28 *U.S.C.* § 1391, because Plaintiff is a resident of Alameda

County, California, the Defendant named in this action resides, transacts business, or is found within this District, and a substantial part of the events giving rise to Plaintiffs' claims arose here.

26.     The misrepresentations and unfair business practices forming the basis of the claims of Plaintiffs and the classes emanated from California because Kate Spade regularly conducts business and a substantial number of Outlet stores are located in California.   Furthermore, a significant number of Class Members are located in California.   The Texas plaintiffs are properly joined in this lawsuit because the allegations of the misrepresentations and unfair business practices of Kate Spade are exactly the same as the California class.  The Texas Plaintiffs causes of action arise out of the same circumstances and conduct of Kate Spade. Further, the Texas plaintiffs have the same questions of law, same defenses, and same claims.

### IV.     FACTUAL ALLEGATIONS

27.     Outlet malls have largely replaced warehouse stores – which typically maintained an inventory of defective and excess merchandise.   Outlet malls have gained popularity amongst consumers for offering products at deep discounts, in some cases as much as 65% off the retail price.[1]

28.     Whereas, traditionally, warehouse outlet stores carried merchandise that was intended for sale at their boutique store counterparts but were not purchased, in an effort to drive higher profit margins, retailers such as Kate Spade Outlet stores began using company-owned outlet stores to sell products that were made exclusively for sale at the outlets and never intended to be sold at non-outlet stores.  In fact, 82% of products at outlet centers are made specifically for the outlets.[2]

---

[1] *See*, e.g. http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/; last visited August 28, 2015.  "Although the sign says 65% off the retail price, it is likely that you would have never paid the retail price anyway."

[2] *See,* e.g. http://www.dailyfinance.com/2010/11/02/10-things-outlet-malls-wont-tell-you/; last visited August 28, 2015. "These changes mean outlets are no longer a place to 'dump the crummy stuff'… says Anne Coughlan, a marketing professor at Northwestern's Kellogg School of Management.  In fact, 82% of products at outlet centers are made specifically for the outlets, says NPD Group retail analyst Marshal Cohen.

**FIRST AMENDED COMPLAINT**

29.   On March 16, 2015, California Plaintiff, LAURA MARKS entered the Kate Spade Outlet store located in Livermore, California.  She observed that handbags and wallets were advertised with price tags that represented an "our price" value. Above the handbags she observed a sign indicating a 40% discount applicable to all merchandise.  Believing the "our price" to be an original price and that she could purchase a handbag and a wallet for significantly less than what those products were worth and normally sell for in the retail marketplace, Ms. Marks was induced to purchase a handbag and a wallet which were offered at a price significantly lower than their stated original price.

30.   Specifically, relying on Kate Spade's misrepresentations and false and deceptive advertising, Ms. Marks purchased a handbag and wallet[3] that had attached green Kate Spade price tags representing each to have original prices of $269.00 and $85.00 (respectively) that were advertised in the store at a discount of 40%, leaving a purchase price or "deal" at $161.40 for the handbag and $51.00 for the wallet.   Ms. Marks believed and relied on the fact that she was obtaining the handbag and wallet at 40% off the original price and that the handbag regularly sold for $269.00 and the wallet for $85.00 by Kate Spade.  Upon information and belief, these purported original "our price" prices and corresponding price reductions and savings were false and deceptive, as the prevailing retail price for the handbag during the three months immediately prior to Plaintiff's purchase of the handbag was no more than $161.40, and not the $269.00 original "our price" represented by Kate Spade, and the prevailing retail price for the wallet during the three months immediately prior to Plaintiff's purchase of the wallet was no more than $51.00, and not the $85.00 "our price" represented by Kate Spade.  Plaintiff would not have purchased the handbag or the wallet in the absence of Kate Spade's misrepresentations.  Consequently, Ms. Marks and similar California consumers have been personally victimized by and suffered

---

[3] *See* Exhibit A to this Complaint.

FIRST AMENDED COMPLAINT

1   economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent

2   conduct.

3       31.    Furthermore, upon check-out on March 16, 2015, Kate Spade provided

4   her with a sales receipt containing the same misrepresentation regarding the false

5   original price and price reduction on the handbag and wallet she purchased.  The false

6   original price is set forth on the line item following the quantity count.  Below the

7   original price is a line with large, upper case print stating "40% OFF," followed by the

8   promised savings of $107.60 for the handbag and $34.00 for the wallet for a total

9   savings of $141.60.[4]

10       32.    Plaintiff would not have purchased the handbag or the wallet in the

11   absence of Kate Spade's misrepresentations.  Consequently, Ms. Marks and similar

12   California consumers have been personally victimized by and suffered economic injury

13   as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

14       33.    On June 16, 2015, California Plaintiff, GAYLIA PICKLES entered the

15   Kate Spade Outlet store located in Commerce, California.  She observed that handbags

16   were advertised with price tags that represented an "our price" value.  Above the

17   handbags she observed a sign indicating a 50% discount applicable to all merchandise

18   and an additional 20% discount for handbags.[5]  Believing the "our price" to be an

19   original price and that she could purchase a handbag for significantly less than what

20   those products were worth and normally sell for in the retail marketplace, Ms. Pickles

21   was induced to purchase a handbag which was offered at a price significantly lower

22   than its stated original price.  Plaintiffs purchased a handbag after relying on Kate

23   Spade's false discounts and false original or former "our price" designation for the

24   product.

25       34.    Specifically, relying on Kate Spade's misrepresentations and false and

26   deceptive advertising, Ms. Pickles  purchased a handbag that contained a Kate Spade

27

28   [4] *See* Exhibit B to this Complaint.
   [5] *See* Exhibit C to this Complaint.

**FIRST AMENDED COMPLAINT**

green price tag representing it to have an original price of $355.00 and a discount of $213.00, leaving a purchase price or "deal" at $142.00.  She believed and relied on the fact that she was obtaining the handbag at 70% off the original price and that it regularly sold in the retail marketplace for $355.00.  Upon information and belief, these purported original "our price" prices and corresponding price reductions and savings were false and deceptive, as the prevailing retail price for the handbag during the three months immediately prior to Plaintiff's purchase of such item was no more than $142.00, and not the $355.00 original "our price" represented by Kate Spade.  Plaintiff would not have purchased the handbag in the absence of Kate Spade's misrepresentations.  Consequently, Ms. Pickles and similar California consumers have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

35.     Furthermore, upon check-out on June 11, 2015, Kate Spade provided Ms. Pickles with a sales receipt containing the same misrepresentation regarding the false original price and price reduction on the handbag she purchased.  The false original price is set forth on the line item following the quantity count.  Below the original price is a line with large, upper case print stating "50%+20% OFF HANDBAG," followed by the promised savings of $213.00.[6]

36.     Plaintiff would not have purchased the handbag in the absence of Kate Spade's misrepresentations.   Consequently, Ms. Pickles and similar California consumers have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

37.     On July 13, 2015, Texas Plaintiff, DONNA VANDIVER went to the Kate Spade Outlet located in New Braunfels, Texas.  The bags were advertised with price tags that represented an "our price" value.  Believing the "our price" to be an original price and that she could purchase a handbag for 50% less than what those products were worth and normally sell for in the retail marketplace, Ms. Vandiver, was induced

---

[6] *See* Exhibit D to this Complaint.

**FIRST AMENDED COMPLAINT**

to purchase a handbag and a wallet which was offered at a price significantly lower than its stated original price.  She purchased a handbag after relying on Kate Spade's false discounts and false original or former "our price" designations for the products.

38.     Specifically, relying on Kate Spade's misrepresentations and false and deceptive advertising, Ms. Vandiver purchased a handbag[7] and wallet[8] that had attached green Kate Spade price tags representing each to have original prices of $275.00 and $145.00 (respectively) that were advertised in the store at a discount of 50%, leaving a purchase price or "deal" at $137.50 for the handbag and $72.50 for the wallet.   Ms. Vandiver believed and relied on the fact that she was obtaining the handbag and wallet at 50% off the original price and that the handbag regularly sold for $275.00 and the wallet for $145.00 by Kate Spade.

39.     Furthermore, upon check-out on July 13, 2015 Kate Spade provided her with a sales receipt containing the same misrepresentation regarding the false original price and price reduction on the handbag she purchased.  The false original price is set forth on the line item following the quantity count.  Below the original price is a line with large, upper case print stating "50% OFF HANDBAG," followed by the promised savings of $137.50 for the handbag and $72.50 for the wallet for a total savings of $210.00.[9]

40.     Plaintiffs would not have purchased the handbags and wallet in the absence of Kate Spade's misrepresentations.   Consequently, Plaintiffs have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

41.     Plaintiffs' and Class Members' reliance upon Kate Spade's false, illusory price comparison advertising was not only reasonable, but entirely intended by Kate Spade to drive sales and profit margins.  Empirical marketing studies indicate retailers have an incentive to engage in this false and fraudulent behavior:

---

[7] See Exhibit E to this Complaint.
[8] See Exhibit F to this Complaint.
[9] *See* Exhibit G to this Complaint.

**FIRST AMENDED COMPLAINT**

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings...[A] comparative price advertisement can be construed as deceptive if it makes any representation,…or involves any practice that may materially mislead a reasonable consumer.[10]

In sum:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

42.   Without tracking Kate Spade's advertisements on a daily basis for each and every item, Plaintiffs and all other consumers have no realistic way of knowing which of Kate Spade's current or future price comparisons are false or deceptive.  The Court should issue injunctive relief ordering Kate Spade to comply with California's and Texas' comparative price advertising laws, and prohibiting Kate Spade from using the deceptive practices discussed herein.

## V.   CLASS ACTION ALLEGATIONS

43.   Plaintiffs incorporate and re allege by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

44.   Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a); 23(b)(2) and (b)(3) on behalf the members of the proposed classes.  The proposed California Class is brought by California Plaintiffs Laura Marks and Gaylia Pickles (the "California Plaintiffs"), and consists of:

---

[10] *Comparative Price Advertising:  Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992.

**FIRST AMENDED COMPLAINT**

> All consumers who, while in the State of California, purchased a Kate Spade wallet or handbag at a Kate Spade Outlet store at a discount of at least 20% off of the stated original "our price" on the price tag and who have not received a refund or credit for their purchase(s) during the class period of four years preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "California Class").

45.     Texas Plaintiff Donna Vandiver ("Texas Plaintiff"), also brings this action pursuant to Rule 23 on behalf of a proposed Texas Class which consists of:

> All consumers who, while in the State of Texas, purchased a Kate Spade wallet or handbag at a Kate Spade Outlet store at a discount of at least 20% off of the stated original "our price" on the price tag and who have not received a refund or credit for their purchase(s) during the class period of four years preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "Texas Class").

46.     Paragraphs 44 and 45 are collectively referred to herein as the subclasses.

47.     The claims asserted herein are applicable to all consumers who purchased Kate Spade handbags or wallets at Kate Spade Outlet stores in California and Texas that had Kate Spade price tags that stated an "our price" and were never offered at the stated original "our price" and advertised as 20% off or more.

48.     There is a well-defined community of interest among members of the California Class and the Texas Class, and the disposition of the claims of these members of the classes in a single action will provide substantial benefits to all parties and to the Court.

49.     Notice can be provided to the members of the California Class and all members of the Texas Class through publication or otherwise using techniques and a form of notice to those customarily used in consumer class actions arising under California and Texas state and federal law.

50.     Excluded from members of the Class are Kate Spade, its parents,

**FIRST AMENDED COMPLAINT**

subsidiaries, affiliates, officers and directors, any entity in which Kate Spade has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51.    *Numerosity*:  The members of the California Class and Texas Class are so numerous that joinder is impractical.  The California Class and Texas Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained by resort to Kate Spade's records.    Therefore, the Classes are sufficiently numerous that joinder of all members of the California Class and Texas Class in a single action is impracticable under Federal Rule of Civil Procedure 23(a)(1), and the resolutions of their claims through the procedure of a class action will be of benefit to the parties and the court.

52.    *Existence and Predominance of Common Questions of Fact and Law*: This action involves numerous questions of law and fact common to members of the California Class and Texas Class which predominate over any questions affecting only individual members of the classes.  These common questions of law and fact arise out of Kate Spade's practice and policy of engaging in false and deceptive and advertising and pricing schemes in its Outlet Stores include, but are not limited, to the following:

   a.    Whether, during the Class Periods, Kate Spade used false regular or "our price" price tags  and falsely advertised price discounts on Kate Spade Outlet Products;

   b.    Whether, during the Class Periods, the "our price" prices advertised by Kate Spade were the prevailing market prices for the Kate Spade Outlet Products during the three month periods preceding the dissemination and/or publication of the advertised former prices;

   c.    Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under California Law;

d.   Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under California Law;

e.   Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under Texas Law;

f.   Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under Texas Law; and,

g.   Whether Kate Spade made false and/or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

53.   *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the California Class and Texas Class is economically unfeasible and procedurally impracticable. Furthermore, although the aggregate damages sustained by the California Class and Texas Class may well be in the millions of dollars, the damages suffered by individual Class Members may be relatively small as compared to the cost of litigation, and the expense and burden of individual litigation would make it difficult or impossible for individual members of the California Class and Texas Class to address the wrongs done to them.  The likelihood of individual Class Members prosecuting their own separate claims is remote and, even if every member of the California Class and Texas Class could afford the cost of independently litigating its claim, the cost to the court system of adjudication of such litigation by individual Plaintiffs would be substantial and unduly burdensome.  Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties with multiple trials of complex factual issues of the case. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the judicial system and protects the right of each member of the California Class and Texas Class.

54. *Typicality*:  The Plaintiffs' claims are typical of the claims of the California Class and Texas Class whom they seek to represent because Plaintiffs and each member of the Classes have suffered damages as a result of Kate Spade's wrongful pricing strategy when they purchased goods from Kate Spade Outlet stores that falsely conveyed a fictitious "our price" and purported discount.  Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the classes.

55. *Adequacy*:  Plaintiffs are adequate representatives who will fully, fairly and adequately assert and protect the interests of the California Class and Texas Class. Plaintiffs have retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Classes to its conclusion.

56. *Ascertainability*:  Kate Spade keeps extensive computerized records of its customers.  Kate Spade has one or more databases through which a significant majority of Class Members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

57. All Class Members, including Plaintiffs, were exposed to one or more of Kate Spade's misrepresentations or omissions of material fact claiming that former "our price" advertised prices were in fact sold at that price.  Due to the scope and extent of Kate Spade's consistent false price advertising scheme, disseminated through an extensive, years-long campaign to consumers via in-store display advertising, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of California Class and Texas Class.  In addition, it can be reasonably presumed that all Class Members including Plaintiffs, affirmatively acted in response to the representations made through Kate Spade's false advertising scheme when purchasing Kate Spade Products.

//

//

**FIRST AMENDED COMPLAINT**

**FIRST CAUSE OF ACTION**

*(Violation of the "Unfair Prong of the UCL)*

58.    California Plaintiffs incorporate and re allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business and Professions Code* § 17200.

60.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

61.    Kate Spade's representation of an inflated "our price" price and corresponding percentage discount price to consumers constituted only a false, misleading and deceptive *illusion* of a discount.  As a result, Kate Spade has violated the "unfair" prong of the UCL by representing to its customers a false "our price" price and corresponding percentage discount price for Kate Spade Outlet Products.

62.    Such acts and practices are unfair because they induced the California Plaintiffs, and are likely to induce consumers, into the false belief that Kate Spade is offering their products with values, discounts or bargains that exceed the prevailing values of other products sold on the marketplace.  Consequently, purchasers, including Plaintiffs, reasonably believed that they were obtaining products at a bargain that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  But for the fact that consumers ascribe an artificially higher value to the Kate Spade Outlet Products, they would not have purchased them.

63.    The weight of the harm to members of the California Class that resulted from these unfair acts and practices outweighed any justifiable business reason of Kate Spade for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Kate Spade engaged in unfair business practices within the

1   meaning of *California Business and Professions Code* §§ 17200, *et seq.*

2   64.   Kate Spade's unfair acts and practices have enabled it to improperly

3   obtain money from Plaintiffs and the California Class.  As a result of this unjust

4   enrichment, Plaintiffs request that this Court cause Kate Spade to restore this money to

5   Plaintiff and all Class Members, to enjoin Kate Spade from continuing to violate the

6   UCL as discussed herein and/or from violating the UCL in the future.  If such an order

7   is not granted, Plaintiffs, members of the Class, and of the general public may be

8   irreparably harmed and/or denied an effective and complete remedy.

9                           **SECOND CAUSE OF ACTION**

10               ***(Violation of the "Fraudulent" Prong of the UCL)***

11   65.   California Plaintiffs incorporate and re allege by reference each and every

12   allegation contained in the preceding paragraphs as if fully set forth herein.

13   66.   The UCL defines unfair business competition to include any "unlawful,

14   unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

15   misleading" advertising.  *Business and Professions Code § 17200.*

16   67.   A business act or practice is "fraudulent" under the UCL if it is likely to

17   deceive members of the consuming public.

18   68.   The Kate Spade price tags on the Kate Spade Outlet Products and

19   advertising materials concerning false former "our price" prices were "fraudulent"

20   within the meaning of the UCL because they deceived Plaintiffs, and were likely to

21   deceive members of the Class, into believing that Kate Spade Outlets were offering

22   products with value, discounts or bargains as distinct from the prevailing market value

23   or worth of products sold on the market that did not, in fact, exist.

24   69.   Kate Spade's representation of an inflated "our price" price and

25   corresponding percentage discount price deceived consumers into believing that it was

26   offering value, discounts or bargains at Kate Spade Outlet stores as distinct from the

27   prevailing market value or worth of products sold on the market that did not, in fact,

28   exist.   As a result, purchasers, including Plaintiffs, reasonably perceived that they

**FIRST AMENDED COMPLAINT**

1   were receiving products that regularly sold in the non-outlet retail marketplace at

2   substantially higher prices (and were, therefore, worth more) than what they paid.  This

3   perception induced reasonable purchasers, including Plaintiffs and members of the

4   Class, to buy Kate Spade Outlet Products, which they otherwise would not have

5   purchased.

6        70.    Kate Spade's acts and practice as described herein have deceived

7   Plaintiffs and were highly likely to deceive members of the consuming public.  In

8   deciding to purchase Kate Spade Outlet Products, Plaintiffs relied on Kate Spade's

9   misleading and deceptive representations regarding its original "our price" and

10  percentage discount prices.  Each of these factors contributed to Plaintiffs' decision to

11  purchase those products, and Plaintiffs and members of the Class would not have

12  purchased those products but for Kate Spade's misrepresentations.  Accordingly,

13  Plaintiffs and members of the Class suffered monetary loss as a direct result of Kate

14  Spade's pricing practices described herein.

15       71.    Kate Spade's unfair acts and practices have enabled it to improperly

16  obtain revenues and profits from the Plaintiffs and the proposed Class that it would not

17  otherwise have obtained but for its false, misleading and deceptive conduct.  As a result

18  of this unjust enrichment, Plaintiffs request that this Court order that Kate Spade restore

19  this money to Plaintiffs and all Class Members, to enjoin Kate Spade from continuing

20  to violate the UCL as discussed herein and/or from violating the UCL in the future.  If

21  such an order is not granted, Plaintiffs and the members of the Class may be irreparably

22  harmed and/or denied an effective and complete remedy.

23  **THIRD CAUSE OF ACTION**

24  *(Violation of the "Unlawful" Prong of the UCL)*

25       72.    California Plaintiffs incorporate and re allege by reference each and every

26  allegation contained in the preceding paragraphs as if fully set forth herein.

27       73.    The UCL defines unfair business competition to include any "unlawful,

28  unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

1  misleading" advertising. *Business and Professions Code § 17200.*

2  74.    A business act or practice is "unlawful" under the UCL if it violates any

3  law or regulation. California Business & Professions Code § 17501, entitled "*Value*

4  *determinations; Former price advertisements*," expressly prohibits false former pricing

5  schemes, and states:

6

7            For the purpose of this article the worth or value of
             anything advertised is the prevailing market price,
8            wholesale if the offer is at wholesale, retail if the offer at
             retail, at the time of publication of such advertisement in
9            the locality wherein the advertisement is published.

10

11           *No price shall be advertised as a former price of any*
             *advertised thing, unless the alleged former price was the*
12           *prevailing market price as above defined within three*
             *months next immediately preceding the publication of the*
13           *advertisement* or unless the date when the alleged former
             price did prevail is clearly, exactly and conspicuously
14           stated in the advertisement. (emphasis added).

15

16  75.    Kate Spade also violated and continues to violate *Business & Professions*

17  *Code* § 17501 by advertising false discounts from purported former prices that were,

18  in fact, not the prevailing market prices within three months next preceding the

19  publication and dissemination of advertisements containing the false former prices.

20  76.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting

21  commerce" and specifically prohibits false advertisements.  (15 *U.S.C.* § 45(a)(1) and

22  15 *U.S.C.* § 52(a)).  The FTC has established guidelines which prohibit false former

23  pricing schemes, similar to Kate Spade's in all material respects, as deceptive practices

24  that would violate the FTCA:

25

26           (a)    One of the most commonly used forms of bargain
             advertising is to offer a reduction from the advertiser's
27           own former price for an article.  If the former price is the
             actual, bona fide price at which the article was offered to

28

**FIRST AMENDED COMPLAINT**

the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's original price.

(b)    A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. 16 *C.F.R.* § 233.1.

77.    Kate Spade's use of and reference to a materially false "our price" price and purported discounts of "__% off," in connection with its marketing and advertisements concerning the Kate Spade Outlet Products violated and continues to violate the FTCA, 15. *U.S.C.* § 45(a)(1) and 15 *U.S.C.* § 52(a), as well as FTC Guidelines published at Title 16, *C.F.R.* § 233. Kate Spade also violated and continues to violate *Cal. Bus. & Prof. Code* § 17501, and *Cal. Civ. Code* § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

78.    Kate Spade's unfair acts and practices have enabled it to improperly obtain revenues and profits from the Plaintiffs and the proposed Class Members that it would not otherwise have obtained but for its false, misleading and deceptive conduct.

FIRST AMENDED COMPLAINT

1   As a result of this unjust enrichment, Plaintiffs request that this Court cause Kate Spade

2   to restore this money to Plaintiffs and all Class Members and to enjoin Kate Spade

3   from continuing to violate the UCL as discussed herein and/or from violating the UCL

4   in the future.  If such an order is not granted, Plaintiffs and the Class Members may be

5   irreparably harmed and/or denied an effective and complete remedy.  (*F.R.C.P.* 23 (a)).

6   **FOURTH CAUSE OF ACTION**

7   *(Violation of the California False Advertising Law, California Business &*

8   *Professions Code Sections 17500, et seq.)*

9   79.   California Plaintiffs incorporate and re allege by reference each and every

10   allegation contained in the preceding paragraphs as if fully set forth herein.

11   80.   The California False Advertising Law prohibits unfair, deceptive, untrue,

12   or misleading advertising, including, but not limited to, false statements as to worth,

13   value and former price.

14   81.   Kate Spade's practice of advertising original "our price" sales prices

15   associated with its Kate Spade Outlet Products, which were materially greater than the

16   true prevailing prices of those products was an unfair, deceptive and misleading

17   advertising practice because it gave the reasonable consumer the false impression that

18   the products sold by Kate Spade regularly sold in the retail market price at substantially

19   higher prices (and were, therefore, worth more) than they actually were.  In fact, Kate

20   Spade Outlet Products never had a prevailing market price anywhere close to the

21   original "our price" price advertised.

22   82.   Kate Spade's unfair acts and practices have enabled it to improperly

23   obtain revenues and profits from the Plaintiffs and the proposed Class that it would not

24   otherwise have obtained but for its false, misleading and deceptive conduct.  As a result

25   of this unjust enrichment, Plaintiffs request that this Court cause Kate Spade to restore

26   this money to Plaintiffs and all Class Members and to enjoin Kate Spade from

27   continuing to violate the False Advertising Law as discussed herein and/or from

28   violating the UCL in the future.  If such an order is not granted, Plaintiffs and the Class

Members may be irreparably harmed and/or denied an effective and complete remedy.

## FIFTH CAUSE OF ACTION

### *(Violation of the Consumers Legal Remedies Act,*

### *California Civil Code Sections 1750, et seq.)*

83. California Plaintiffs incorporate and re allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84. This claim for relief is brought pursuant to the CLRA.

85. Kate Spade's sales of Kate Spade Outlet Products to Plaintiffs and to members of the Class were "transactions" within the meaning of *California Civil Code* § 1761(e). The products purchased by Plaintiffs and members of the Class are "goods" within the meaning of *California Civil Code* § 1761(a).

86. As described herein, Kate Spade violated the CLRA by falsely representing the nature, existence and amount of price discounts from reference or purported original "our price" sales prices of its Kate Spade Outlet Products where Kate Spade artificially inflated the purported original "our price" prices such that the promised discount, value or bargain was false, in violation of the following prohibited types of conduct articulated in *Cal. Civ. Code* § 1770, subsections:

> (a)(5) "Representing that goods or services have…characteristics…which they do not have."
>
> (a)(7) "Representing that goods or services are of a particular standard, quality, or grade…if they are of another."
>
> (a)(9) "Advertising goods or services with intent not to sell them as advertised."
>
> (a)(13) "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

Kate Spade also violated the CLRA by leading consumers to believe that they were

purchasing goods that had characteristics, standards, qualities and grades which they did not possess where Kate Spade represented the nature of its Kate Spade Outlet Products as being designed and manufactured for sale in its retail stores.

87.   Plaintiffs relied on Kate Spade's false representations and advertising regarding original prices and discount prices on Kate Spade handbags and wallets offered for sale in its' Outlet stores.  Plaintiffs would not have purchased such items absent Kate Spade's unlawful conduct.

88.   Pursuant to *California Civil Code* § 1780(a)(2), Plaintiffs, on behalf of themselves and members of the Class,  request that this Court enjoin Kate Spade from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above.  Unless Kate Spade is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers will be damaged by its acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

89.   Pursuant to Section 1782(a) of the CLRA, on September 10, 2015, Plaintiff's counsel provided proper notice of her intent to pursue claims under the CLRA and an opportunity to cure to Defendant via certified mail, return receipt requested, to its principal place of business at 2 Park Avenue, New York, N.Y., 10016 and to its registered agent at 818 W. Seventh Street, Los Angeles, C.A., 90017. Counsel for Defendant acknowledged receipt of the notice on October 27, 2015 and on December 4, 2015 and rejected the opportunity to cure by December 7, 2015.

90.   Kate Spade failed to fully, completely and timely comply with Plaintiffs' demand letter.  Consequently, under *California Civil Code* § 1782(d), Plaintiffs seek to enjoin Kate Spade from continuing to violate the CLRA, and request damages.

## SIXTH CAUSE OF ACTION

***(Violation of the Texas DTPA, Tex. Bus. & Com. Code Sections 17.50 et seq.)***

91.   The Texas Plaintiff incorporates and re alleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.   The Texas Plaintiff brings this cause of action on behalf of the Texas

Class.

93.     The Texas Plaintiff and the Texas Class are consumers as defined by the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), *Tex. Bus. & Com. Code* Ann. §17.50, et seq. Kate Spade may be sued under the DTPA. At all times relevant, Kate Spade was a "seller" of goods to Texas consumers.

94.     *Texas Business and Commerce Code* §§ 17.50, et seq., is part of Texas' Deceptive Trade Practices-Consumer Protection Act ("DTPA") and provides in relevant part:

> (a)     A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
>
> (1)     The use or employment by any person of a false, misleading, or deceptive act or practice;
> (2)     breach of an express or implied warranty; [or]
> (3)     any unconscionable action or course of action by any person…..

95.     The DTPA prohibits conduct directed toward consumers, who in this case were led to believe that they were receiving discounts on Kate Spade products, when in fact those discounts were illusory.  *Tex. Bus. & Com. Code* §17.46(b)(1) (k) prohibits:

> Making false or misleading statements of fact concerning the reason for, existence of, or amount of price reductions.

96.     Further, under the Texas DTPA, any act or practice prohibited by the Federal Trade Commission pursuant to the Federal Trade Commission Act (FTCA) (15 *U.S.C.* 45(a)) is also prohibited act under the DTPA. *Tex. Bus. & Com Code* §17.49(b) provides the following:

> Nothing in this subchapter shall apply to acts or practices authorized under specific rules or regulations promulgated by the Federal Trade Commission under Section 5(a)(1) of

the Federal Trade Commission Act [15 U.S.C.A. 45(a)(1) ]. <u>The provisions of this subchapter do apply to any act or practice prohibited</u> or not specifically authorized by a rule or regulation of the Federal Trade Commission. An act or practice is not specifically authorized if no rule or regulation has been issued on the act or practice. (emphasis added)

97.     The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements.  (15 *U.S.C.* § 45(a)(1) and 15 *U.S.C.* § 52(a)).  The FTC has established guidelines which prohibit false former pricing schemes, similar to Kate Spade's, in all material respects, as deceptive practices that would violate the FTCA:

(a)     One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's original price.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not

for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  16 *C.F.R.* § 233.1.

98.   Kate Spade violated the provisions of the DTPA contained in *Tex. Bus. & Com. Code* § 17.46(b) which prohibit the following practices:

(a)   Causing confusion or misunderstanding about the source, sponsorship, approval or certification of good or services. (Tex. Bus. & Com. Code §17.46(b)(2));

(b)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. (Tex. Bus. & Com. Code §17.46(b)(5));

(c)   Representing that goods or services are of a particular standard, quality or, grade or that goods are of a particular style or model, if they are not.  (Tex. Bus. & Com. Code §17.46(b)(7));

(d)   Advertising goods or services with intent not to sell them as advertised.  (Tex. Bus. & Com. Code§ 17.46(b)(9));

(e)   Making false or misleading statements of fact concerning the reason for, existence of, or amount of price reductions. (Tex. Bus. & Com. Code § 17.46(b)(11)); and,

(f)   Failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into if the information had been disclosed. (Tex. Bus. & Com. Code § 17.46(b)(24)).

99.   Kate Spade violated the DTPA by falsely representing the nature, existence and amount of price discounts from referenced or purported original sales prices of its Kate Spade Outlet Products where Kate Spade artificially inflated the purported original prices such that the promised discount, value or bargain was false.

1    Kate Spade also made misrepresentations about the standards, qualities and grades of

2    its Kate Spade Outlet Products.

3          100.   Kate Spade knew at the time that it made its representations and omissions

4    that they were false.  Nevertheless, Defendant took advantage of the Texas Plaintiff

5    and members of the Texas Class by making false and misleading statements about the

6    original price of the goods purchased which were not offered at the original price.

7          101.   Kate Spade has engaged and continues to engage in conduct in violation

8    of *Tex. Bus. & Com Code* §17.46 *et seq.* by falsely advertising its products at Kate

9    Spade stores located in outlet malls as on "sale" with % discounts where the products,

10   namely handbags and wallets, had never been offered by Kate Spade at the "our price"

11   amount, thereby misleading and inducing consumers to purchase handbags believing

12   that they were getting Kate Spade designer handbags at a deeply discounted rate. Kate

13   Spade also advertised and displayed handbags and wallets at its Outlet stores which

14   were manufactured only for outlets without disclosing that the merchandise included

15   products that had not been manufactured for, marketed for, or sold at Kate Spade

16   designer boutiques.

17         102.   Kate Spade further acted unconscionably by committing acts or practices

18   that were to the Texas Plaintiff and the Texas Class' detriments and took advantage of

19   the Texas Plaintiff and the Texas Class' lack of knowledge, ability, experience, or

20   capacity to a grossly unfair degree.

21         103.   Kate Spade's violations of the DTPA were committed knowingly and

22   intentionally.

23         104.   The Texas Plaintiff and Texas Class Members have sustained "economic

24   damages" as defined in the DTPA as a result of Defendant's violations of the DTPA.

25         105.   The Texas Plaintiff served notice of her allegations under the DTPA via

26   certified mail return receipt requested pursuant to  §17.505 of the Texas Business and

27   Commerce Code, which was received by Kate Spade on September 26, 2015. The

28   Texas Plaintiff agreed to abate this cause of action for sixty days after notice was

1    received. Kate Spade failed to fully, completely and timely comply with Plaintiff's

2    demand.

3        106.   The Texas Plaintiff and Texas Class Members are entitled to restitution of

4    the money that Kate Spade acquired in violation of the DTPA.  Defendant's conduct

5    was committed "knowingly" as that term is defined in Section 17.45(9) in that Kate

6    Spade had actual awareness, at the time of the act or practice complained of, of the

7    falsity, deception, or unfairness of the act or practice giving rise to the Texas Plaintiff's

8    and Class Members' claims.

9        107.   Kate Spade's conduct was committed "intentionally" as that term is

10   defined in Section 17.45(13) in that Defendant had an actual awareness of the falsity,

11   deception, or unfairness of the act or practice, or the condition, defect, or failure

12   constituting a breach of warranty giving rise to the Texas Plaintiff's and Class

13   Members' claims.

14       108.   The Texas Plaintiff and Class Members are entitled to injunctive and other

15   appropriate relief as a result of Kate Spade's violations of  the §17.50  *et seq*. of the

16   *Texas Business and Commerce Code*, including without limitation, an order for

17   damages, attorneys' fees, costs and treble damages if the conduct was committed

18   knowingly.

19                    **VI.   PRAYER FOR RELIEF**

20       WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the members

21   of the California Class and Texas Class request that this Court award relief against Kate

22   Spade and Company, as follows:

23       1.    For an order certifying that this action may be maintained as a class action,

24   that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed

25   Class Counsel for the California Class and Texas Class;

26       2.    For an order enjoining Kate Spade from continuing to violate the UCL

27   and the False Advertising Law as described herein;

28       3.    For general damages, according to proof;

**FIRST AMENDED COMPLAINT**

1        4.      For restitution and disgorgement, according to proof;

2        5.      For an award of interest, including prejudgment interest at the legal rate;

3        6.      For statutory damages, including reasonable attorneys' fees and costs of

4 suit pursuant to *California Civil Code* § 1780(d) and *Code of Civil Procedure* § 1021.5;

5        7.      For statutory damages including reasonable attorneys' fees, costs of suit

6 and treble damages if Defendant's conduct was done knowingly; and,

7        8.      For such other and further relief as the Court may deem just and proper.

8 

**VII.    DEMAND FOR JURY TRIAL**

9        Pursuant to *Federal Rules of Civil Procedure*, Rule 38(b), Plaintiffs hereby

10 demands a trial by jury on all issues so triable.

11

12 Date: January 20, 2016        **MARKUN ZUSMAN FRENIERE &**

13        **COMPTON LLP**

14             By:    /s/____*[David S. Markun*_____

15               David S. Markun, Esq.

16        *Attorneys for Plaintiffs Laura Marks, Gaylia Pickles*

17        *and the putative California Class.*

18        **WILLIAMSON LAW FIRM, LLC**

19        Che' D. Williamson (TX SBN 21617150)

20        Michelle Eddington (TX SBN 24041034)
       1770 St. James Pl. #100

21        Houston, Texas 77056

22        Telephone: (713) 523-5500
       Fax: (713) 523-5501

23        che@williamsonlegal.net
       meddington@welaw.net

24

25        *Attorneys for Plaintiff Donna Vandiver, and the*

26        *putative Texas Class.*

27        *[Admitted pro hac vice]*

28

31

**FIRST AMENDED COMPLAINT**

# EXHIBIT A



# EXHIBIT B



♠

# kate spade
### NEW YORK

2920 LIVERMORE OUTLETS DRIVE SPACE 220
LIVERMORE, CA 94551
925-455-1180

Trans: 6796       Date: 3/16/15 11:01
Store: 1841       Register: 21
Salesperson: Neda N.
Cashier: Alexis B.

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| ROMY | | | |
| 098689821504 | 1 | 269.00 | 161.40 |
| | | | |
| 40% OFF | | | (107.60) |
| DARLA | | | |
| 098689824574 | 1 | 85.00 | 51.00 |
| | | | |
| 40% OFF | | | (34.00) |

| | | |
|---|---|---|
| Subtotal | | 212.40 |
| Tax | | 19.12 |
| **Total:** | | **231.52** |

Gift Card                      100.00
    ****************9803
    Auth. No. 000000
    Transaction Type: Sale
Visa                           131.52
    ************7510
    Auth. No. 03731C
    Transaction Type: Sale
    Entry Method: Swiped
    Auth Time: 11:01 AM

Cardholder will pay the card issuer above
amount pursuant to cardholder agreement.

_____

Change                           0.00

new, unused merchandise purchased at a
kate spade new york outlet store in the

# EXHIBIT C



# EXHIBIT D



♠

# kate spade

NEW YORK

100 CITADEL DRIVE SUITE 639
COMMERCE, CA 90040
323-724-1633

Trans: 55690      Date: 6/11/15 20:04
Store: 1849      Register: 2
 Salesperson: Angela D.
Cashier: Lydia M.

| Item | Qty | Price | Amount |
|------|-----|-------|--------|
| DOMINIQUE | | | |
| 098689849294 | 1 | 355.00 | 142.00 |
| 50%+20% OFF HANDBAGS | | (213.00) | |

| | | Subtotal | 142.00 |
| | | Tax | 13.49 |
| | | Total: | 155.49 |

| USD Cash | | | 160.00 |

Change
USD Cash                              (4.51)

************************************
new, unused merchandise purchased at a kate
spade outlet store in the united states may
be exchanged or returned for the price paid
at a kate spade outlet store in the united
states only. exchanges and returns will be
accepted as follows:

# EXHIBIT E





# EXHIBIT F



# EXHIBIT G

