1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   P. CRAIG CARDON, Cal. Bar No. 168646
3  DYLAN J. PRICE, Cal. Bar No. 258896
   JAY T. RAMSEY, Cal. Bar No. 273160
4  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
5  Telephone:  310.228.3700
   Facsimile:  310.228.3701
6  Email:      ccardon@sheppardmullin.com
               dprice@sheppardmullin.com
7              jramsey@sheppardmullin.com

8  Attorneys for Defendant
   KATE SPADE & COMPANY
9

10              UNITED STATES DISTRICT COURT

11     NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

12

13  LAURA MARKS, GAYLIA PICKLES          Case No. 3:15-cv-05329-VC
    & DONNA VANDIVER, individually
14  and on behalf of all others similarly    *The Hon. Vince Chhabria*
    situated,
15                                        **DEFENDANT KATE SPADE &**
               Plaintiffs,                **COMPANY'S NOTICE OF**
16                                        **MOTION AND MOTION TO**
         v.                               **DISMISS**
17
    KATE SPADE AND COMPANY, a
18  Delaware corporation; and DOES 1-50,  Hearing Date:   April 21, 2016
    inclusive,                            Hearing Time:   10:00 a.m.
19                                        Courtroom:      4 (17th Floor)
               Defendant.
20                                        Complaint Filed: November 29, 2015
                                          Trial Date:      None Set
21

22

23

24

25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 21, 2016 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 4 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Vince Chhabria presiding, Defendant Kate Spade & Company will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order: (1) dismissing the First Amended Class Action Complaint (the "FAC") filed by Plaintiffs Laura Marks, Gaylia Pickles, and Donna Vandiver ("Plaintiffs") for failure to state facts sufficient to constitute a cause of action; and (2) dismissing Plaintiffs' prayers for damages and monetary restitution.

The present motion to dismiss (the "Motion") is made on the grounds that Plaintiffs' claims for violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, and Texas's Deceptive Trade Practices and Consumer Protection Act require a false or misleading statement. Under Federal Rules of Civil Procedure 8 and 9(b), a complaint must not only allege the purportedly false or misleading statement, but also facts supporting the conclusion that the statement was false or misleading. Allegations made on information and belief alone are insufficient. Here, the FAC pleads nothing more than conclusory allegations made on information and belief. In addition, Plaintiffs' prayers for damages and monetary restitution should be dismissed because Plaintiffs have not alleged that they received something of lesser value that what they paid. And, finally, Plaintiff Donna Vandiver's claim under Texas's Deceptive Trade Practice Act should be dismissed because she had not pled any actual economic damages.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and other documentary materials in the

1 | Court's file for this action, those matters of which this Court may or must take
2 | judicial notice, and such other matters as the Court may consider.
3 | Dated: March 10, 2016          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By          */s/ Jay T. Ramsey*
          P. CRAIG CARDON
          DYLAN J. PRICE
          JAY T. RAMSEY

          Attorneys for Defendant
          KATE SPADE & COMPANY

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................. 1

II. THE FAC SHOULD BE DISMISSED IN ITS ENTIRETY UNDER RULE 12(B)(6) ................................................................................ 5

    A. The FAC Must Plead Facts Sufficient To Withstand Both The Plausibility Requirement Under Rule 8 And The Particularity Standard Under Rule 9(b) ................................................................ 5

    B. Plaintiffs' Core Assertion Of Wrongful Conduct Is Made On Information And Belief Only ................................................................ 8

    C. The FAC Includes A Number Of Allegations Irrelevant To Kate Spade's Motion To Dismiss ................................................................ 11

III. PLAINTIFFS' PRAYERS FOR DAMAGES AND MONETARY RESTITUTION SHOULD BE DISMISSED UNDER RULE 12(B)(6) ........ 13

IV. THE SIXTH CAUSE OF ACTION BROUGHT BY TEXAS PLAINTIFF VANDIVER SHOULD BE DISMISSED FOR FAILURE TO ALLEGE ECONOMIC DAMAGE OR MENTAL ANGUISH .............. 17

V. CONCLUSION .................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Ackerman v. Northwestern Mut. Life Ins. Co.*
    172 F.3d 467 (7th Cir. 1999) ................................................................. 7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................ 6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................ 5

*Berry v. Indianapolis Life Ins. Co.*
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................ 5

*Caldera v. J.M. Smucker Co.*
    2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) .................................... 17

*Chavez v. Nestle USA, Inc.*
    2011 WL 2150128 (C.D. Cal. May 19, 2011) ...................................... 8

*Comwest, Inc. v. Am. Operator Servs., Inc.*
    765 F. Supp. 1467 (C.D. Cal. 1991) .................................................... 6

*Cooper v. Pickett*
    137 F.3d 616 (9th Cir. 1997) ............................................................... 6

*Davis v. HSBC Bank Nevada N.A.*
    691 F.3d 1152 (9th Cir. 2012) ............................................................. 5

*Fed. Trade Comm. v. Mary Carter Paint Co.*
    382 U.S. 46 (1965) ............................................................................ 12

*Fraker v. Bayer Corp.*
    2009 WL 5865687 (C.D. Cal. Oct. 6, 2009) ........................................ 8

*In re GlenFed, Inc. Sec. Litig.*
    42 F.3d 1541 (9th Cir. 1994) (en banc) ............................................... 6

*Hinojos v. Kohl's Corp.*
    718 F.3d 1098 (9th Cir. 2013) (J. Reinhardt) .............................. 16, 19

*Jacobo v. Ross Stores, Inc.*
   No. 2:15-cv-4701, Dkt. No. 45 (C.D. Cal. Feb. 23, 2016) ....................................6

*In re John Surrey, Ltd.*
   67 F.T.C. 299, 1965 WL 92786 (FTC Mar. 16, 1965) .........................................12

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................5, 7

*Matoff v. Brinker Restaurant Corp.*
   439 F. Supp. 2d 1035 (C.D. Cal. 2006) ..............................................................14

*McCrary v. Elations Co.*
   No. 13-0242, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) ..................................5

*Mulder v. Kohl's Dep't Stores, Inc.*
   No. 15-11377-FDS, 2016 WL 393215 (D. Mass. Feb. 1, 2016) ...................15, 18

*Ogden v. Bumble Bee Foods, LLC*
   2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...........................................................17

*In re POM Wonderful LLC*
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .....................................................17

*Quinn v. Walgreen Co.*
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) ...................................................................8

*Red v. Kraft Foods, Inc.*
   2012 WL 8019257 (C.D. Cal. Apr. 12, 2012).......................................................17

*Reid v. Johnson & Johnson*
   780 F.3d 952 (9th Cir. 2015) .................................................................................5

*Shaulis v. Nordstrom Inc.*
   120 F. Supp. 3d 40, 2015 WL 4886080 (D. Mass. 2015) ..........................8, 15, 18

*Sperling v. DSW Show Warehouse, Inc.*
   2016 WL 355119 (C.D. Cal. Jan. 28, 2016).........................................................7

*Stanley v. Bayer Healthcare LLC*
   2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ......................................................7, 8

*Tomasino v. Estee Lauder Cos.*
   44 F. Supp. 3d 251, 258...........................................................................................8

-iii-

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ............................................................ 6

*Whittlestone, Inc. v. Handi-Craft Co.*
   618 F.3d 970 (9th Cir. 2010) ............................................................ 13

*Williams v. Gerber Prods. Co.*
   552 F.3d 934 (9th Cir. 2008) .............................................................. 5

*Yumul v. Smart Balance, Inc.*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................. 5

**<u>State Cases</u>**

*Arthur Andersen & Co. v. Perry Equipment Corp.*
   945 S.W.2d 812 (Tex. 1997) ............................................................ 14

*Chapman v. Skype Inc.*
   220 Cal. App. 4th 217 (2013) ............................................................. 5

*Colgan v. Leatherman Tool Group, Inc.*
   135 Cal. App. 4th 663 (2006) ........................................................... 14

*Dagley v. Haag Eng'g Co.*
   18 S.W.3d 787 (Tex. App. 2000) ...................................................... 18

*Day v. AT&T Corp.*
   63 Cal. App. 4th 325 (1998) ............................................................. 14

*Doe v. Boys Clubs of Greater Dallas, Inc.*
   907 S.W.2d 472 (Tex. 1995) .............................................................. 5

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal.4th 1134 (2003) .................................................................... 15

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (2011) .......................................................... 13, 17, 19

*Lavie v. Procter & Gamble Co.*
   105 Cal. App. 4th 496 (2003) ............................................................. 5

*Meister v. Mensinger*
   230 Cal. App. 4th 381 (2014) ........................................................... 15

Case No. 3:15-cv-05329-VC
MOTION TO DISMISS
SMRH:475600504.5

*In re Tobacco Cases II*
   240 Cal. App. 4th 779 (2015) ........................................................... 14, 17

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

16 C.F.R. § 251.1(f) ................................................................................. 10

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Bus. & Prof. Code § 17204 ............................................................... 19

Cal. Bus. & Prof. Code § 17500 ................................................................. 5

Cal. Bus. & Prof. Code § 17501 ............................................... 9, 11, 12, 13

Cal. Bus. & Prof. Code § 17508 ................................................................. 8

Cal. Civ. Code § 1770(a)(13) ..................................................................... 5

Tex. Bus. & Com. Code § 17.50 ............................................................... 17

**Other Authorities**

30 Op. Atty. Gen. 127 (1957) ................................................................... 10

SMRH:475600504.5
Case No. 3:15-cv-05329-VC
MOTION TO DISMISS

# I.     <u>INTRODUCTION</u>

Plaintiffs have filed suits in droves across California – and the country – against retailers of all stripe, challenging the pricing policies that the retailers implement at their outlet stores, claiming them all to be deceptive and misleading. Numerous courts have recently pushed back against these overbroad and unsupported claims, and dismissed cases where the purportedly deceptive and misleading policies are alleged on information and belief only. Court have been clear: claims of deceptive pricing should be dismissed where plaintiffs have failed or refused to conduct a pre-filing investigation to gather facts supporting their conclusory allegations of deception. Pleading a theory is not enough meet the requirements of Federal Rules 8 and 9(b) – actual and particular facts must be pled corroborating that theory to move it from the realm of possible, theoretical violation to an actionable claim.

The First Amended Complaint ("FAC") suffers from the same infirmity that has led courts around the country to dismiss claims of deceptive pricing. Here, Plaintiffs Laura Marks, Gaylia Pickles, and Donna Vandiver ("Plaintiffs") claim that Kate Spade & Company's ("Kate Spade") pricing of its handbags and wallets at its outlet stores is false and deceptive. Each Plaintiff alleges that she purchased a handbag or wallet from a Kate Spade outlet store, and that the items had price tags listing one price, but were on sale for a certain, but varying, percentage off that listed price – say, 40%. Plaintiffs then allege, on *information and belief only*, that Kate Spade never sold these handbags or wallets anywhere but at its outlet stores, and never sold them for the listed price, instead always discounting them by some (again varying) percentage. Plaintiffs then deem their theory of how Kate Spade prices its products as deceptive.

The core problem with Plaintiffs' FAC is that there are no actual facts pled supporting Plaintiffs' claim that Kate Spade actually engages in the pricing practices that Plaintiffs lay out. Plaintiffs hypothesize that Kate Spade has engaged in these

purported pricing practices for years, and across a wide range of products, but always *on information and belief*. Plaintiffs do not, for example, allege that they visited the outlet stores on several occasions and observed that the handbags and wallets were permanently discounted. To the contrary, each Plaintiff pleads only a single visit to a single outlet store. Plaintiffs also fail to allege that they visited a Kate Spade specialty store to confirm that the handbags and wallets were not also sold there (and therefore they can do *nothing but* make allegations on information and belief that Kate Spade sells the handbags only at the outlets). And Plaintiffs have alleged no facts that Kate Spade's handbags and wallets or products similar to them are not sold at department or other non-Kate Spade stores through which Kate Spade sells its products wholesale. Plaintiffs therefore cannot plausibly or particularly allege that Kate Spade actually engaged in the purportedly deceptive pricing practice at the core of Plaintiffs' claims.

In addition, Plaintiffs affirmatively allege that the handbags and wallets that they purchased are worth – *i.e.*, have a value – equal to what they paid. They do not claim that the handbags and wallets were defective or damaged, or otherwise less valuable than the price Kate Spade charged. In these circumstances, Plaintiffs have not sufficiently plead that they are entitled to an award of damages or monetary restitution; to the contrary, they have made affirmative allegations that preclude such awards. Therefore, Kate Spade also requests an order dismissing the prayers for monetary awards.

## II.  ALLEGATIONS IN THE FAC

Plaintiffs' FAC spans more than thirty pages and one hundred paragraphs, but, at its core, it is simple, straightforward and narrow. Each Plaintiff purchased a handbag or wallet from a Kate Spade outlet store. (*See* FAC ¶¶ 29-39.) In each case, the handbag or wallet had a price tag with a single list price. Each of the items was on sale – *i.e.,* discounted by a certain but varying percentage – meaning that Plaintiffs purchased their items for a discounted price. (*Id.*) Ms. Marks, for

-2-

Case No. 3:15-cv-05329-VC
MOTION TO DISMISS
SMRH:475600504.5

example, alleges that she purchased a handbag with a price tag listing the price as $269.00. (*Id.* at ¶ 30.) Because the handbag was 40% off, Ms. Marks paid only $161.40. (*Id.*.)

Plaintiffs make no allegations about the nature or quality of the handbags or wallets they purchased. Plaintiffs do not contend that the items were defective in any way, or that they were worth less than either the price listed on the price tags or the price Plaintiffs actually paid. For example, Ms. Marks does not allege that her handbag was scratched or damaged, or that it was worth less than either the $269.00 listed on the price tag or the $161.40 she actually paid for it.

Nevertheless, each Plaintiff claims fraud, alleging – *on information and belief only* – that *Kate Spade* sold the items at its *outlet stores only*, and never for the prices listed on the tags, but instead always for the discounted amounts alleged in the FAC. (*Id.* at ¶¶ 29-39.) Plaintiffs allege that these purported "permanent" discounts were misleading and deceptive because they caused Plaintiffs to believe that they were getting a discount off the "original price" or the "prevailing market price," when, in fact, Plaintiffs were paying the same amount as everyone else. (*Id.*) According to Plaintiffs, the actual "prevailing market prices" for the items were not the prices listed on the price tags, but the discounted prices they paid. (*Id.*) Thus, Ms. Marks alleges that the "prevailing market price" for her handbag was $161.40, not the $269.00 listed on the price tag.

Plaintiffs allege merely the bare bones of a theory (namely, that permanently discounting an item is deceptive), but they set forth no facts suggesting that Kate Spade actually acts in accordance with their theory. Plaintiffs do not allege any pre-filing investigation revealing that the handbags and wallets were not, in fact, sold anywhere other than Kate Spade's outlet stores or for anything other than the discounted price. Nor do Plaintiffs allege any facts supporting their conclusion that the handbags or wallets were permanently on sale at the outlet. Plaintiffs include no allegations, for example, of any visits to these or other Kate Spade specialty or

outlet stores before the purchase dates, and, accordingly, make no factual allegations of personally tracking the price of these items. They also make no allegations that either they or a third party (like their attorneys) investigated or validated that these or similar items were not offered at the listed price through Kate Spade outlet stores, Kate Spade specialty stores, Kate Spade ecommerce offerings, Kate Spade's third-party wholesale partner accounts or other third party online offerings or brick and mortar locations. To the contrary, Plaintiffs each allege a single visit to a single Kate Spade outlet store, which begs the question – how can Plaintiffs allege that the bags and wallets were permanently discounted if they visited the Kate Spade outlet stores only once? And how can they allege that neither Kate Spade nor anyone else never offered the items at the listed price if they did not look for the product anywhere else? As set forth below, courts analyzing similar claims require these additional factual allegations. Conclusory allegations made on information and belief are not enough.

Moreover, Plaintiffs have not alleged any facts supporting their claim that they have been damaged. Plaintiffs allege generally that they would not have purchased the handbags or wallets absent the purported misrepresentations, and, as a result, they claim to have "suffered economic injury." (*See* FAC ¶¶ 30, 32, 34, 36, 40.) But this is merely an Article III and statutory standing allegation. It is not enough to support a prayer for monetary damages or restitution. More specifically, even assuming their allegations of wrongdoing are true, Plaintiffs allege that the "prevailing market prices" for the items they purchased were *exactly* what they paid. Plaintiffs make no other allegations suggesting that the items they purchased were worth less than those amounts. Ms. Marks, for example, does not allege that her handbag was defective or that she could have purchased it elsewhere for $100.00 (rather than the $161.40 she paid). Notwithstanding whether any pricing was deceptive (it was not), Plaintiffs' allegations confirm that they were not damaged because they did not pay more than the alleged value of the handbags or wallets as a

result of Kate Spade's purported wrongful conduct. Therefore, Plaintiffs are not entitled to damages or restitution in any amount, and those prayers for relief should be dismissed.

## II. THE FAC SHOULD BE DISMISSED IN ITS ENTIRETY UNDER RULE 12(B)(6)

### A. The FAC Must Plead Facts Sufficient To Withstand Both The Plausibility Requirement Under Rule 8 And The Particularity Standard Under Rule 9(b)

Each of Plaintiffs' claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") and Texas's Deceptive Trade Practices and Consumer Protection Act ("DTPA") requires a false or misleading statement that is likely to deceive a reasonable consumer. *See* Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code § 1770(a)(13); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Davis v. HSBC Bank Nevada N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479-80 (Tex. 1995).

The FAC must therefore satisfy not only the plausibility requirement under Rule 8, but also the particularity requirement imposed by Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *McCrary v. Elations Co.*, No. 13-0242, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (internal quotations omitted) citing *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001). Under Rule 8, Plaintiffs must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In other words, they must plead actual facts that rule out any possible scenario that would not establish a claim. "[L]abels and conclusions" and "naked assertions devoid of further factual enhancement" are insufficient for this purpose. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 9(b) requires even more; a complaint must allege, in detail, "the who, what, when, where, and how" of the alleged fraudulent conduct (*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), and "set forth an explanation as to why the statement or omission complained of was false or misleading" (*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)). *See also Cafasso, U.S. ex. rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (holding that plaintiffs must allege "what is false or misleading about the purportedly fraudulent statement, and why it is false"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (same). "It is well settled that fraud [a]llegations based on 'information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded." *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (citations and internal quotation marks omitted).

Courts having ruled on motions to dismiss claims like Plaintiffs' (*i.e.*, deceptive pricing policy claims) have consistently required more than conclusory allegations, made on information and belief, that the retailer engaged in some purportedly wrongful conduct. *See Jacobo v. Ross Stores, Inc.*, No. 2:15-cv-4701, Dkt. No. 45 (C.D. Cal. Feb. 23, 2016)[1] ("It is insufficient under Rule 9(b) to simply assert on 'information and belief' that 'the prevailing retail prices for the items [Plaintiffs purchased] were materially lower than the 'Compare At' prices advertised by Defendant.' Plaintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their 'belief' that the 'Compare At' prices

---

[1] A courtesy copy of the *Jacobo v. Ross* decision, which is not yet available on Westlaw, is attached hereto as Exhibit A.

were inaccurate."); *Sperling v. DSW Show Warehouse, Inc.*, No. EDCV 15-01366, 2016 WL 355119 (C.D. Cal. Jan. 28, 2016) ("The FAC repeatedly alleges in conclusory fashion that Defendants' comparative reference prices do not represent the prevailing market prices for Defendants' products. The FAC even alleges Defendants use 'misleading, and/or subjective measures to inflate the[se] comparative prices, and thus artificially increase[] the discounts and savings they claim[] to be offering consumers.' Nowhere, however, does the FAC explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices. As a result, the FAC fails to satisfy Rule 9(b)'s heightened pleading requirements and is subject to dismissal."). *See also Branca v. Nordstrom, Inc.*, CV 14-2062, 2015 L 1841231, *6 (S.D. Cal. Mar. 19, 2015) ("Although Plaintiff acknowledges that Rule 9(b) applies to his claims, he merely alleges that the 'Compare At' prices are [fictitious]. The Court finds that these conclusory allegations are insufficient under Rule 9(b).").

Courts impose this requirement so that plaintiffs "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). *See also Kearns*, 567 F.3d at 1125 (the additional pleading requirement serves to "deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'" and to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis'"). Requiring more than a conclusory allegation of fraud also comports with California law. Under California law, if a consumer suspects an advertisement about a product is false or misleading, he or she cannot merely bring suit, identify the advertisement, and allege that the statements or claims about the products in the advertising lack substantiation. *See Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012). Instead, the consumer must allege actual facts explaining

how and why the claims about the product were false or misleading. *Chavez v. Nestle USA, Inc.*, 2011 WL 2150128, at *5–6 (C.D. Cal. May 19, 2011) (dismissing false advertising claim because factual allegation that defendant did not possess requisite substantiation was insufficient under California false advertising law); *Fraker v. Bayer Corp.*, 2009 WL 5865687, *8–9 (C.D. Cal. Oct. 6, 2009) (dismissing false advertising claim where plaintiff alleged only that defendant had "no reasonable basis, consisting of competent and reliable scientific evidence to substantiate" its health-benefit claim related to "WeightSmart" multivitamin).[2]

## B. <u>Plaintiffs' Core Assertion Of Wrongful Conduct Is Made On Information And Belief Only</u>

Plaintiffs' claims rest on two foundational "facts": (1) the handbags and wallets they purchased were never sold for the prices listed on the price tags, but instead were permanently discounted; and (2) the handbags and wallets were sold *only* at Kate Spade outlet stores, and nowhere else. These allegations, however, are made "[u]pon information and belief" only. *See, e.g.*, FAC ¶¶ 30, 34. Plaintiffs have alleged no facts supporting these contentions. Each Plaintiff has alleged only one trip to a single Kate Spade outlet store. Therefore, each Plaintiff can plead that the handbag or wallet she purchased was discounted from the listed price *only on the day she purchased it*, not at any other time. Plaintiffs also plead no other factual

---

[2]     Indeed, California Business & Professions Code § 17508 expressly grants the government exclusive authority to bring lack of substantiation claims. The purpose granting this authority to the government, and not private persons, is to "prevent undue harassment of advertisers" and provide "the least burdensome method of obtaining substantiation for advertising claims." *Stanley*, 2012 WL 1132920, at *3. Other cases are in accord, holding that only state regulating authorities may bring causes of action for mere violations of a regulation – a consumer, by contrast, has to have facts supporting a claim of deception and cannot rely on a purported lack of substantiation. *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258 n.4 (E.D.N.Y. 2014) (under New York law, plaintiffs cannot advance "a non-actionable 'lack of substantiation' claim premised on the allegation that [defendant]'s advertising is deceptive because its statements are not substantiated"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same). *See also <u>Shaulis v. Nordstrom Inc.</u>*, 120 F. Supp. 3d 40, 2015 WL 4886080, *4 (D. Mass. 2015) (Massachusetts law)..

Case No. 3:15-cv-05329-VC

MOTION TO DISMISS

allegations supporting their theory of "permanent" discounts – for example, that their attorneys or another third party conducted an investigation and tracked the price of the handbags and wallets over a period of time. Similarly, Plaintiffs allege no facts suggesting that the handbags and wallets were not sold anywhere other than at Kate Spade outlet stores. The FAC does not, for example, allege any type of investigation revealing that the same or similar handbags or wallets were not available elsewhere, whether at other retail establishments or online. This is particularly important because Kate Spade does a significant percentage of its business at wholesale, and its products are sold to consumers at non-Kate Spade owned stores. Because Plaintiffs have failed to plead any actual facts supporting their theory of fraud and deception, the FAC should be dismissed under Rules 8 and 9(b).

Moreover, even if Plaintiffs could allege facts establishing that Kate Spade *outlet stores* always sold these wallets and handbags at a discount, their claims would still fail. As the FAC concedes, if the prices listed on the price tags were the "prevailing market prices" for the handbags and wallets, Plaintiffs would have no complaint. (*See, e.g.*, FAC ¶¶ 29-39.) A "prevailing market price" must encompass the entire market, not just the price at a particular store, let alone a single outlet store. To state a claim, Plaintiffs would have to plead facts supporting the conclusion that the handbags and wallets they purchased did not sell anywhere else for the prices listed, whether at a Kate Spade specialty store, another outlet store, online, or at a store owned by a Kate Spade wholesale partner. And, even that would not be enough; Plaintiffs would still have to go one step further. California law equates a "prevailing market price" with a product's "worth or value." *See* Cal. Bus. & Prof. Code § 17501 ("the worth or value of anything advertised is the prevailing market price"). As a result, the California Attorney General has concluded that the "prevailing market price" is the price at which the product *or a similar one* would sell: "The phrase 'prevailing market price' means the

predominating price that may be obtained for merchandise *similar to* the article in question on the open market and within the community where the article is sold." 30 Op. Atty. Gen. 127 (1957) (emphasis added (a courtesy copy of the Attorney General opinion, which is not available on Westlaw, is attached hereto as Exhibit B).[3]  Under this standard, Plaintiffs must allege that the prices listed on the price tags were not the "prevailing market prices," and support that allegation by pleading facts demonstrating that neither the handbags or wallets they purchased nor product similar to those items were sold for the prices listed at Kate Spade's outlet stores, *and in the market at large* (including other stores and online).

Forcing Plaintiffs to plead these additional facts in support of their claims also comports with common sense.  Retailers are permitted to discount items.  If a product is not selling well, the item can be discounted.  If the retailer wants to offer a special deal, the item can be discounted.  And if retailers want to offer a special deal upon the release of a product, the retailer can even offer introductory sales, selling the product at a percentage-off discount (or even giving it away for free) at the beginning, before the item ever sells for its full price.  *See* 16 C.F.R. § 251.1(f). Retailers can even offer these introductory sales for up to six months.  *Id.* at § 251.1(h).  Given this, consumers should not be able to enter a store a single time, purchase an item that is discounted on that day, and then file a complaint alleging, on information and belief only, that the item was permanently discounted. Consumers should instead be required to plead facts showing that the item was *actually* permanently discounted, and not instead discounted in a way that is entirely permissible.

---

[3]     This California Attorney General's interpretation makes sense on a practical level—the "prevailing market price" is a benchmark for worth or value, which can be judged not only by the product's intrinsic qualities, but also what similar products sell for.

## C. The FAC Includes A Number Of Allegations Irrelevant To Kate Spade's Motion To Dismiss

Plaintiffs must establish a number of facts in order to prevail in this case. With this motion, Kate Spade does not intend to address each aspect of all the factual and legal deficiencies in Plaintiffs' claims as pled, but Kate Spade believes that it is necessary to address certain additional aspects of Plaintiffs' FAC.

First, Plaintiffs generally suggest that an outlet retailer that sells anything other than product previously sold in its mainline or specialty stores is engaged in deceptive conduct. In Plaintiffs' view, a retailer cannot sell product designed or manufactured primarily for the outlet at an outlet. There is no law that prevents this practice, nor is there anything to suggest that the practice, without more, is deceptive. Indeed, Plaintiffs cite mainstream news articles confirming that "82% of product at outlet centers are made specifically for the outlets." (*See* FAC ¶ 28, n.2.) Put simply, to the extent Plaintiffs contend that the sale of "made-for-outlet" product is itself deceptive, their claim fails at the start, both because nothing prohibits the "made for outlet" practice (irrespective of the percentage that the product comprises of an outlet's offerings) and the FAC concedes that Plaintiffs were aware of it.[4]

Second, the FAC cites, at length, both certain guidelines issued by the Federal Trade Commission ("FTC") and California Business & Professions Code § 17501. Each purports to set forth practices that are misleading and deceptive. They state in essence, "if you do X, that is likely to be deceptive." Kate Spade and Plaintiffs will likely disagree about the import of the FTC guidelines and Section 17501, but those differences are not relevant here. The motion is not about whether Plaintiffs have

---

[4] Plaintiffs view that only transferred unsold mainline product may be sold at outlet stores is anti-consumer. Outlet malls and outlet stores would look like cold war Soviet grocery stores. There would never be enough product to satisfy the consumer demand for branded product that is sold for less than products are generally sold at mainline or specialty stores. Consumers do not expect that there is so much excess product that the massive outlet malls throughout the country are fully stocked with only this product.

alleged a practice that might be deceptive under some guideline, but whether Plaintiffs plead ***facts*** sufficient to satisfy the heightened pleading standard of Rules 8 and 9(b) that suggest that Kate Spade actually engaged in such conduct. As set forth above, the FAC fails to do so.

In any event, with respect to the FTC guidelines, Kate Spade notes for now that even if Kate Spade's pricing practices somehow deviated from FTC guidance, that variance would not, absent more, give rise to a claim. The FTC guidelines are not law, nor do they create requirements that retailers *must* follow. Instead, as their name makes clear, the FTC guidelines offer nothing more than safe harbor guidance – guidelines that, if followed, under normal circumstances, would result in truthful and non-misleading advertising. *See In re John Surrey, Ltd.*, 67 F.T.C. 299, 1965 WL 92786, *24 (FTC Mar. 16, 1965) ("The Guides are not designed to be an encyclopedic restatement of the law regarding deceptive pricing…. The Guides are intended to serve a different purpose. Addressed to the businessman who desires in good faith to conduct his business in accordance with the law and who wants to know, in advance, how he may assure that his price advertising will be completely fair and non-deceptive, the Guides set forth in clear and uncomplicated layman's language the practical steps that a businessman should take to avoid becoming involved in scrapes with the law."); *see also Fed. Trade Comm. v. Mary Carter Paint Co.*, 382 U.S. 46, 47-48 (1965) ("These, of course, were guides, not fixed rules as such, and were designed to inform businessmen of the factors which would guide Commission decision.").

Furthermore, California Business & Professions Code § 17501 does not apply here. Section 17501 addresses advertisements of former prices – "Was $100, Now $70" or "Formerly Sold At $80." Section 17501 does not govern a retailer's choice to implement a percentage discount sale. Indeed, if it applied in the manner that Plaintiffs suggest – namely, that an item cannot go on sale unless it has been sold in substantial quantities at the listed price for a particular period before the sale (*see*

FAC ¶¶ 5-6) – retailers would be unable to engage in (1) clearance markdowns (as clearance product may sit for many months and is never raised back to the original tagged price); (2) any type of introductory sale – *i.e.*, 30% off for the first several months a product is on the market; or (3) any type of immediate hard markdown of product that is not selling.[5]  In any event, as noted above, even under Section 17501, a "former price" includes the prevailing market price of not only the product, but also of similar product.

## III.   PLAINTIFFS' PRAYERS FOR DAMAGES AND MONETARY RESTITUTION SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Where a cause of action may give rise to multiple forms of relief, and one such form of relief is barred as a matter of law, a court may dismiss or strike that prayer for relief under Rule 12(b)(6).  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) (holding that the proper procedure to "strike" a particular prayer for damages is a partial motion to dismiss under Rule 12(b)(6)).  Plaintiffs' causes of action generally permit injunctive relief and recovery of, among other things, monetary damages or monetary restitution.  Plaintiffs, however, are not entitled to either monetary damages or monetary restitution as a matter of law, and therefore their prayers for such monetary awards should be dismissed.

The "primary form of relief available under the UCL to protect consumers from unfair business practices" is injunctive relief.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).  The equitable remedy of restitution is available, but only were it is necessary "to restore to any person in interest any money or property…which may have been acquired by means of such unfair competition."

---

[5]      Under Plaintiffs' construction of Section 17501, if a product was introduced at $250 and did not sell at that price, the retailer could not do a hard markdown to $150 because $250 would not have been the prevailing market price.  According to Plaintiffs construction, the retailer would have to keep the product at $250 without any realistic hope of selling it, or have new $150 tags printed for all of these items, cut off the old tags and replace with the new ones.  Such an imposition on the retailers' ability to markdown and adjust product prices was never intended by the legislature,

Cal. Code Civ. Proc. § 17203. Restitution is not permitted to be punitive; instead, it is strictly limited to amounts to make the victim "whole, equitably." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998). As a result, in "the absence of a measurable loss the [UCL] does not allow the imposition of a monetary sanction." *Id.*

In this case, the test for recovery of damages translates as follows: When a consumer makes a purchase and then claims false advertisement regarding the product, the proper measure of restitution is "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 791, 794 (2015) (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009)). The same formula applies to damage awards under the CLRA and Texas's DPTA law. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 676 (2006) (monetary awards under the CLRA are limited to the difference between the amount paid and the value of the good received); *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (same re DPTA).

Notably, although some courts discuss restitution being calculated as a "disgorgement" of the defendant's profits, the end result is the same. A plaintiff is not entitled to all of a defendant's profits, but only that portion of the profits that defendant wrongfully obtained from the plaintiff. Again, where a consumer makes a purchase and then claims false advertisement, the disgorgement of full profits is not permitted because the plaintiff received something of value. *In re Tobacco Cases II*, 240 Cal. App. 4th at 801 (italics in original). Only those profits that equal the difference between what the plaintiff paid and the value of what the plaintiff received, *i.e.,* what the plaintiff has proved it lost as a result the unfair practice, qualify for restitutionary disgorgement. *Id.* at 802. *Matoff v. Brinker Restaurant Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) ("[d]isgorgement of profits is available under the UCL only to the extent it is restitutionary," but disgorgement of

profits "in excess of restitution of money improperly misappropriated" is not allowed). *See also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014).

Here, even under Plaintiffs theory of the case, the "prevailing market price" – *i.e.*, the value – of the handbags and wallets they purchased was ***exactly*** what they paid. Plaintiffs do not claim that the products they purchased were damaged or defective or otherwise worth less than what Kate Spade charged them. Nor do they plead that they overpaid for the items they purchased or that Kate Spade overcharged them. Ms. Marks paid $161.40 for a handbag she claims is worth $161.40. She is not entitled to an award of damages or monetary restitution. Ms. Pickles' and Ms. Vandiver's prayers for monetary awards fail for the same reason.[6]

Comparing this case with the "Made in the USA" cases, the "organic" food labeling cases, and other product labeling cases underscores the point. In those cases, the plaintiffs allege that they purchased a product for some amount, but also allege that the intrinsic value of the product they received was less. A portable drill that is made in the United States may be worth $30, but the same drill made abroad may be worth only $25 because the country of origin affects the actual drill and its value. By mislabeling the foreign-made drill "Made in the USA," the plaintiff, believing the drill is worth $30, ends up paying $30 for a drill that is intrinsically worth only $25. The proper amount of restitution is thus $5. Similarly, an organic

---

[6]     Courts addressing similar cases under Massachusetts' law have reached similar conclusions. *Shaulis*, 120 F. Supp. 3d 40, 2015 WL 4886080 at *8 (holding under Massachusetts law that there is no cognizable economic injury where "it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97. She still has the sweater in her possession. She does *not* allege that it is worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective. The complaint simply alleges that she would not have purchased the sweater in the absence of Nordstrom's misrepresentation.); *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016) ("But it appears that she paid $40.78 for items that were, in fact, worth $40.78. The fact that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm.").

watermelon may be worth $2 more to a particular consumer than a regular one, because the means of production may affect the value of the product. That consumer who purchases a mislabeled watermelon would be entitled to $2 in restitution. In each case, the alleged misrepresentation is about some intrinsic quality of the product that, if true, increases its value. And in each case, the plaintiffs allege that the product they purchased – the foreign-made drill or the inorganic watermelon – was worth less than what they paid for it. Here, Plaintiffs allege that Kate Spade misrepresented the "prevailing market price" of handbags and wallets, *i.e.* what other people may have paid for the product at another time or in another place. They do not allege a misrepresentation about some intrinsic quality of the products – about where they were constructed, what fabrics they were constructed with, or so on. And they allege that they paid the actual "prevailing market price" for the product. As a result, Plaintiffs end up alleging that the product was worth exactly what they paid for it. They are thus not entitled to either damages or restitution.[7]

In response, Plaintiffs will no doubt argue that their allegations that they would not have otherwise purchased the handbags and wallets absent the purported misrepresentations support a monetary award. Those allegations are irrelevant. Allegations that a plaintiff would not otherwise have made a purchase may give rise to statutory standing under the UCL (but not Texas law, as addressed below), and therefore a potential right to injunctive relief (*see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105-06 (9th Cir. 2013) (J. Reinhardt)), but they do not give rise to a right to

---

[7]      Even if Plaintiffs had pled that they overpaid for the products they purchased and received something less valuable than the price they paid, the amount of restitution each Plaintiff could claim entitlement too would vary dramatically. In part because of that reason, the Central District of California recently denied a 23(b)(2) class seeking an injunction plus restitution in a comparative pricing case like this one. *See Russell v. Kohl's Dept. Stores, Inc.*, EDCV 15-01143, Dkt. No. 52 (C.D. Cal. Dec. 4, 2015) (A courtesy copy of the *Russell v. Kohl's* decision, which is not yet available on Westlaw, is attached hereto as Exhibit C).

1  monetary relief.[8]  Because Plaintiffs allege that they received a product with a value
2  equal to what they paid, they have no right to monetary relief.

3  **IV.  THE SIXTH CAUSE OF ACTION BROUGHT BY TEXAS PLAINTIFF**
4  **VANDIVER SHOULD BE DISMISSED FOR FAILURE TO ALLEGE**
5  **ECONOMIC DAMAGE OR MENTAL ANGUISH**

6  The Sixth Cause of Action for violation of Texas's DTPA is asserted by only
7  Donna Vandiver, the only plaintiff who resides in Texas and who made a purchase
8  in Texas.   To assert a claim under Texas's DTPA, the plaintiff must be a
9  "consumer" and the alleged act of wrongdoing must be "a producing cause of
10  *economic damages* or *damages for mental anguish*."  Tex. Bus. & Com. Code §
11  17.50 (emphasis added).   Such economic or mental anguish damages are a

---

12  [8]      To the extent Plaintiffs are seeking rescission of their purchase and full refund
13  of the purchase price, they are not entitled to it, particularly on a classwide basis. *In
re Tobacco Cases II*, 240 Cal. App. 4th at 795 (full refund is available in a UCL
14  case only "where the plaintiffs prove the product had *no* value to them").  *See also
Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, *4  (C.D. Cal. Apr. 15, 2014)
15  ("sales data alone" was insufficient measure of restitution because the class
representative's deposition testimony showed "class members undeniably received
16  some benefit from the products"; restitution "based on a full refund would only be
appropriate if not a single class member received any benefit from the products"); *In
17  re POM Wonderful LLC*, 2014 WL 1225184, *3 (C.D. Cal. Mar. 25, 2014)
("Because the Full Refund model makes no attempt to account for benefits
18  conferred upon [p]laintiffs, it cannot accurately measure classwide damages");
*Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014)
19  ("Ogden concedes that she bought Bumble Bee's products for taste and convenience,
as well as because of Bumble Bee's allegedly unlawful label statements, ... which
20  demonstrates that the products had *some* value to Ogden apart from the statements
on the products' labels. Accordingly, Ogden must present additional evidence of the
21  value of Bumble Bee's products without the allegedly unlawful label statements in
order to obtain restitution.") (italics in original); *Red v. Kraft Foods, Inc.*, 2012 WL
22  8019257, *11 (C.D. Cal. Apr. 12, 2012) ("The Court...cannot approve [p]laintiffs'
proposal that Kraft disgorge the full profits earned from sales of the Products within
23  the class period, as [p]laintiffs undeniably received some benefit from the Products
and thus awarding class members full refunds on their purchases would constitute
24  nonrestitutionary disgorgement."); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337
(2011) (trial court granted injunctive relief, but *denied restitution* because an award
25  "would likely be very expensive to administer, and the balance of equities weighs
heavily against such a program where the violations had ceased and the
26  misrepresentations, even to those for whom the 'Made in USA' designation is an
extremely important consideration, were not so deceptive or false as to warrant a
27  return and/or refund program or other restitutionary relief to those who have been
using their locksets without other complaint") (internal quotations omitted) (italics
28  in original))

---

SMRH:475600504.5

Case No. 3:15-cv-05329-VC
MOTION TO DISMISS

prerequisite to filing suit. "To recover under the [DTPA], the plaintiff must establish (1) he was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of **actual damages** to the plaintiff." *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 791 (Tex. App. 2000).

Here, as noted in the previous section, no Plaintiff, including Ms. Vandiver, has pled any actual damages. They plead instead that they received a good worth precisely what they paid for it. Nor has any Plaintiff, including Ms. Vandiver, pled damages for mental anguish. As a result, the claim for violation of the DTPA must be dismissed.

Such a result is consistent with orders dismissing nearly identical pricing claims brought under a state's law that does not permit a consumer to bring suit unless he or she has suffered actual damages. For example, in Massachusetts, a consumer must have suffered an actual economic harm before bringing suit. When courts there were faced with allegations that the plaintiff received a good with a value equal to the purchase price, the courts dismissed the claims. *Shaulis*, 120 F. Supp. 3d 40, 2015 WL 4886080 at *8 ("Bu, it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97. She still has the sweater in her possession. She does *not* allege that it is worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective. The complaint simply alleges that she would not have purchased the sweater in the absence of Nordstrom's misrepresentation."); *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016) ("But it appears that she paid $40.78 for items that were, in fact, worth $40.78. The fact that plaintiff may have been

1    manipulated into purchasing the items because she believed she was getting a

2    bargain does not necessarily mean she suffered economic harm.").[9]

3    **V.      CONCLUSION**

4           For the foregoing reasons, Kate Spade respectfully requests that the Court

5    grant its Motion and dismiss the FAC.

6    Dated: March 10, 2016          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7

8                            By      _____
                                            */s/ Jay T. Ramsey*

9                                        P. CRAIG CARDON
                                         DYLAN J. PRICE
10                                       JAY T. RAMSEY

11
                                        Attorneys for Defendant
12                                      KATE SPADE & COMPANY

13

14

15

16

17

18

19

20    _____

21    [9]      Notably, in this regard, Texas law (and Massachusetts law) is more limited
      than California law, at least insofar as California law is currently interpreted. To
22    bring a claim under California's UCL, a plaintiff need not plead actual damages,
      only that he or she was "injur[ed] in fact and lost money or property." Cal. Bus. &
23    Prof. Code § 17204. In *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326
      (2011), the California Supreme Court interpreted this requirement broadly, finding
24    that a plaintiff need only plead that he or she would not have purchased a good
      absent the misrepresentation. The Ninth Circuit then followed *Kwikset's* lead in
25    *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105-06 (9th Cir. 2013) (J. Reinhardt).
      California law, as it currently stands, thus permits suit where a plaintiff would not
26    have made a purchase, even if the ultimate purchase did not result in actual
      economic harm – which is directly opposite Texas law. (Importantly, as noted
27    above, although such an allegation under California law may be sufficient to confer
      standing to sue under the UCL, it is not enough to confer a right to recover a
28    monetary award.)

                              -19-                    Case No. 3:15-cv-05329-VC