**EXHIBIT A**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016
Title:     Jose Jacobo, et al. -v- Ross Stores, Inc.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

              Deputy Clerk:                      Court Reporter:
              Rita Sanchez                        Not Reported

              Attorneys Present for Plaintiff:    Attorneys Present for Defendant:
              None Present                        None Present

Proceedings (In Chambers):   ORDER GRANTING DEFENDANT'S MOTION TO
                             DISMISS [25]


        Before the Court is Defendant Ross Stores, Inc.'s Motion to Dismiss First
Amended Complaint (the "Motion"), filed on October 29, 2015.  (Docket No. 25).
Plaintiffs submitted their Opposition to the Motion on January 15, 2016 (Docket No.
37), and Defendant's Reply followed on January 22, 2016 (Docket No. 39)  The Court
read and considered the parties' submissions, and held a hearing on **February 11,
2016**.

        The Motion is **GRANTED** *with leave to amend*.  Plaintiffs fail to plead with
particularity that Defendant's price advertisements were false or misleading as required
under Federal Rule of Civil Procedure 9(b).  Moreover, to the extent Plaintiffs seek
relief under California Business and Professions Code § 17501 and California Civil
Code § 1770(a)(13), their claims are deficient because no allegations characterize
Defendant's prices as "former prices" or "price reductions."  These deficiencies aside,
Plaintiffs successfully allege that they have standing to pursue their individual and
class claims, as all claimants in this action are alleged to have suffered the same type of
economic harm.  Contrary to Defendant's suggestion, the remedy available for the
alleged misconduct is not limited to the difference between the value of the goods
Plaintiffs purchased and the price Plaintiffs paid for those goods.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016
Title:      Jose Jacobo, et al. -*v*- Ross Stores, Inc.

I.    **BACKGROUND**

The First Amended Complaint ("FAC") makes the following allegations, which
the Court must accept as true for purposes of ruling on this Motion:

Defendant owns and operates a chain of so-called "off-price" department stores
in California.  (FAC ¶ 7 (Docket No. 24)).  Every item offered for sale in those stores
is displayed with two prices:  the sale price and the "Compare At" price.  (*Id.* ¶ 15).
Reasonable consumers interpret the "Compare At" price to represent the amount
charged for an identical product by other merchants in the area.  (*Id.* ¶ 49).  When the
"Compare At" price is higher than the sale price, consumers are led to believe that the
item costs less than its market value.  (*Id.* ¶¶ 49, 192).  That belief (not surprisingly)
enhances consumer willingness to purchase the product.  (*Id.* ¶¶ 22-23).

While such comparative price advertising is generally beneficial, it becomes
problematic when retailers use unsubstantiated reference prices to entice the consumers
with sham bargains.  Recognizing this danger, the Federal Trade Commission ("FTC")
promulgated the following guidelines:

> Whenever an advertiser represents that he is selling below the prices being
> charged in his area for a particular article, he should be reasonably certain
> that the higher price he advertises does not appreciably exceed the price at
> which ***substantial sales*** of the article are being made in the area—that is,
> ***a sufficient number*** of sales so that a consumer would consider a
> reduction from the price to represent a genuine bargain or saving.

(*Id.* ¶ 33 (emphasis in original) (quoting 16 C.F.R. § 233.2(a)).  In other words, a
retailer has "a duty to provide 'appropriate support' for, and 'evidence to back up,' its
'Compare At' prices."  (*Id.* ¶ 34).

According to the FAC, the reference prices at Defendant's stores significantly
exceed the prices charged by other retailers in California.  (*Id.*  ¶¶ 43-45).  Defendant
uses "misleading methods," Plaintiffs allege, to inflate the "Compare At" amounts,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016

Title:      Jose Jacobo, et al. -*v*- Ross Stores, Inc.

leading the consumers to perceive Defendant's products as more valuable than they
actually are.  (*Id.*).  Plaintiffs do not specify the actual "prices at which substantial
sales of Defendant's products were made in California" or what "misleading methods"
Defendant used in its calculations.  Instead, the allegations are made exclusively "on
information and belief."  (*Id.*).

        Plaintiffs do allege, however, that the term "Compare At" is misleading in and of
itself.  Whereas reasonable consumers interpret the term as referring to identical
products sold elsewhere, Defendant defines "Compare At" on its website as follows:

        Compare at Pricing:

        We want you to shop with more information, so many of our products
        include a comparison price.  The comparison price represents a recent
        documented selling price ***of the same or similar product*** in full-price
        department stores or specialty stores.  Where identical products are not
        available, we may compare to similar products and styles.  Prices charged
        for the compared to products may change over time, but our goal is to
        provide you with a useful comparison point of what you may have paid in
        a competitive store, so you can be sure you are getting a great bargain
        when you shop at Ross.

(*Id.* ¶ 51 (emphasis added)).

        According to the FAC, no reasonable consumers would understand a "Compare
At" price as potentially referring to the price of a "similar" product.  (*Id.* ¶¶ 51-57).
According to Defendant's definition, the "Compare At" price "could be the regular,
retail price of the same item at other department stores.  Or, it could be the regular,
retail price of a 'similar' product.  It could be simply what Defendant believes a similar
product might sell for.  Or, it could be none of the above."  (*Id.* ¶ 61).  Nowhere on or
near the price tags does Defendant disclose to the consumers this unintuitive meaning
of "Compare At."  (*Id.* ¶ 64).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016
Title:      Jose Jacobo, et al. -v- Ross Stores, Inc.

The named Plaintiffs are two individuals who purchased multiple items from
Defendant's stores between June 20, 2011 and the present.  (*Id.* ¶ 140).  As to each of
those items, the "Compare At" price exceeded the sale price, signifying a good
bargain.  (*See, e.g., id.* ¶ 141).  The reference price, however, was significantly higher
than the prevailing retail price of identical items.  (*Id.* ¶ 148).  Had Plaintiffs been
aware of that fact, they would not have purchased the merchandise.  (*Id.* ¶ 149).

Plaintiffs assert five claims for relief on behalf of themselves and the putative
class.  The first three claims are brought under the three prongs of California Unfair
Competition Law ("UCL"):  (1) unfair business practices; (2) fraudulent business
practices; and (3) unlawful business practices.  (*Id.* ¶¶ 188-210).  The remaining two
claims are asserted for violations of the California False Advertisement Law ("FAL")
and the California Consumer Legal Remedies Act ("CLRA").  (*Id.* ¶¶ 210-31).

## II.    **LEGAL STANDARD**

In ruling on a motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To
survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to
'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citation
omitted).  "All allegations of material fact in the complaint are taken as true and
construed in the light most favorable to the plaintiff."  *Williams v. Gerber Prods. Co.*,
552 F.3d 934, 937 (9th Cir. 2008) (holding that a plaintiff had plausibly stated that a
label referring to a product containing no fruit juice as "fruit juice snacks" may be
misleading to a reasonable consumer).  The Court need not accept as true, however,
"[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  The Court, based on judicial
experience and common sense, must determine whether a complaint plausibly states a
claim for relief.  *Id.* at 679.

Both parties acknowledge that the heightened pleading standard of Rule 9(b)
applies to Plaintiffs' claims.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.
2009) ("Rule 9(b)'s particularity requirement applies to these state-law causes of action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016

Title:     Jose Jacobo, et al. *-v-* Ross Stores, Inc.

[*i.e.*, false advertisement claims].").  To advance past the pleading stage, therefore, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "It is not enough . . . to simply claim that [an advertisement] is false—[the plaintiff] must allege facts showing ***why*** it is false."  *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014) (emphasis in original); *see Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").  "It is well settled that fraud allegations based on 'information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded."  *Comwest, Inc. v. Am. Operator Servs.*, Inc., 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (internal quotation marks and citations omitted).  Courts have therefore required the plaintiff to detail the "who, what, when, where, and how" of the charged misconduct, *Vess*, 317 F.3d at 1106, which generally involves conducting a "precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported."  *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

## III.   DISCUSSION

Although there are important differences between the UCL, FAL, and CLRA, to state a viable claim under any of those statutes, Plaintiffs must allege facts showing that the advertisement in question is misleading to a reasonable consumer.  *See Williams*, 552 F.3d at 938 (stating that California's false advertising laws provide relief only when advertisements could deceive a reasonable consumer).  False advertisement laws prohibit  "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296 (2002)).  It is this element of deception, argues Defendant, that is not pleaded with particularity in the FAC.  (Motion at 3-4, 13).  All that Plaintiffs allege, Defendant points out, is a conclusion that Defendant's "Compare At" prices are higher than those advertised by other merchants for identical products. (*Id.*).  And because that conclusion is based not any concrete facts, but exclusively on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016
Title:      Jose Jacobo, et al. -v- Ross Stores, Inc.

Plaintiffs' "information and belief," Defendant urges the Court to dismiss all claims asserted against it.  (*Id.*).

The Court agrees.  It is insufficient under Rule 9(b) to simply assert on "information and belief" that "the prevailing retail prices for the items [Plaintiffs purchased] were materially lower than the 'Compare At' prices advertised by Defendant."  (FAC ¶ 148).  Plaintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their "belief" that the "Compare At" prices were inaccurate.  Plaintiffs could allege, for instance, that the items they purchased bore a "Compare At" price of $X but were sold at other retailers for a lower price of $Y.  Or perhaps Plaintiffs could plead facts showing that the purchased items were offered for sale exclusively in Defendant's stores.  In that case, the "Compare At" prices could be deemed misleading because they at best referred to "similar" and not to identical products.  But without any allegations explaining why or how Defendant's advertisements were deceptive, Plaintiffs' claims cannot satisfy the heightened pleading requirement of Rule 9(b).

Other courts have reached the same conclusion on similar facts.  In *Marilyn Sperling v. DSW Inc.,* for instance, another court in this District dismissed an analogous complaint, reasoning as follows:

> The Court agrees with Defendants and finds the FAC fails to allege why Defendants' comparative reference prices do not represent the "price at which a substantial number of vendors are selling the identical products." The FAC repeatedly alleges in conclusory fashion that Defendants' comparative reference prices do not represent the prevailing market prices for Defendants' products.  The FAC even alleges Defendants use "misleading, and/or subjective measures to inflate the[se] comparative prices, and thus artificially increase[] the discounts and savings they claim[] to be offering consumers."  Nowhere, however, does the FAC explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices.  As a result, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016

Title:      Jose Jacobo, et al. *-v-* Ross Stores, Inc.

FAC fails to satisfy Rule 9(b)'s heightened pleading requirements and is
subject to dismissal.

Order Granting Defendants' Motion to Dismiss at 11 (Docket No. 37), EDCV 15-
1366-JGB (SPx) (C.D. Cal. Nov. 19, 2015) (internal citations omitted); *see also
Branca v. Nordstrom, Inc.*, Order Granting in Part and Denying in Part Motion to
Dismiss ("*Branca* MTD Order") at 11 (Docket No. 18), CV 14-2062-MMA (JMA)
(S.D. Cal. Mar. 19, 2015) ("Although Plaintiff acknowledges that Rule 9(b) applies to
his claims, he merely alleges that the 'Compare At' prices are [fictitious].  The Court
finds that these conclusory allegations are insufficient under Rule 9(b).").  These
decisions are hardly novel:  Rule 9(b) prohibits pleading fraud without any factual
allegations explaining in what way the defendant's statements were misleading.

Plaintiffs' arguments to the contrary are just as conclusory as their allegations.
Plaintiffs suggest that "the Rule 9(b) heightened pleading standard is relaxed as to facts
. . . that are exclusively within the defendant's possession" (Opposition at 22) but do
not identify what facts those might be.  Indeed, the prices that other retailers charge for
the products at issue are just as easily available to Plaintiffs as they are to Defendant.
To the extent, therefore, Plaintiffs argue that all they need to allege at this stage is that
"the 'Compare At' prices Defendant advertised were not true" (*id.* at 23), they are
mistaken.  This allegation perhaps could be sufficient under Rule 8, but not under Rule
9(b).

Instead of addressing Defendant's contentions head on, Plaintiffs focus almost
entirely on a separate issue of whether it was reasonable for them to interpret the term
"Compare At" as referring to market prices of identical items as opposed to identical
*or* "similar" items.  (*Id.* at 14).  Plaintiffs seem to argue that Defendant's dual
definition of the term on its website was deceiving and misleading in and of itself.
(*See, e.g., id.* at 19 ("[T]aking Plaintiffs' allegations as true, Plaintiffs here sufficiently
allege that Defendant's 'Compare At' price tags are misleading.").  While Plaintiffs
could be correct that it is sufficient to allege that no reasonable consumer would
interpret "Compare At" prices to be prices of "similar" products, Defendant's own

CIVIL MINUTES—GENERAL                                                                    7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016

Title:      Jose Jacobo, et al. -*v*- Ross Stores, Inc.

interpretation of the term could not have, by itself, have deceived Plaintiffs.   What if Plaintiffs purchased goods that for which the "Compare At" prices *were* based on identical goods?

At the hearing, Plaintiffs argued that the Court's ruling would impose an insurmountable burden at the pleading stage.  It is not possible to know without conducting discovery, Plaintiffs emphasized, whether a particular "Compare At" price referred to an identical item or some unknown "similar" item.  Plaintiffs thus contended that they should be absolved from pleading with particularity that Defendant's "Compare At" prices were inaccurate because Plaintiffs have no way of knowing whether Defendant was comparing "apples to apples" or "apples to oranges."

Plaintiffs' argument is unpersuasive.  Under *Williams* and Rule 9(b), Plaintiffs must plead with particularity that the "Compare At" prices were not what *Plaintiffs* understood them to be—*i.e.*, that the prices were higher than what other stores in the area charged for identical items.  This pleading burden is not insurmountable because the way in which *Defendant* interpreted the term "Compare At" is irrelevant to whether Plaintiffs were actually deceived.  Plaintiff Jacobo, for instance, claims that he purchased a Levi's belt bearing a "Compare At" price of $25.00.  (FAC ¶ 141).  Even assuming that the "Compare At" price referred not to an identical belt, but to a "similar" belt, Plaintiff Jacobo could not have been misled if other stores in the area sold an identical belt for $25.00.  In other words, it is immaterial that Defendant was comparing "apples to oranges" when an "apples to apples" comparison was not deceiving.

To comply with *Williams* and Rule 9(b), Plaintiffs could therefore make one of two factual allegations.  First, Plaintiffs could plead that the items they purchased were sold at other stores in the area for prices lower than Defendant's "Compare At" prices. This allegation should not be made "on information and belief" but should be based on specific facts, such as the exact prices of identical goods offered for sale by other merchants.  Alternatively, Plaintiffs could plead that identical items could not be found at other stores in the area, indicating that Defendant's "Compare At" prices

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016

Title:       Jose Jacobo, et al. -v- Ross Stores, Inc.

misleadingly referred to "similar" items.  Such allegations would be sufficient to show that Plaintiffs were actually deceived when they interpreted "Compare At" prices as representing prices charged for identical goods.

In sum, until Plaintiffs plead with particularity that they were misled, their false advertisement claims cannot advance past the pleading stage.  Accordingly, the Motion is **GRANTED** *with leave to amend*.

Although the Court's ruling moots Defendant's remaining contentions, the Court nonetheless briefly addresses them either to avoid or narrow a potential motion to dismiss the Second Amended Complaint.

## A.      California Business and Professions Code section 17501

Defendant challenges the FAC's reference to the California Business and Professions Code section 17501, which provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement."  (FAC ¶ 208).  Defendant argues that because Plaintiffs do not allege to have interpreted Defendant's "Compare At" prices to represent "former prices," any potential claim under section 17501 fails.  (Motion at 24).

The Court agrees.  Plaintiffs should either remove the reference to section 17501 in the Second Amended Complaint or specifically allege that they understood the "Compare At" prices to mean former prices charged by Defendant.

## B.      California Civil Code section 1770(a)(13)

Similarly, Defendant seeks to dismiss the FAC's allegation referencing the California Civil Code section 1770(a)(13), which prohibits "false or misleading statements of fact concerning . . . amounts of price reductions."  (*Id.* ¶ 229).  Plaintiffs

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                 Date:  February 23, 2016
Title:       Jose Jacobo, et al. -*v*- Ross Stores, Inc.

fail to allege, Defendant argues, that they understood the "Compare At" prices to be "price reductions."  (Motion at 24-25).

The Court agrees.  Plaintiffs should either remove the reference to section 1770(a)(13) or specify which alleged misrepresentations concerned "price reductions."

## C.    <u>Plaintiffs' Article III and Statutory Standing</u>

Defendant argues that Plaintiffs lack both constitutional standing under Article III and statutory standing under the UCL and FAL.  (Motion at 11).

As to Article III standing, Defendant merely restates its argument on the merits. Plaintiffs have not been injured, Defendant argues, because the allegations fail to indicate that the "Compare At" prices in Defendant's stores do not correspond to the "prevailing retail prices."  (Motion at 11).   When issues of jurisdiction and substance are intertwined to this degree, it is inappropriate to resolve the dispute on jurisdictional grounds.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004) (jurisdictional issue went to the merits of the plaintiff's claim and was therefore inappropriate for resolution on Rule 12(b)(1)).   In any event, a successful amendment of Plaintiffs' substantive allegations would necessarily confer Article III standing. Defendant's argument is therefore superfluous.

As to statutory standing, Defendant claims that "the FAC does not sufficiently allege that Plaintiffs received something worth less than what they paid, or that they did not get a good deal."  (Reply at 3).  Defendant argues, in other words, that regardless of whether the "Compare At" prices were accurate, Plaintiffs could not have been economically injured if the value of the purchased goods was equal or greater to what Plaintiffs actually paid for those goods.  (*Id.*).  Defendant thus concludes that to advance past the pleading stage, Plaintiffs must plead facts showing that they did not receive a fair bargain.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016
Title:      Jose Jacobo, et al. -*v*- Ross Stores, Inc.

The Court is not persuaded.  It is true that to have standing under the UCL and
FAL, Plaintiffs must allege that they suffered some "economic injury."  *Kwikset Corp.
v. Superior Court*, 51 Cal. 4th 310, 322, 120 Cal. Rptr. 3d 741 (2011) (holding that the
UCL and FAL requires plaintiffs to "(1) establish a loss or deprivation of money or
property sufficient to qualify as injury in fact, *i.e.*, **economic injury**, and (2) show that
that economic injury was the result of, *i.e.*, **caused by**, the unfair business practice or
false advertising that is the gravamen of the claim.") (emphasis in original).  But the
Ninth Circuit has recognized that a bargain hunter is, in fact, economically harmed
when the seller inflates the **perceived value** of its products.  *Hinojos v. Kohl's Corp*.,
718 F.3d 1098, 1106-07 (9th Cir. 2013) (stating that "the bargain hunter's expectations
about the product he just purchased is precisely that it has a higher perceived value and
therefore has a higher resale value," and holding that "when a consumer purchases
merchandise on the basis of false price information . . . he has standing to sue under the
UCL and FAL because he suffered an economic injury").  Stated in more concrete
terms, the injury Plaintiffs allege to have suffered is the difference between false
"Compare At" prices (the advertised value of the product) and the sale prices (what
Plaintiffs actually paid for the product).  That injury is tangible and economic; both the
FTC and the courts have recognized as much.  16 C.F.R. § 233.2(a) (prohibiting
inaccurate "Compare At" prices); *Branca* MTD Order at 7 (holding that the plaintiffs
who alleged to have been misled by inaccurate "Compare At" prices have statutory
standing).

Defendant's attempts to distinguish *Hinojos* are unavailing.  It is of no import
that *Hinojos* involved "former price" comparisons (what the seller itself had previously
charged for the product) and not "Compare At" price comparisons (what other sellers
charge for the product).  In both cases, the consumers were allegedly led to believe that
the item costs less than its value.  When that belief is skewed due to false reference
prices, the consumers in both cases are injured in exactly the same manner.

Nor is *Hinojos* distinguishable because the panel bolstered its "economic injury"
analysis with the fact that the California Legislature has specifically prohibited
inflation of "former references prices."  (*See* Reply at 4); *Hinojos*, 717 F.3d at 1106.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016

Title:       Jose Jacobo, et al. -v- Ross Stores, Inc.

Defendant seems to suggest that because no statute explicitly provides that "sellers shall not misrepresent 'Compare At' prices when advertising their products," consumers who are misled by inaccurate "Compare At" prices suffer no economic injuries that can be redressed under the UCL and FAL.  *Hinojos* does not stand for that proposition.  The decision of the California Legislature to specifically address one type of misleading advertisements says nothing about whether injuries resulting from another type of misleading advertisements are actionable under California's general false advertisement laws.  Indeed, Defendant fails to articulate in what way misleading "Compare At" prices are not material to consumers or do not result in real harm. Plaintiffs clearly allege that they would not have purchased the products but for the "Compare At" prices.  (*See, e.g., id.* ¶ 148).  These allegations are more than sufficient to confer statutory standing under *Hinojos*.

       In sum, Plaintiffs have alleged standing to bring their claims.

       **D.     Plaintiffs' Standing to Represent Individuals Who Purchased
               Different Items**

       Defendant also cites a number of district court cases for the proposition that "a named plaintiff in a putative class action under the UCL or FAL 'cannot expand the scope of his claims to include a product he did not purchase . . . .'"  (Motion at 12 (quoting *Johns v. Bayer Corp.*, No. 09–cv–1935, 2010 WL 476688, *4–5 (S.D.Cal. Feb.9, 2010))); *see Mlejnecky v. Olympus Imaging Am. Inc.,* No. 2:10-CV-02630 JAM, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (holding that because the named plaintiff never purchased a certain product, he had no statutory standing under the UCL to assert claims with respect to that product on behalf of putative class members).

       "The majority of the courts that have carefully analyzed the question," however, "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Khasin v. R.C. Bigelow, Inc.*, No. C 12-02204 JSW, 2013 WL 2403579, at *4 (N.D. Cal. May 31, 2013) (internal quotation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-15-04701-MWF-AGR                Date:  February 23, 2016**

Title:       Jose Jacobo, et al. -*v*- Ross Stores, Inc.

marks and citations omitted) (holding that the plaintiffs had standing to bring claims
with respect to products they never purchased because the alleged representations were
the same); *see Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal.
2012) ("[B]ecause the same alleged misrepresentation was on all of the smoothie kit
regardless of flavor . . . the Court finds that Plaintiff has standing to bring claims on
behalf of purchasers of smoothie kit flavors he did not buy."). In cases of allegedly
false "Compare At" prices, courts have permitted plaintiffs to bring claims as to the
products they never purchased because it is "immaterial for the purposes of [their]
claims whether one purchased a pair of shoes versus a hat, so long as the item bore a
'Compare At' tag." *Branca*, Order Denying Defendant's Motion to Dismiss at 9
(Docket No. 26), No. 14-cv-2062-MMA (JMA) (S.D. Cal. Oct. 9, 2015).

         The Court agrees with these decisions. Defendant contends that various
differences in products do matter here because the FAC "materially distinguishes
between 'close out' items, which are sold at other department stores, and 'makeup'
items, which were sold exclusively at [Defendant's stores]." (Reply at 6). But the
Court is not convinced that this difference affects Plaintiffs' standing. As the district
court held in *Branca*, the variances between the items at issue is irrelevant here
because the only pertinent question, according to the FAC, is whether the "Compare
At" prices represented the prices charged at other stores for identical items. If a
particular item was offered for sale by other merchants, but for a price lower than
Defendant's "Compare At" price, then then it is plausible that the "Compare At" price
was misleading. And the same is true if the item was not offered for sale anywhere but
in Defendant's stores. Defendant fails to persuasively articulate why a plaintiff who
has been misled by a "Compare At" price of a "close-out" item has no standing to
represent a putative class member who has been misled by "Compare At" price of a
"markup" item, and vice versa. In either scenario, all that matters is (1) whether the
item was sold at other stores and (2) for what price.

         To the extent there is too much variability between the claims of putative class
members, however, Defendant's arguments can be addressed at the class certification
stage. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-04701-MWF-AGR                    Date:  February 23, 2016
Title:        Jose Jacobo, et al. -v- Ross Stores, Inc.

2990766, at *13 (N.D. Cal. July 20, 2012) ("Plaintiffs have alleged sufficient similarity
between the products they did purchase and those that they did not; any concerns of
DGIC and/or the Court about material differences are better addressed at the class
certification stage rather than at the 12(b)(6) stage.").  Although Defendant contended
at the hearing that the issue should be resolved at this stage to potentially avoid
burdensome class discovery, that burden can be minimized or eliminated in other
ways, such as through production of a representative sample of relevant class-wide
information.  *See* K*ress v. Price Waterhouse Coopers*, No. CIV S-08-0965 LKK GG,
2012 WL 4465556, at *3 (E.D. Cal. Sept. 25, 2012) (limiting class discovery to a
statistically significant sample of relevant information).  The Court therefore declines
to dismiss the claims of putative class members at this juncture.

### E.    **Request for Restitution**

Defendant argues that Plaintiffs' request for a restitutionary remedy fails
because Plaintiffs "have not alleged facts to show that the prices they paid exceed the
value of the items they bought . . . ."  (Motion at 22).  This contention is identical to
"statutory standing" argument discussed and rejected above.  Under the Ninth Circuit
decision in *Hinojos*, Plaintiffs need not plead that the value of the purchased goods was
less than the prices Plaintiffs paid.

As to the exact remedy, the Court has broad powers to enter "such orders or
judgments . . .  as may be necessary to restore any person . . . any money or property . .
. which may have been acquired by means of such unfair competition."  Cal. Bus. &
Prof. Code § 17203.  The California Supreme Court made clear that the "general
equitable principles underlying [these provisions] as well as [their] express language
arm the trial court with the cleansing power to order restitution to effect complete
justice."  *Fletcher v. Security Pac. Nat'l Bank*, 23 Cal.3d 442, 449, 153 Cal. Rptr. 28
(1979).  The Court could, for example, award the difference between what the
consumers paid for the products and what they would have paid had the "Compare At"
prices not been misrepresented.  *See Hinojos*, 718 F.3d at 1105.  Or the Court could
rescind the transactions and refund the amounts paid for the goods.  *Spann v. J.C.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV-15-04701-MWF-AGR**              Date:  **February 23, 2016**

Title:      Jose Jacobo, et al. -*v*- Ross Stores, Inc.

*Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at \*6 (C.D. Cal. Mar. 23, 2015) ("Rescission with complete restitution can be an appropriate remedy under the [false advertising laws]."). Whatever the appropriate remedy may be, Plaintiffs successfully allege that they are entitled to some form of restitution. To the extent Defendant suggests that Plaintiffs must commit themselves to a specific type of relief at this stage, the Court has found no authority supporting that proposition.

### F.      **Interpretation of "Compare At"**

Defendant contends that a reasonable consumer would "likely" interpret the term "Compare At" as referring to either identical or similar prices. (Motion at 16). The Court cannot determine at this early stage how a reasonable consumer would interpret this crucial term. The FAC's allegations certainly make it plausible that Plaintiffs' interpretation is correct; no more is necessary at this stage.

Similarly, the Court cannot rule as a matter of law that Plaintiff's interpretation was unreasonable in light of Defendant's definition of "Compare At" on its website. *See Williams*, 552 F.3d at 939 (holding that the district court erred in concluding that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"). This argument is better suited for a motion for summary judgment.

## IV.    **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED *with leave to amend***. Plaintiffs shall file a Second Amended Complaint on or before **March 7, 2016.**

IT IS SO ORDERED.

**EXHIBIT B**

We are not unmindful of the audit procedure required of county superintendents of schools by Education Code section 5010. However, this procedure does not, in our opinion, derogate from the power of county grand juries to investigate the official conduct of all county officers.

We therefore are of the view that a grand jury may examine the records of the county superintendent of schools pertaining to the county school services fund.

———◆———

Opinion No. 57-126—September 24, 1957

**SUBJECT:** FURNITURE AND BEDDING — Inspection bureau for, may not arbitrarily establish "prevailing market price" for purposes of determining whether advertising is misleading, but may arrive at such figure, which is the predominating price that can be obtained in the same market for comparable merchandise at the time of sale, by investigation of such local market.

**Requested by:** SENATOR, 40th DISTRICT.

**Opinion by:** EDMUND G. BROWN, Attorney General.

Carl W. Wynkoop, Deputy.

Honorable Fred H. Kraft, Senator from San Diego County, has asked this office for an interpretation of the phrase "prevailing market price" as used in section 17501 of the Business and Professions Code, prohibiting the dissemination of untrue or misleading advertising as applied to the sale of furniture and bedding. The inquiry also asks whether the Bureau of Furniture and Bedding Inspection may determine a prevailing market price and enforce it.

Our conclusions may be summarized as follows:

The phrase "prevailing market price" contained in section 17501 of the Business and Professions Code means the predominating price that may be obtained for merchandise similar to the article in question on the open market and within the community where the article is sold. As such, the prevailing market price is determined *wholly* and *exclusively* by the conditions of the market at the time and place of sale. It therefore follows that the Bureau of Furniture and Bedding Inspection has no authority under section 17501 to fix or determine *ab initio* the "prevailing market price."

Though the Bureau may not arbitrarily *establish* a "prevailing market price" for furniture, they may *arrive* at such a figure based on their investigation of the local furniture market. The Bureau may then utilize this figure to guide merchants in their advertising or to discipline false advertisers.

ANALYSIS

(All section references are to the Business and Professions Code unless otherwise noted.)

Section 19210 provides that a violation of sections 17500-17502 of the same code may be a basis for the suspension of a license to engage in the sale of furniture and bedding. Section 17500, as applied to furniture and bedding, prohibits the making of untrue or misleading statements in advertising items of furniture and bedding for sale. With respect to this prohibition, section 17501 provides that "the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published." The purpose of sections 17500 and 17501 is to insure the truth and candor of advertisements which describe or characterize merchandise as possessing a certain worth or value. Its purpose is not to regulate actual sales price. A merchant may advertise or sell his goods, so far as this statute is concerned, for what he will, so long as he makes no untruthful or misleading representations as to value or former price.

The phrase "prevailing market price" in section 17501 has been upheld as not being void for uncertainty by the appellate division in the unreported case of *People* v. *Dorn* (1950, CR-A 2642 (L.A. Sup. Ct. App. Div.). The court saw no more uncertainty in this phrase than in the phrase "market price" as used as a measure of damages in civil suits under sections 1784 and 1787 of the Civil Code and sections 3317, 3353 and 3354 of the Civil Code. We therefore turn to the legion of civil cases which have defined such terms as "market price," "market value" and "market worth" for the definition of the phrase.

The case of *Continental Rubber Works* v. *Bernson*, 91 Cal. App. 636, 638, in considering a suit for the value of goods sold, accepted the following definition: "Bouvier in his Law Dictionary defines the term 'value' when referring to property as 'the price which it will command in the market' and 'market value' as 'a price established by public sales, or sales in the way of ordinary business, as merchandise,' and the 'price at which such articles are sold and purchased.'" This case has been approved by *Wade* v. *Rathbun*, 23 Cal. App. 2d 758, 760, and *Valentin* v. *Valentin*, 93 Cal. App. 2d 588, 592. This office in considering this question of the meaning of "market value" and "market price" has reached substantially the same definition (Cal. Ops. Atty. Gen. No. 5674).

Again, in *Lund* v. *Lachman*, 29 Cal. App. 31, 34, the court was presented with this phrase and defined it as follows: "Obviously, the market value of a commodity is the highest price in the market where it is offered for sale which those having means and inclination to buy are willing to pay for it; and it is equally obvious, we think, that market values are created and controlled by the condition of the market with reference to supply and demand rather than by the particular or peculiar selling ability of the seller." The same thought was expressed, though in different terms, by the court in *Conlin* v. *Southern Pacific R. R. Co.*, 40 Cal. App. 743, 745.

From these cases we can logically reason to the conclusion that the Bureau of Furniture and Bedding Inspection cannot set the market price. By definition, the market price must evolve of itself from market conditions of supply and

demand unaffected by any extrinsic influence. Therefore, the Bureau cannot set the market price or it ceases to be the market price and becomes the Bureau price. For sake of completeness the term "prevailing" in the phrase does not alter the concept essentially. "Prevailing" is defined by Webster's New International Dictionary Unabridged, 2d Ed. as "most frequent" or "predominant." Thus, it is not any price on the market that the statute refers to, for, of course, there is often more than one price for the same goods appearing simultaneously on the market, but the most common one. The statute applies to both the wholesale and retail market in the same way.

The application of these two statutes, section 17501 and section 17500, occurs in the so-called "comparative advertising" field, of which there are two basic variations. To better explain these, two types of hypothetical situations will be assumed. A furniture dealer advertises a mattress as "worth $100" but that he will sell it for $50. Hence, the adjective "comparative", for the dealer is comparing worth with selling price as an inducement to the purchaser. Unless the mattress is actually worth $100, which under section 17501 means that similar mattresses are selling for $100 in the open local market, the advertisement is false and deceptive and the dealer is guilty of a violation. The same furniture dealer runs another advertisement which offers a couch which he claims was formerly selling for $100 but is now selling for $50. Unless the price which he advertises as the former price actually coincides with the "prevailing market price" of the couch within the next preceding three months, or if before that, unless the dealer states the time that such former price actually did prevail, the advertisement is again false and deceptive, and the vendor is within the prohibitions of section 17500.

Contrasting the first type of advertisement with the second type, we see that though the first type makes a representation as to value or worth and the second type makes a representation as to former price, they both must coincide with the same standard, the "prevailing market price," which means the actual selling price of the article on the open market.

The position and duties of the Bureau of Furniture and Bedding Inspection in relation to these false advertising statutes which are incorporated into the Furniture and Bedding Act by section 19210, require a brief discussion. The Bureau, of course, is charged with the duty of enforcing the laws applicable to their licensees. As to these particular statutes the Bureau may ascertain the "prevailing market price" either from investigation of the market or consultation with experts in the field. This information can be used either as a guide to merchants who seek to advertise fairly or as evidence in a disciplinary action against an accused licensee. In the same manner, the Bureau can determine former selling price of merchandise by investigation of past markets with the same ends in view. The key fact which must be remembered is that the Bureau is not *fixing* or *establishing* the "prevailing market price" *ab initio* by these proceedings. They are merely examining the market as it exists by itself and making observations. They are not doing anything creative in the field of pricing by setting their own prices out. Therefore, the above mentioned practices are wholly within the powers and rights, indeed the duties, of the Bureau of Furniture and Bedding Inspection.

**EXHIBIT C**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **ED CV 15-01143 RGK (SPx)** | Date | December 4, 2015 |
|---|---|---|---|
| Title | ***Steven Russell v. Kohl's Department Stores, Inc*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|

| Sharon L. Williams, Not Present | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) Plaintiffs' Motion for Class Certification (DE 25)**

## I.  __INTRODUCTION__

On June 11, 2015, Steven Russell ("Russell") and Donna Caffey ("Caffey") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), filed a class action against Kohl's Department Stores, Inc. ("Defendant").

On August 14, 2015, Plaintiffs filed a First Amended Complaint ("FAC"), alleging the following claims: (1) unfair, fraudulent, and unlawful business practices in violation of California Business & Professions Code § 17200 *et seq.* ("UCL") and (2) false advertising in violation of California Business & Professions Code § 17500 *et seq.* ("FAL").

On October 6, 2015, this Court denied Defendant's Motion to Dismiss the FAC. (Order Den. Mot. Dismiss FAC, ECF No. 32.)

Presently before the Court is Plaintiffs' Motion for Class Certification. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

## II.  __FACTUAL BACKGROUND__

Defendant is a large national retailer that owns and operates approximately 126 retail stores in California. Russell purchased products from Defendant on approximately 15 occasions throughout the Class Period[1]. Caffey purchased products from Defendant on over 10 occasions throughout the Class Period.

Each item that Defendant offers for sale in its stores displays two prices: (1) the selling price and (2) a significantly higher price that is represented to be the item's "regular" or "original" price ("Actual

---

[1] The Class Period is the period from June 11, 2011 to the present.

Retail Price" or "ARP"). By simultaneously displaying these two prices, Defendant leads consumers to believe that they are receiving a certain discount. Plaintiffs and Class Members each encountered these ARPs on the items they purchased from Defendant. Plaintiffs reasonably believed that the ARPs represented the price at which Defendant regularly sold each respective item, and that they were receiving a significant discount.

Plaintiffs allege that the ARPs affixed to each item at Defendant's California stores throughout the Class Period were false prices and not true ARPs for Defendant's merchandise. Plaintiffs also allege that the advertised ARPs were not the prevailing market retail prices within the three months immediately preceding the publication of the advertised ARPs, as required by California law. Therefore, Plaintiffs argue, Defendant falsely claims that each of its products has previously sold at a far higher ARP in order to induce Plaintiffs and Class Members to purchase merchandise at a purportedly marked down "sale" price.

Plaintiffs were exposed to Defendant's comparative price advertising and each relied upon such false representations of discounts when purchasing merchandise from Defendant. Plaintiffs were deceived and misled into buying products from Defendant that they would not have purchased if not for Defendant's false advertising. Plaintiffs lost money and/or property as a result.

In the current motion, Plaintiffs seek to certify the following class:

> All persons who, while in the State of California, and between June 11, 2011, and the present (the "Class Period"), purchased from Kohl's one or more items at any Kohl's store in the State of California at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).

(Pl.s' Mot. Class Certification at 1, ECF No. 25.)

## III.  <u>JUDICIAL STANDARD</u>

For certification of a class action under Federal Rule of Civil Procedure 23, the plaintiff bears the burden of establishing each of the prerequisites set forth in Rule 23(a). *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition to finding that the requirements of Rule 23(a) have been satisfied, the Court must also find that at least one of the following three conditions of Rule 23(b) is satisfied: (1) the prosecution of separate actions would create risk of (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

## IV.    DISCUSSION

Plaintiffs argue that all requirements imposed by Rule 23(a) are satisfied and that class certification is proper under Rule 23(b)(1) or 23(b)(2). They move to certify a class seeking both injunctive relief and monetary relief in the form of restitution.

For the following reasons, the Court finds that the class does not satisfy either Rule 23(b)(1) or Rule 23(b)(2). Without analyzing Rule 23(a) prerequisites, the Court therefore denies class certification.

### A.    Rule 23(b)(1)

As Plaintiffs seek certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B), the Court addresses each subsection in turn.

#### 1.    *Rule 23(b)(1)(A)*

A class is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions . . . would create inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . . " Fed. R. Civ. P. 23(b)(1)(A).

Plaintiffs argue that certification under subsection (A) is proper because "there are over 100,000 potential plaintiffs who could individually file suit for restitution," which would create a risk of "inconsistent and varying" adjudications and impose "incompatible standards of conduct" on Defendant. (Pl.s' Mot. Class Certification at 13, ECF No. 25.) Plaintiffs have essentially recited the language of Rule 23(b)(1)(A) without providing an iota of detail about why their class is appropriately certified under this subsection. In fact, in their reply, Plaintiffs never revisit their argument for certification under Rule 23(b)(1)(A), nor do they respond to Defendant's opposition challenging the propriety of Rule 23(b)(1)(A) for this class. Plaintiffs' silence on this issue is well taken, as they hold the losing position.

While the exact contours of Rule 23(b)(1)(A) are not clearly defined, the Ninth Circuit has repeatedly held that Rule 23(b)(1)(A) does not apply to classes seeking monetary relief. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) ("Infrequently, if ever, will [Rule 23(b)(1)(A) apply] when the action is for money damages."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages."). It is well established that Rule 23(b)(1)(A) does not function to certify classes seeking monetary relief. To understand why this is so, the Court reviews the purpose underlying the rule.

Rule 23(b)(1)(A) is rooted in practical necessity. The rule was designed to certify classes in those situations where "the defendant by reason of the legal relations involved can not as a practical matter pursue two different courses of conduct." *La Mar*, 489 F.2d at 466. As an illustration, the Advisory Committee Notes accompanying Rule 23 provide several examples of situations ideally suited for certification under Rule 23(b)(1)(A). These examples include: separate actions against a municipality to declare a bond, individual litigations of the rights and duties of riparian owners, or multiple lawsuits to declare landowners' rights and duties respecting a claimed nuisance. 39 F.R.D. 69, 100 (1966). In each of these scenarios, "practical necessity forces the [defendant] to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." 7AA Charles Alan Wright, Arthur R. Miller, et al. Federal Practice & Procedure §1773 (3d ed.).

Understanding the purpose behind Rule 23(b)(1)(A) cements the conclusion that the rule does

not envision or contemplate a class merely seeking monetary damages. In denying certification of a class seeking monetary relief, the most severe risk conceivable is that each class member would initiate an individual lawsuit, resulting in disparate monetary awards. Such a risk, however, wold not impose "incompatible standards of conduct" because a defendant could easily comply with judgments imposing varying levels of monetary liability. *McDonnell-Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of California*, 523 F.2d 1083, 1086 (9th Cir. 1975) ("In this case, a judgment that defendants were liable to one plaintiff would not require action inconsistent with a judgment that they were not liable to another plaintiff. By paying the first judgment, defendants could act consistently with both judgments."). As a leading treatise explains, "Rule 23(b)(1)(A) requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts, as typically would be the case in a mass-disaster or products-liability situation, for example." 7AA Charles Alan Wright, Arthur R. Miller, et al. Federal Practice & Procedure §1773 (3d ed.).

Regarding Plaintiffs' request for restitution, class certification is inappropriate under Rule 23(b)(1)(A). Although restitution is an equitable remedy, not technically a request for damages, in this context restitution is more akin to an award of monetary damages for each class member. *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV 07-00101, 2008 WL 8128621, at *18 (C.D. Cal. Jan. 7, 2008) (holding, in an identical situation, that "even though the relief sought is technically restitutionary, it is more analogous to an individual award of damages to each class member than to injunctive relief"). As previously explained, Rule 23(b)(1)(A) does not apply to classes seeking monetary relief. Therefore, Rule 23(b)(1)(A) cannot support Plaintiffs' motion to certify a class seeking restitution.

As to injunctive relief, class certification is proper under 23(b)(1)(A) because the rule contemplates a situation where, as here, Defendant is "obligated by law to treat members of the class alike." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks omitted). If Plaintiffs prevail on their claim for injunctive relief, Defendant would be required to refrain from its allegedly deceptive price-comparison advertising, thereby treating all class members in the same manner. Consider, for instance, a situation where certification is denied and some individuals secure an injunction prohibiting the price-comparison advertising whereas others are unable to prevail on the same action. In such a situation, Defendant would be held to "incompatible standards of conduct." Therefore, Rule 23(b)(1)(A) allows Plaintiffs to certify a class seeking injunctive relief.

2.    *Rule 23(b)(1)(B)*

Rule 23(b)(1)(B) allows class actions where individual lawsuits might "as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

Plaintiffs argue that certification under subsection (B) is proper because "an adjudication with respect to either Plaintiff here will necessarily involve a ruling regarding whether a reasonable consumer is or was likely to be deceived . . . . Such a ruling risks being dispositive of the interests of every other Class Member . . . or at a minimum would substantially impair or impede their ability to protect their own interests." (Pl.s' Mot. Class Certification at 13-14, ECF No. 25.) Plaintiffs fail to explain how an adjudication of their individual claims would impair the rights of putative class members. Their argument under subsection (B), much like their previous argument under subsection (A), relies on labels instead of logic, parroting the language of Rule 23 without providing any analysis.

Unlike subsection (b)(1)(A), which is concerned with the rights of the defendant, subsection (b)(1)(B) "is concerned only with the rights of unnamed class members." *McDonnell-Douglas*, 523 F.2d at 1086. A class is properly certified under Rule 23(b)(1)(B) only "[i]f the individual action inescapably will alter the substance of the rights of others having similar claims." *La Mar*, 489 F.2d at 467. Subsection (b)(1)(B) envisions class certification in situations involving a common fund from which all

class members will jointly recover, such that any adjudication by individual plaintiffs would necessarily impair the rights of other members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Examples include lawsuits by shareholders to declare a dividend, claimants seeking finite trust assets, or beneficiaries suing a retirement plan administrator. "In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.*

Here, the outcome of Plaintiffs' individual actions would not inescapably alter the rights of others similarly situated, who would remain free to pursue their own claims against Defendant. Regardless of how the Plaintiffs' individual lawsuits fared, each of the putative class members would still be entitled to bring an action against Defendant seeking restitution or an injunction. *In re First Am. Corp. ERISA Litig.,* 258 F.R.D. 610, 622 (C.D. Cal. 2009) ("Because the putative class members have an individual remedy, they can pursue relief on their own behalf."); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc*., No. C 11-0299, 2012 WL 5199458, at *6 (N.D. Cal. Oct. 22, 2012) ("[T]he damages sought . . . clearly are intended to provide relief to individual members of the class. Accordingly, the class cannot be certified under Rule 23(b)(1)(B).").

Accordingly, certification is improper under Rule 23(b)(1)(B).

## B.  Rule 23(b)(2)

Rule 23(b)(2) authorizes class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In the present action, Plaintiffs seek an injunction preventing Defendant from disseminating false price-comparison advertising schemes. (Pl.s' Mot. Class Certification at 18, ECF No. 25.) Plaintiffs also seek monetary relief in the form of restitution, but they do not specify how restitution is to be measured or calculated across the class. (Pl.s' Mot. Class Certification at 14-17, ECF No. 25.)

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). This case typifies the kind of action properly certified under Rule 23(b)(2) insofar as Plaintiffs seek a single injunction prohibiting Defendant from further disseminating false price-comparison advertising schemes. If Plaintiffs can prove that Defendant engaged in a fraudulent price-comparison advertising scheme, then a single injunction prohibiting Defendant from continuing such misleading advertising practices would provide relief to all class members at once. Therefore, Plaintiffs' class is appropriately certified under Rule 23(b)(2) to the extent the class seeks injunctive relief.

Of course, the analysis does not end there because Plaintiffs also move to certify a class seeking monetary relief in the form of restitution. While certification of a class seeking monetary relief is not categorically barred under Rule 23(b)(2), the monetary relief must be incidental to the injunctive relief. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("We now hold that [claims for monetary relief] may not [be certified under Rule 23(b)(2)], at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief."). Here, Plaintiffs argue that the monetary relief sought is merely incidental to and flows directly from the injunctive relief. According to Plaintiffs, the claim for injunctive relief is the linchpin of the entire lawsuit because a finding that injunctive relief is appropriate will "result in the Court exercising its discretion . . .  to order some form of restitution." (Pl.'s Reply ISO Mot. Class Certification at 9, ECF No. 48.) The Court disagrees.

For guidance on this issue, the Court turns to the underlying rationale that prompted the Supreme Court to curtail the certification of classes seeking monetary relief under Rule 23(b)(2). After considering the structure and history of Rule 23(b)(2), the Supreme Court noted, "The key to the (b)(2)

class is 'the indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. at 2557. Because Rule 23(b)(2) contemplates "an indivisible injunction benefitting all its members at once," there is no reason to determine whether common issues predominate. *Id.* at 2558. Moreover, Rule 23(b)(2) obviates the need to provide notice or an opportunity for potential class members to opt out because "when the class is mandatory . . . depriving people of their right to sue in this manner complies with the Due Process Clause." *Id.* at 2559. The same rationale does not apply when class members seek primarily monetary relief; instead, a class action seeking individualized monetary relief is more appropriately governed by Rule 23(b)(3) for two reasons. *Id.* at 2558. First, unlike a class seeking a single injunction that applies uniformly to each class member, a class seeking primarily monetary relief must demonstrate predominance under Rule 23(b)(3). *Id.* at 2559. Second, Rule 23(b)(3) requires notice and opportunity to opt out because the Supreme Court has held that "[i]n the context of a class action predominantly for money damages . . . absence of notice and opt-out violates due process." *Id.* For these reasons, the Court held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 2557.

Based on the reasoning in *Dukes*, a class seeking monetary damages may be certified under Rule 23(b)(2) only where the monetary relief can be uniformly applied without the need for individualized determinations, as with statutory or punitive damages. Where, on the other hand, the monetary relief varies according to each class member, certification under Rule 23(b)(2) is improper. Applying this framework to the case at hand, the Court concludes that Plaintiffs' request for monetary relief is not incidental to the injunctive relief, and, therefore, the restitution claim is not properly certified under Rule 23(b)(2). Any claim for restitution in the present case will necessarily depend on the unique circumstances of the particular class member. Circumstances such as whether a class member used coupons, how many products she purchased, which products she purchased, and the disparity between the stated and actual ARP on those specific products will drive the determination of any restitution award. The restitution inquiry is highly individualized and, for the reasons articulated above, cannot be certified under Rule 23(b)(2).

Numerous district courts have arrived at the same conclusion in addressing Rule 23(b)(2) certification of classes seeking both an injunction and restitution under the UCL. *I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1132 (N.D. Cal. 2015) ("[T]he amount of monetary damages due each class member, if any, would be dependent on the individual circumstances of each class member, and thus cannot be determined formulaically. *Dukes* therefore precludes these restitution claims from being certified under (b)(2)."); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014) (declining to certify under Rule 23(b)(2) because "Plaintiffs seek individualized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth"); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) ("[H]ere plaintiffs seek individualized awards of monetary restitution which would require individualized assessments of damages based on how many products the class member had bought."); *In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2011 WL 1301527, at *7 (N.D. Cal. Mar. 31, 2011) ("Because the restitution amount is dependent on the particular purchases made and amounts paid by indirect purchasers, monetary relief will dictate the key procedures utilized in this case and require individualized inquiries and hearings."); *Sepulveda v. Wal-Mart Stores, Inc.*, 464 F. App'x 636, 637 (9th Cir. 2011) (upholding the district court's ruling that monetary relief was not incidental where "the damages plaintiffs sought would 'require highly individualized proof'").

Plaintiffs retort by invoking *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011). There, a plaintiff brought a class action lawsuit against the manufacturer of Children's Coldcalm medicine, alleging that the defendant violated the UCL by mislabeling the Coldcalm product. *Id.* at 585. The plaintiff moved to certify a class seeking both restitution and injunctive relief under Rule 23(b)(2). *Id.* at

592. The court explained that before it could certify the class seeking monetary relief under Rule 23(b)(2), "it must consider whether Plaintiff's claims for monetary damages are incidental to Plaintiff's claim for injunctive relief." *Id.* In so doing, the court found that no individualized issues existed because each Coldcalm product had the same price, meaning that each class member would be entitled to the same refund "differing only due to the number of packages purchased." *Id.*

Plaintiffs' reliance on *Delarosa* is misplaced. For starters, unlike the *Delarosa* class members who all purchased the identical product at the same price, the class members in the present case purchased thousands of items at different price points. Moreover, class members here were exposed to varying levels of disparity between stated and actual ARP—a consideration that will certainly affect the amount of restitution to be awarded. Compounding matters further, Plaintiffs here have not even identified a specific measure of restitution for the Court to examine whether the monetary relief will require individualized determinations. Instead, Plaintiffs flit between numerous theories of restitution (disgorgement, rescission with restitution, false discount value) without committing to or explaining how restitution will be calculated under any single theory. (Pl.s' Mot. Class Certification at 14-17, ECF No. 25.) Therefore, the Court finds the *Delarosa* holding to be inapposite to the current action.

The Court has also considered the Ninth Circuit's recent decision in *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which bears on the issue of restitution under the UCL and FAL. After reviewing the appellate court's reasoning in that case, this Court concludes that *Pulaski* is distinguishable, and, therefore, does not alter the outcome of the instant motion.

In *Pulaski*, the plaintiffs used Google's Adwords program, which allowed them to bid for advertisement placement on various websites of their choosing; Google, however, failed to inform plaintiffs that their advertisements could appear on certain other websites that they had not authorized. *Id.* at 982-83. Plaintiffs were charged each time a consumer clicked on their advertisements—even those advertisements placed on websites that plaintiffs did not choose or know about. *Id.* Consequently, plaintiffs brought a class action, alleging that Google violated the UCL and FAL. *Id.* Plaintiffs sought to certify a class under Rule 23(b)(3) and proposed a measure of restitution based on "the difference between what [plaintiffs] actually paid and what they would have paid had Google informed them" of the undisclosed websites. *Id.* at 983. To provide a workable economic model for damages, plaintiffs submitted expert testimony describing three alternative measures for restitution. Admittedly, plaintiffs did gain some value from having their advertisement placed on the unauthorized websites, which prompted the district court to reject plaintiffs' restitution models because they did not account for the benefits that plaintiffs acquired after the fraudulent act. *Id.* at 984.

The Ninth Circuit reversed, holding that "UCL and FAL restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Id.* at 989. According to the Ninth Circuit, whether the plaintiff actually gained any benefit after the misrepresentation is irrelevant because "restitution under the UCL and FAL measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase." *Id.*
Therefore, the district court erred in requiring plaintiffs to submit a damages model that accounted for benefits acquired after Google's alleged misrepresentation. Having clarified the nature of restitution, the appellate court then reviewed plaintiff's expert report and concluded that one of the economic models provided a workable method for calculating restitution that obviated the need for any individualized inquiry under Rule 23(b)(3). *Id.*

*Pulaski* does not alter this Court's conclusion for two reasons. First, unlike the plaintiffs in *Pulaski*, Plaintiffs in the present action failed to submit a single expert report supporting a workable method of determining damages. Instead, as mentioned previously, Plaintiffs present an array of potential economic models in a cursory fashion without any detailed explanation. (Pl.s' Mot. Class

Certification at 14-17, ECF No. 25.) Therefore, on that basis alone, *Pulaski* is inapposite because Plaintiffs here have not met their burden to present a viable damages model. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).").

Second, the entire analysis in *Pulaski* centered on certification under Rule 23(b)(3) whereas this Court's order concerns only Rule 23(b)(2). As explained previously, in a situation where the monetary relief presents individualized questions, Rule 23(b)(3) provides a more appropriate analytical framework for class certification because of its predominance inquiry and notice requirements. Plaintiffs in the instant action did not move to certify the class under Rule 23(b)(3), which provides another basis for holding that *Pulaski*, with its focus on Rule 23(b)(3), does not inform the analysis here.

Based on the foregoing, the Court concludes that the monetary relief sought is not incidental to the injunctive relief. Accordingly, the Court grants class certification under Rule 23(b)(2) for the purposes of injunctive relief but not for purposes of monetary relief in the form of restitution.

## C.   <u>Request for Time to Conduct Pre-certification Discovery</u>

According to Local Rule 23-3, a motion for class certification must be filed at the latest 90 days after the filing of a complaint. C.D. Cal. Civ. R. 23-3. Plaintiffs' request additional time to conduct pre-certification discovery and ask the Court to relieve them of the Rule 23-3 filing deadline. (Pl.s' Mot. Class Certification at 8, ECF No. 25.) The Court declines to afford Plaintiffs additional time to conduct pre-certification discovery.

First, Plaintiffs contend that they need more time to "seek documents relating to the advertising and pricing practices of Defendant, and deposition testimony from Defendant" in order to substantiate their class allegations. Plaintiffs have previously filed two motions seeking relief from Rule 23-3 to conduct more discovery, and this Court denied both requests. (ECF No. 20, 22.) Neither request demonstrated that discovery was likely to yield evidence to substantiate class allegations. The latest request also fails to provide any new information justifying the request.

Second, Plaintiffs intimate that this Court's scheduling order somehow impeded their ability to schedule an early 26(f) conference, thereby preventing them from starting discovery early. Not so. This Court set the initial scheduling conference for November 16, 2015. The Federal Rules of Civil Procedure require the parties to hold a 26(f) conference *at least* 21 days prior to the initial scheduling conference. Plaintiffs argue that because of the 21-day requirement, they could not participate in a 26(f) conference any time before October 26, 2015. Plaintiffs' argument is nonsensical, as Rule 26(f) only requires the parties to confer *at least* 21 days before the scheduling conference. It does not set a limit as to how early the parties may arrange for such a conference.

Accordingly, the Court declines to allow more time for pre-certification discovery.

**V.**    **CONCLUSION**

      Accordingly, the Court **GRANTS** Plaintiffs' motion to certify a class seeking injunctive relief, but **DENIES** Plaintiffs' motion to certify a class seeking restitution.

      **IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer      _____
