UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLIA PICKLES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATE SPADE AND COMPANY, <br><br> Defendant. | Case No. 15-cv-05329-VC <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 48 |

Laura Marks, Gaylia Pickles, and Donna Vandiver have sued Kate Spade and Company, alleging Kate Spade has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, and Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46 *et seq.* This case in a putative class action, in which the plaintiffs seek to represent a class of California consumers and a class of Texas consumers. The plaintiffs allege that Kate Spade manufactures inferior quality goods for sale at its outlet stores, while giving shoppers the false impression that those items were manufactured for and previously sold at regular Kate Spade boutiques at much higher prices, such that shoppers wrongly believe they are getting boutique-quality goods for a bargain. Kate Spade has moved to dismiss the plaintiffs' second amended complaint in its entirety for failure to state a claim. The motion is denied.

**I.**

Kate Spade argues that the plaintiffs' claims under the UCL, FAL, CLRA, and DTPA must be dismissed under Fed. R. Civ. P. 8, 9(b), and 12(b)(6) because the plaintiffs have not

pleaded with the requisite particularity and plausibility that Kate Spade made a false or misleading statement that is likely to deceive a reasonable consumer.

It's true that the plaintiffs' UCL, FAL, CLRA, and DTPA claims are subject to Rule 9(b) because the plaintiffs' theory of the violations sounds in fraud.  *See* Fed. R. Civ. P. 9(b); Cal. Bus. & Prof. Code § 17200; Cal. Bus. & Prof. Code §§ 17500, 17501; Cal. Civ. Code § 1770(a)(13); Tex. Bus. & Com. Code Ann. §§ 17.46, 17.45(13); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (quoting *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 824–25 (N.D. Tex. 2001)).  "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124 (quoting *Bly–Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

The plaintiffs have satisfied Rule 9(b) in the second amended complaint.  The plaintiffs plausibly allege that Kate Spade uses unique 4-letter product codes to identify merchandise that it manufactures exclusively for sale at its outlet stores, and that this merchandise is similar in appearance to items sold at Kate Spade's flagship boutiques, but of inferior quality.  The plaintiffs also plausibly allege that Kate Spade advertises former prices for items sold at its outlet stores using the phrase "our price," and tells outlet store customers that the current sale price for a particular item is a percentage discount from the purported former "our price."  The plaintiffs further allege, in detail, that their investigation – consisting of internet comparative and archival research, Kate Spade corporate documents, and interviews with current and former Kate Spade employees – has uncovered that Kate Spade's "our price" representations are false, because goods marked with the outlet-only 4-letter codes were in fact never sold at Kate Spade flagship stores or anywhere else at the advertised "our price" prices, much less within the relevant time

period.  *See* Cal. Bus. & Prof. Code § 17501.  The plaintiffs plausibly allege that Kate Spade's representations as to the false "our price" and the corresponding percentage discount deceive reasonable consumers into thinking they are purchasing boutique-quality merchandise at a significant savings, when in fact they are receiving inferior quality made-for-outlet merchandise at an inflated price.  And the plaintiffs allege that they themselves were so deceived: that they purchased particular goods marked with an "our price" former price and advertised at a particular discount, at identified Kate Spade outlet stores, on identified dates.  The plaintiffs attach exhibits showing that the items they purchased were tagged with the unique 4-letter product codes that the plaintiffs allege Kate Spade uses to differentiate its inferior, made-for-outlet goods.  Finally, the plaintiffs allege they would not have purchased the items but for Kate Spade's misrepresentations that they were receiving boutique-quality merchandise at a significant discount.  These allegations are more than specific enough to give Kate Spade notice of the alleged misconduct against which it must defend, and to show that the plaintiffs have a factual basis for their fraud claims.  *See Kearns*, 567 F.3d at 1125; *cf. Sperling v. DSW Inc.*, No. 15-1366-JGB, 2016 WL 354319, at *7 (C.D. Cal. Jan. 28, 2016).[1]

---

[1] Kate Spade also argues that the plaintiffs must allege that neither the items they purchased nor products "similar to those items" were sold either by Kate Spade or other retailers at the advertised "our price" former prices within the relevant time period under the FAL.  *See* Cal. Bus. & Prof. Code § 17501.  Kate Spade cites for this proposition a California Attorney General opinion from 1957.  But even if that stale opinion reflected the Attorney General's current view of the law, which is doubtful, a state attorney general opinion is persuasive authority, and is not binding on this Court.  *See, e.g.*, *Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1079 (E.D. Cal. 2009) (citing *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1156 n.4 (C.D. Cal. 2006)).  Nor does the opinion, in the unlikely event it remained relevant in some other context, seem applicable to this case, because it did not seem to contemplate a situation where a retailer advertised a former price as "our" price.  In that scenario, it makes little sense to compare "similar" products sold in other stores.  Furthermore, in today's brand-obsessed, seasonally dependent fashion market, where the finest details and distinctions make a world of difference to many consumers, the universe of items that could be considered truly "similar" to the ones the plaintiffs purchased would be quite small.  Indeed, a product manufactured by Kate Spade for sale at its boutique stores, using higher quality materials and better workmanship, of similar visual design to the made-for-outlet items the plaintiffs actually purchased, which they have alleged were of inferior quality to Kate Spade boutique items, would likely not be "similar" products within the meaning of the Attorney General's opinion, given the actual difference in market value of those items.

## II.

Kate Spade also argues that Vandiver's DTPA claim must be dismissed because Vandiver has not alleged she suffered actual economic damages, as the statute requires. *See* Tex. Bus. & Com. Code § 17.50(a); *Brown v. Bank of Galveston, Nat. Ass'n*, 963 S.W.2d 511, 513 (Tex. 1998), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). But the plaintiffs allege that Kate Spade's made-for-outlet merchandise, which Vandiver purchased, is of "inferior quality," and that Kate Spade has induced consumers to purchase made-for-outlet merchandise "at artificially inflated prices," i.e., that the purportedly "discounted" sale prices were still higher than the items' true value. Those allegations support the inference that Vandiver received items that were worth less than the price she paid for them, such that she suffered actual economic harm. *See W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988) (a DTPA plaintiff can recover actual damages measured either by "out of pocket" damages, i.e. the difference between the amount paid and the value received, or "benefit of the bargain" damages, i.e. the difference between the value as represented and the value actually received); *cf. Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("The plaintiffs agreed to pay a certain price for Carter's clothing, which they do not allege was defective or worth less than what they actually paid."); *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 51 (D. Mass. 2015) ("[I]t appears [the plaintiff] paid $49.97 for a sweater that is, in fact, worth $49.97. . . . She does not allege that it is worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective.").

## III.

In a similar vein, Kate Spade argues that the plaintiffs' prayers for monetary damages and monetary restitution must be dismissed under Rule 12(b)(6) because they have failed to allege that they overpaid for the items they purchased. But as previously explained, the plaintiffs allege that Kate Spade's made-for-outlet merchandise was of inferior quality and that its sale prices for these items were still artificially inflated. The plaintiffs' prayers for monetary damages and

restitution therefore survive as well.

**IT IS SO ORDERED.**

Dated: July 26, 2016

_____
VINCE CHHABRIA
United States District Judge