Jeffrey K. Compton (SBN 142969)
Mark A. Ozzello (SBN 116595)
Ari Y. Basser (SBN 272618)
MARKUN ZUSMAN FRENIERE
& COMPTON LLP
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Telephone: (310) 454-5900
Facsimile: (310) 454-5970
jcompton@mzclaw.com
mozzello@mzclaw.com
abasser@mzclaw.com

*[Additional Counsel on Signature Page]*

*Attorneys for Plaintiffs Laura Marks, Gaylia Pickles, And Donna Vandiver, individually and on behalf of all others similarly situated*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
P. Craig Cardon, Cal. Bar No. 168646
Dylan J. Price, Cal. Bar No. 258896
Jay T. Ramsay, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701
Email:      ccardon@sheppardmullin.com
            dprice@sheppardmullin.com
            jramsay@sheppardmullin.com

*Attorneys for Defendant*
*KATE SPADE & COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA MARKS, GAYLIA PICKLES AND DONNA VANDIVER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>KATE SPADE AND COMPANY, a Delaware corporation, and DOES 1-50, inclusive,<br><br>        Defendant. | Case No. 3:15-CV-05329-VC<br><u>Hon. Judge Vince Chhabria</u><br><br>**JOINT FURTHER CASE MANAGEMENT STATEMENT [LOCAL RULE 16-9]**<br><br>DATE:     August 16, 2016<br>TIME:     1:30 p.m.<br>PLACE:   Courtroom 4, 17th Floor |

SMRH:478688158.1

## CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT

Pursuant to Local Rule 16-9, a meet and confer session was held on July 25, 2016, between Ari Basser of Markun Zusman Freniere & Compton, LLP, counsel for Plaintiffs Laura Marks, Gaylia Pickles, and Donna Vandiver, and Dylan Price of Sheppard, Mullin, Richter & Hampton, LLP, counsel for Defendant Kate Spade and Company ("Kate Spade").

Pursuant to Local Rule 16-9(d), the parties, by and through their undersigned counsel, submit this Joint Further Case Management Statement to report on the progress of the case and provide the Court with an update on certain issues and positions set forth in the parties' initial Join Case Management Conference Statement and Rule 26(f) Report (*see* ECF Dkt. No. 23), which the parties incorporate herein by this reference.[1]

### I. BRIEF STATEMENT OF THE CASE

**The Parties Jointly Submit the Following Statement of the Case:**

Plaintiffs' Second Amended Complaint is a false former pricing action which alleges violations of the following state laws: 1) California's Unfair Competition Law; 2) California's False Advertising Law, Cal. Bus. & Prof. Code Sections 17500, *et seq.*; 3) California's Consumers Legal Remedies Act, Cal. Civ. Code Sections 1750, *et seq.*; and, 4) Texas' Deceptive Trade Practices Act, Tx, Bus. & Com. Code Section 17.46, *et seq.*

Plaintiffs continue to assert that Kate Spade sold and still sells merchandise in its outlet stores ("Outlet Merchandise") by misleading consumers into believing they are getting mainline designer retail apparel at a significant discount from its former, original, or regular price. Kate Spade manufactures goods for exclusive sale at its Outlet stores represented with former "our price" prices. Those goods, however, are of inferior quality and never actually sold—or intended to be sold—at the purported

---

[1] The Further Case Management Conference was continued from August 2, 2016, to August 16, 2016. [*See* ECF Dkt. No. 56.]

-1-

former, original, or regular "our price" price. Rather, the prices Kate Spade affixes to its outlet-exclusive items are intentionally inflated to give the false impression those goods are more valuable than they actually are, inducing consumers to spend money they otherwise would not.

*Kate Spade's Position Re Certain of Plaintiffs' New Allegations*

Kate Spade continues to deny that its "Our Prices" are false and that its outlet pricing structure is in any way misleading. Kate Spade further denies the additional allegations in the SAC relating to the allegedly "inferior quality" of the goods sold in Kate Spade's outlet stores. Although Kate Spade may design certain products for sale in its outlet stores, Kate Spade's outlet pricing is specific to those products. In other words, Kate Spade's pricing of its outlet products is based on the characteristics of those products – it is *not* based on the characteristics of other products with different characteristics (whether higher quality or otherwise).

## II. KATE SPADE'S MOTIONS TO DISMISS AND THE COURT'S DENIAL ORDER

On January 20, 2016, Plaintiffs filed an amended complaint ("FAC"). [ECF Dkt. No. 15.] On May 5, 2016, this Court issued an Order granting Kate Spade's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") with leave to amend.

On May 26, 2016, Plaintiffs filed an amended complaint ("SAC") [ECF Dkt. No. 47], which addressed the Court's concerns regarding the pleading requirements of Rules 8 and 9(b). On June 6, 2016, Kate Spade filed its Motion to Dismiss Plaintiffs' SAC [ECF Dkt. No. 48]. On July 26, 2016, the Court issued an order denying Kate Spade's Motion to Dismiss. [ECF Dkt. No. 54.]

*Kate Spade's Position*

Kate Spade is currently analyzing the Court's Order denying its Motion to Dismiss Plaintiffs' SAC and evaluating whether to file a motion for reconsideration as to Plaintiff Vandiver's claims under the Texas Deceptive Trade Practices Act.

-2-

Indeed, it appears that the Court's Order confuses the allegations made by Ms. Vandiver in the SAC. Specifically, the Court's conclusion that Ms. Vandiver sufficiently alleges that she has suffered actual economic damages is based on the Court's finding that:

> [T]he plaintiffs allege that **Kate Spade's made-for-outlet merchandise, which Vandiver purchased, is of "inferior quality,"** and that Kate Spade has induced consumers to **purchase made-for-outlet merchandise "at artificially inflated prices," *i.e.*, that the purportedly "discounted" sale prices were still higher than the items' true value**. Those allegations support the inference that Vandiver received items that were worth less than the price she paid for them, such that she suffered actual economic harm.

[ECF Dkt No. 54 (Order at p. 2 (emphasis added)).]

However, the "inferior quality" allegations in the SAC allege that Kate Spade's outlet goods are not of a quality consistent with the listed "our prices." There is no allegation in the SAC that Kate Spade's outlet goods are not of a quality consistent with the actual selling prices. Similarly, the SAC alleges that the prices that are "artificially inflated" are the "our prices" – not that the lower selling prices that customers actually pay. [*See*, *e.g.*, SAC ¶ 12 ("[T]he public was not informed that the merchandise manufactured for the Kate Spade New York Outlet shops was of inferior quality. Although the merchandise was of inferior quality, Kate Spade touted its **artificially inflated former "our price" price** as a value anchor to create the *illusion* of greater value") (emphasis added).]

However, in advance of moving for reconsideration (and in order to avoid such motion), Kate Spade intends to meet and confer with Plaintiffs in an attempt to resolve the perceived deficiencies in the SAC. In particular, although Plaintiff Vandiver (the only Texas plaintiff) does not allege that the goods she purchased were worth less than the prices she actually paid, Plaintiffs Marks and Pickles do, in fact, assert allegations that at least purport to allege as much. *See* SAC ¶ 45 (alleging that the "prevailing retail price" for the goods Ms. Marks purchased during the three months immediately prior to Ms. Marks' purchase were "less than" the

-3-

discounted prices that Ms. Marks paid), ¶ 49 (asserting similar allegation on behalf of Ms. Pickles). Accordingly, Kate Spade would be willing to forego filing a motion for reconsideration if Plaintiffs agree to file a Third Amended Complaint adding a similar allegation on behalf of Ms. Vandiver. Kate Spade would further stipulate that it would not file a Rule 12 motion as to any such Third Amended Complaint.

### Plaintiffs' Position

The "position" of Kate Spade is simply re-argument of its Motion to Dismiss. While Plaintiffs are willing to meet and confer with Kate Spade, they presently have no intention of filing a Third Amended Complaint.

Kate Spade's position misrepresents the allegations made by Texas plaintiff Ms. Vandiver and does not accurately reflect Texas law. The Court is correct that Ms. Vandiver has adequately pled that she suffered actual economic harm under Texas law. The Texas Supreme Court has affirmed that economic damages under the DTPA include both out of pocket expense and loss of "benefit of the bargain." *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988). *See also Arthur Anderson & Co. v. Perry Quip. Corm.,* 945 S.W. 2d 812, 817 (Tex. 1997) (permitting a plaintiff asserting a claim under the DTPA to recover the greater of out-of-pocket damages or benefit-of-the bargain damages measured by the difference between the value as represented and the value received); *Manon v. Tejas Toyota*, 162 S.W.3d 743 (Tex. App-Houston [1st] 2005) (permitting recovery of benefit-of-the-bargain damages under the DTPA). Under an expectancy theory, "loss of benefit of the bargain is the difference between the value *as represented* and the *value actually received*." *Id.* (emphasis added). Ms. Vandiver's claim that she suffered economic injury is sufficient to assert a claim under the DTPA.

Plaintiff Vandiver alleges that she relied on Kate Spade's false and deceptive advertising and purchased a handbag and wallet that were falsely represented as having former prices with an in-store discount of 50%. (SAC at ¶ 53.) Ms. Vandiver

-4-

specifically relied on receiving the benefit of the bargain, or the difference between the "our price" values *as advertised*, and the discounted prices *actually* paid. This is sufficient to establish that Ms. Vandiver has suffered economic damages under the DTPA.

## II. DISCOVERY

### a. Discovery Conducted to Date

Discovery has been stayed since filing of the Complaint on November 20, 2015. At the initial Case Management Conference, the Court entered a formal stay pending a ruling on Defendant's Motion to Dismiss Plaintiffs' SAC. No discovery has been conducted to date. Plaintiffs believe that the stay of 8 months should be immediately lifted so that discovery can commence.

Kate Spade believes that discovery should continue to be stayed until the issues concerning Kate Spade's potential motion for reconsideration addressed in Section II, above, are resolved.

### b. Limitations On Discovery

*Plaintiffs' Position:*

Plaintiffs believe that, should Defendant's Motion to Dismiss the SAC be denied, discovery should not proceed in phases. The Manual for Complex Litigation recognizes that information about the nature of the claims on the merits and the proof that they require is a factor in the decision to certify a claim or claims. Furthermore, an analysis of whether the requirements of Rule 23 have been met will entail some overlaps with the merits of the Plaintiffs' underlying claims. *See Comcast Corp. v. Behrend* (2013) 133 S. Ct. 1426, 1432 (class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs cause of action.) Plaintiffs believe that bifurcating discovery will complicate rather than simplify these proceedings and will likely generate additional discovery disputes that will increase the cost and burden of litigation this matter.

***Kate Spade's Position:***

Kate Spade contends that, upon commencement, discovery should be conducted in two phases: (1) discovery necessary for Plaintiffs to file a motion for class certification (which may include some merits issues); and (2) discovery as to the merits of the underlying claims (to the extent not already addressed during certification discovery), as well as discovery as to damages. The second phase would also include any expert discovery relating to the merits of the claims and/or damages. Kate Spade believes that such phasing of discovery will allow the parties to conduct focused discovery on the prerequisites for class actions (*i.e.*, numerosity, commonality, typicality and adequacy) without having to simultaneously move forward with boundless merits and damages discovery.

Kate Spade recognizes that there may be some overlap between class certification issues and merits discovery. However, Kate Spade believes that such overlap will be minimal, while the lack of any bifurcation will result in burdensome discovery on merits/damage issues that have no bearing on class certification. Kate Spade further believes that the parties should be able to resolve any "close calls" without the need for judicial intervention. Indeed, in the class action experience of Kate Spade's counsel, although the threat of discovery disputes resulting from the phasing of discovery in the manner proposed by Kate Spade is frequently raised, actual disputes are quite rare.

Moreover, there is a clear boundary between, at a minimum, certification discovery and discovery relating to damages, including, for example, discovery relating to Kate Spade's profits and revenues (Plaintiffs are seeking restitution and disgorgement, among other damages). Kate Spade believes that proceeding with combined class and merits/damages discovery – which will necessarily involve searching for, reviewing and producing thousands of documents not relevant to class certification – will likely frustrate the court's effort to determine class certification at an early practicable time, as mandated by Fed. R. Civ. P. 23(c)(1)(A). And, it is

unlikely that this litigation would progress if a class is not certified in light of the limited damages that would be available to Plaintiff.  *See* Manual for Complex Litigation (Fourth) at § 21.14 (2011) ("in cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification…can create extraordinary and unnecessary expense and burden.").

### III. ALTERNATIVE DISPUTE RESOLUTION

The parties have been in communication with the appointed Early Neutral Evaluator concerning the scheduling of an ENE.  The parties will conduct the ENE prior to the Court-imposed deadline, which is currently September 30, 2016.

### IV. SCHEDULING

Plaintiffs anticipate filing a Motion for Class Certification.  Accordingly, because the trial of this matter would be markedly different if it proceeded on a class basis (as opposed to an action for the named individuals), the parties believe that it is premature at this time to submit a proposed pre-trial schedule.

Kate Spade's position is that the deadline for any class certification motion should be approximately six months from the commencement of discovery.

### V. CONCLUSION

WHEREUPON, the parties, by and through their respective attorneys of record, hereby jointly submit this Joint Further Case Management Statement.

Dated:  July 28, 2016

MARKUN ZUSMAN FRENIERE & COMPTON

By  */s/ Mark A. Ozzello*
MARK A. OZZELLO
ARI Y. BASSER

Attorneys for Laura Marks, Gaylia Pickles, Donna Vandiver and the putative California Class

-7-

SMRH:478688158.1

Dated: July 28, 2016

          WILLIAMSON LAW FIRM, P.C.

          By   */s/ Che' Williamson*
               CHE' WILLIAMSON
               MICHELLE EDDINGTON

          Attorneys for Donna Vandiver and the putative Texas Class

Dated: July 28, 2016

          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

          By   /s/ P. Craig Cardon
               P. Craig Cardon

          Attorneys for Kate Spade and Company

## **CERTIFICATION**

I, Dylan J. Price, am the ECF User whose identification and password are being used to file this Joint Further Case Management Statement. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Mark A. Ozzello and Che' D. Williamson have concurred in this filing.

Dated: July 28, 2016        SHEPPARD MULLIN RICHTER & HAMPTON LLP

By        */s/ Dylan J. Price*
        Dylan J. Price
        Attorneys for Defendant