Raymond P. Boucher, State Bar No. 115364
ray@boucher.la
Shehnaz M. Bhujwala, State Bar No. 223484
bhujwala@boucher.la
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:818-340-5400 / Fax: 818-340-5401

David S. Markun, State Bar No. 108067
dmarkun@mzclaw.com
Mark A. Ozzello, State Bar No. 116595
mozzello@mzclaw.com
Ari Y. Basser, State Bar No. 272618
abasser@mzclaw.com
**MARKUN ZUSMAN FRENIERE
& COMPTON LLP**
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Tel: 310-454-5900 /Fax: 310-454-5970

Paul R. Kiesel, State Bar No. 119854
kiesel@kiesel.law
Jeffrey A. Koncius, State Bar No. 189803
koncius@kiesel.law
Ashley M. Conlogue, State Bar No. 292083
conlogue@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444 /Fax: 310-854-0812

Che' D. Williamson
[Admitted *Pro Hac Vice*]
che@williamsonlegal.net
**WILLIAMSON LAW FIRM, LLC**
12834 Willow Centre Dr., Suite E
Houston, Texas 77066
Tel: 281-586-2005 / Fax: 281-586-2045

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLIA PICKLES & DONNA VANDIVER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>KATE SPADE AND COMPANY., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 3:15-CV-05329-VC<br><br>*Hon. Judge Vince Chhabria*<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:       December 7, 2017<br>Time:       10:00 AM<br>Dept.:      Courtroom 4, 17th Floor<br><br>Complaint Filed: November 20, 2015<br>Trial Date: None Set |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1    **TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that Plaintiffs Gaylia Pickles, Laura Marks, and Donna

3    Vandiver ("Plaintiffs"), by and through their counsel of record, will move for an order pursuant to

4    Federal Rules of Civil Procedure, Rule 23 granting Plaintiffs' Motion for Class Certification in the

5    above-captioned action against defendant Kate Spade and Company ("Kate Spade" or "Defendant")

6    on December 7, 2017, at 10:00 A.M., in Courtroom 4 of the United States District Court for the

7    Northern District of California, San Francisco Courthouse located at 450 Golden Gate Avenue, San

8    Francisco, California 94102 as follows:

9        1.      Certifying this case as a class action;

10       2.      Certifying the following Plaintiff Classes of persons:

11   All consumers who purchased one or more Kate Spade Designed For Outlet handbags, wallets, or

12   wristlets (bearing a Style ID that begins with one of the following letter sequences: WKRG, WKRU,

13   WLRG, or WLRU) at a Kate Spade Outlet store in the State of California during the period

14   November 15, 2011 through November 30, 2015 (the "California Class");

15   and

16   All consumers who purchased one or more Kate Spade Designed For Outlet handbags, wallets, or

17   wristlets (bearing a Style ID that begins with one of the following letter sequences: WKRG, WKRU,

18   WLRG, or WLRU) at a Kate Spade Outlet store in the State of Texas during the period November

19   15, 2011 through November 30, 2015 (the "Texas Class");

20       In addition to certification of a class, the Motion shall seek:

21       3.      Appointing Plaintiffs Gaylia Pickles and Laura Marks to act as Class Representatives

22   of the California Class;

23       4.      Appointing Plaintiff Donna Vandiver to act as Class Representative of the Texas

24   Class.

25       5.      Appointing the following firms representing Plaintiffs to act as Class Counsel:

26   Boucher LLP, Kiesel Law LLP, Markun, Zusman, Freniere & Compton, LLP, and Williamson Law

27   Firm LLC.

28       This Motion for Class Certification is brought pursuant to the provisions of Federal Rules of

1  Civil Procedure, Rule 23. Certification is appropriate because all elements of Rule 23(a), (b)(2), and

2  (b)(3) are satisfied.

3       This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

4  of Points and Authorities in Support of Plaintiffs' Motion, the declarations of attorneys, Raymond

5  P. Boucher, Mark A. Ozzello, Jeffrey A. Koncius, and Che' D. Williamson and exhibits thereto, the

6  declarations of Plaintiffs Laura Marks, Gaylia Pickles, and Donna Vandiver and exhibits thereto, the

7  declarations, reports and exhibits of Plaintiffs' retained experts, Gabriele Goldaper, Antonio R.

8  Sarabia II, Claudiu V. Dimofte, PH. D, Heather Burke and Wesley Nutten any and all papers

9  previously filed, and any and all oral argument and/or evidence as may be offered at the time of the

10 hearing in this matter.[1]

11

12 Dated: July 7, 2017                    **BOUCHER LLP**

13

14                                        By:  /s/ Shehnaz M. Bhujwala

15                                             Raymond P. Boucher
                                              Shehnaz M. Bhujwala

16

17 Dated:  July 7, 2017

18                                        **MARKUN ZUSMAN FRENIERE
                                          & COMPTON LLP**

19

20                                        By:  /s/ David S. Markun

21                                             David S. Markun
                                              Mark A. Ozzello
                                              Ari Y. Basser

22

23

24

25

26

27

28

---

[1]  In the Memorandum of Points and Authorities, the following abbreviations have been selected:  **CE**=Compendium of Exhibits; **CD**=Compendium of Declarations; **CER**=Compendium of Expert Reports; and **CDEP**=Compendium of Deposition Testimony; **EXH**=Exhibit.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

1  Dated:  July 7, 2017                    **KIESEL LAW LLP**

2

3                                          By:  /s/ Jeffrey A. Koncius
                                                Paul R. Kiesel
4                                               Jeffrey A. Koncius
                                                Ashley M. Conlogu
5

6  Dated:  July 7, 2017                    **WILLIAMSON LAW FIRM, LLC**

7

8                                          By:  /s/ Che' D. Williamson
                                                Che' D. Williamson
9

10                                         *Attorneys for Plaintiffs Laura Marks, Gaylia*
                                           *Pickles, and Donna Vandiver and the putative*
11                                         *California  and Texas Classes*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

**ATTESTATION OF E-FILED SIGNATURE**

I, Mark A. Ozzello, co-counsel for Plaintiffs and the proposed classes, am the ECF user whose ID and password are being used to file the attached PLAINTIFFS' NOTICE OF MOTION FOR CLASS CERTIFICATION. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Shehnaz M. Bhujwala, David S. Markun, Jeffrey A. Koncius and Che' D. Williamson have concurred in this filing.


Dated: July 7, 2017

Mark A. Ozzello

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Raymond P. Boucher, State Bar No. 115364
*ray@boucher.la*
Shehnaz M. Bhujwala, State Bar No. 223484
*bhujwala@boucher.la*
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:818-340-5400 / Fax: 818-340-5401

Paul R. Kiesel, State Bar No. 119854
*kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
Ashley M. Conlogue, State Bar No. 292083
*conlogue@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444 /Fax: 310-854-0812

David S. Markun, State Bar No. 108067
*dmarkun@mzclaw.com*
Mark A. Ozzello, State Bar No. 116595
*mozzello@mzclaw.com*
Ari Y. Basser, State Bar No. 272618
*abasser@mzclaw.com*
**MARKUN ZUSMAN FRENIERE & COMPTON LLP**
17383 Sunset Boulevard, Suite A-380
Pacific Palisades, California 90272
Tel: 310-454-5900 /Fax: 310-454-5970

Che' D. Williamson
[Admitted *Pro Hac Vice*]
*che@williamsonlegal.net*
**WILLIAMSON LAW FIRM, LLC**
12834 Willow Centre Dr., Suite E
Houston, Texas 77066
Tel: 281-586-2005 / Fax: 281-586-2045

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLIA PICKLES and DONNA VANDIVER individually and on behalf of all others similarly situated<br><br>        Plaintiffs,<br>   v.<br><br>KATE SPADE AND COMPANY, a Delaware corporation; and DOES 1-50, inclusive,<br><br>        Defendant. | Case No. 3:15-CV-05329-VC<br><br>*Hon. Judge Vince Chhabria*<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR:**<br><br>**(1)  CLASS CERTIFICATION;**<br>**(2)  APPOINTMENT OF CLASS REPRESENTATIVES; AND**<br>**(3)  APPOINTMENT OF CLASS COUNSEL**<br><br>Filed Concurrently with:<br>(a)  Notice of Motion and Motion for Class Certification<br>(b)  Compendium of Declarations (Attorney and Plaintiff)<br>(c)  Compendium of Exhibits (Declaration of Mark A. Ozzello); |

(d)   Compendium of Expert Reports; and
(e)   [Proposed] Order


Date:      December 7, 2017
Time:      10:00 AM
Dept.:     Courtroom 4, 17th Floor

Complaint Filed: November 20, 2015
Trial Date: None Set

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    STATEMENT OF FACTS .......................................................................................2

       A.     Kate Spade's Deception Was Uniform ........................................................2

       B.     Plaintiffs Believed That the "Our Price" Indicated a Genuine Former Price ..........4

              1.     Plaintiff Laura Marks' Purchases: .................................................4

              2.     Plaintiff Gaylia Pickles' Purchase. ...............................................5

              3.     Plaintiff Donna Vandiver's Purchases. ..........................................5

III.   CLASS DEFINITIONS ...........................................................................................6

IV.    LEGAL STANDARD .............................................................................................6

V.     ARGUMENT ...........................................................................................................7

       A.     Certification Will Promote Policies Favoring Class Actions ....................7

       B.     The Classes Are "Ascertainable"................................................................8

       C.     The Elements of Fed. R. Civ. P. 23(a) Are Satisfied..................................9

              1.     The Classes Are Sufficiently Numerous.........................................9

              2.     The Classes Share Questions of Law or Fact Which Predominate ............9

                     (a)    All Members of the Classes Were Exposed to the False
                            Advertising .............................................................................10

                     (b)    Whether the "Our Price" Representation Is Misleading Is
                            Based on an Objective Standard Which Presents a Common
                            Question......................................................................................10

                     (c)    Whether the "Our Price" Representation Is Material Is Based
                            on an Objective Standard and Therefore Presents a Common
                            Question......................................................................................13

              3.     The Claims of Plaintiffs Are Typical of the Claims of the Class .............16

              4.     Plaintiffs and their Counsel Will Adequately Protect the Interests of
                     the Class......................................................................................17

       D.     The Elements of Fed. R. Civ. P. 23(b)(2) & (b)(3) Are Also Met by Plaintiffs....18

i

1           1.     The Legal and Factual Issues Applicable to the Class Claims

                Predominate ............................................................................................18

           2.     Plaintiff's Theory of Recovery Lends Itself to Several Damage and

                Restitution Models...................................................................................20

   E.     THE SUPERIORITY ELEMENT IS MET............................................................23

           1.     Kate Spade's Failure to Act Makes Injunctive Relief Appropriate

                Under Rule 23(b)(2) .................................................................................24

VI.    CONCLUSION...................................................................................................25

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

1

## **TABLE OF AUTHORITIES**

2

3   **Cases**

4   *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ......................................... 9, 10

5   *Abels v. JBC Legal Grp.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) ......................................................... 7

6   *Aguilar v. Avis Rent A Car System, Inc.* 21 Cal. 4th 121, 133 (1999).............................................. 24

7   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)................................................. 7, 8, 19, 23

8   *Arthur Anderson & Co. v. Perry Quip. Corm.,* 945 S.W. 2d 812, 817 (Tex. 1997)......................... 22

9   *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D.Cal.1999) ................................. 7, 23

10   *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992) ....................................................... 11

11   *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) .................................. 7

12   *Benjamin Kaplan, A Prefatory Note*, 10 B.C. Indus. & Com. L. Rev. 497, 497 (1969) .................... 8

13   *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123-24 (9th Cir. 2017)......................................... 8

14   *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003).................................................................. 10, 11

15   *Brockey v. Moore*, 131 Cal. Rptr. 2d 746, 756 (Cal. Ct. App. 2003) ................................................ 10

16   *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598,

17       609 (2001)........................................................................................................................................ 25

18   *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979) ............................................................................... 7

19   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) ................................................................. 7

20   *Corvello v. Wells Fargo Bank N.A.*, No. 10-cv-05072-VC, 2016 U.S. Dist. LEXIS 11674, at *11-12

21       (N.D. Cal. Jan. 29, 2016)................................................................................................................ 7

22   *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 675 (Tex. 1990) ............................................... 15

23   *Fletcher v. Security Pac. Nat'l Bank* 23 Cal.3d 442, 449 (1979) ..................................................... 20

24   *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).................................................................. 11

25   *Friends of the Earth, Inc. v. Laidlaw Envtl Servs. (TOC) Inc.*, 528 U.S. 167, 188 (1999) .............. 25

26   *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) ................................................. 6

27   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) .......................................... 7, 17, 23

28   *Hoffman v. Dutch LLC*, 2017 WL840646 at *3............................................................................... 10

1    *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1036 (C.D. Cal. 2015) ............................................ 15

2    *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 (2015) ............................................................. 11

3    *In re Uber FCRA Litigation* 2017 WL 2806698 (June 29, 2017) ...................................................... 17

4    *In Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 .................................................................. 18, 19

5    *Jacobo v. Ross Stores, Inc*., 2016 WL 3482041 (Feb. 23, 2016) ...................................................... 21

6    *Jimenez v. Allstate Ins. Co.*, 756 F.3d 1161, 1165 (9th Cir. 2014) ................................................ 9, 10

7    *Kraus v. Trinity Mgmt. Servs., Inc.* 23 Cal. 4th 116, 121 (2000) ...................................................... 25

8    *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) ........................ 14

9    *Kumar v. Salov N. Am. Corp*., No. 14-CV-2411-YGR, 2016 WL3844334, at *7 (N.D. Cal. July 15,

10        2016) ................................................................................................................................................ 9

11   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ......................................................... 13, 14

12   *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512-13 (9th Cir. 1978) .............................. 24

13   *Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152,

14        1163 (9th Cir. 2001) ..................................................................................................................... 23

15   *Manon v. Tejas Toyota*, 162 S.W.3d 743 (Tex. App 2005) .............................................................. 22

16   *Marsu, B.V. v. Walt Disney Co*., 185 F.3d 932, 938–39 (9th Cir. 1999) .......................................... 20

17   *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ..................................... 7, 9

18   *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 958 (2017) ...................................................................... 24

19   *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 960-62 (2017) ................................................................. 25

20   *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) .................................................................... 11, 15

21   *Parkinson v. Hyundai*, *Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ...................................... 8

22   *People v. Wahl*, 100 P. 2d 550 (Cal. App. 1940) ............................................................................... 11

23   *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 985 (9th Cir. 2015) ................. 11, 13, 19

24   *Rogers v. Epson Am. Inc*., 648 F.App'x 717 (9th Cir. 2016) ........................................................... 10

25   *Russel v. Kohl's Dept. Stores, Inc*., 2015 WL 12781206 (Oct. 6, 2015) .......................................... 21

26   *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ............................ 7

27   *Singh v. Google, Inc.,* 2017 WL 2404986 (N.D. Cal. June 2, 2017) ................................................. 11

28   *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) .......................................... 11, 14

1    *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 U.S. Dist. LEXIS 72417, at

2         *36 (N.D. Cal. May 11, 2017) ........................................................................ 7

3    *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) .................................... 11, 13, 19

4    *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) .................................. 11

5    *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *10 (S.D.Cal. July 30, 2013) ........................ 22

6    *W.O. Bankston Nissan, Inc.v. Walters,* 754 S.W.2d 127, 128 (Tex. 1988) ...................................... 22

7    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................... 6, 9

8    *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ............................................ 9

9    *Wolin v. Jaguar Land Rover N. Am.,* LLC, 617 F.3d 1168, 1175 (9th Cir.2010) ...................... 16, 23

10   *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *10 (N.D.Cal. June 7, 2011) ...................... 22

11   **Statutes**

12   15 U.S.C. § 45 .......................................................................................... 15

13   16 C.F.R. § 233.1 ........................................................................................ 2

14   16 C.F.R. § 233.1(a) .................................................................................... 13

15   Cal. Bus. & Prof. Code § 17200 .......................................................................... 1

16   Cal. Bus. & Prof. Code § 17203 ......................................................................... 20

17   Cal. Bus. & Prof. Code § 17500 .......................................................................... 1

18   Cal. Bus. & Prof. Code § 17501 ................................................................... 1, 10, 13

19   Cal. Civ. Code § 1750 ................................................................................... 1

20   Cal. Civ. Code § 1770 .................................................................................. 10

21   Cal. Civ. Code § 1770(a)(13) ........................................................................... 13

22   Tex. Bus. Com. Code § 17.46(b) ......................................................................... 15

23   Tex. Bus. Com. Code § 17.46(b)(2) ...................................................................... 16

24   Tex. Bus. Com. Code § 17.46(b)(5) ...................................................................... 16

25   Tex. Bus. Com. Code § 17.46(b)(7) ...................................................................... 16

26   Tex. Bus. Com. Code § 17.50 ......................................................................... 1, 14

27   Tex. Bus. Com. Code § 17.50(b)(1) ...................................................................... 22

28   Tex. Bus. Com. Code § 17.50(f) ......................................................................... 13

v

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

**<u>Rules</u>**

Fed. R. Civ. Pro. 23(a) ........................................................................................ 6, 7, 9, 18

Fed. R. Civ. Pro. 23(a)(1) ............................................................................................... 9

Fed. R. Civ. Pro. 23(a)(2) ............................................................................................... 9

Fed. R. Civ. Pro. 23(a)(3) ............................................................................................. 16

Fed. R. Civ. Pro. 23(a)(4) ............................................................................................. 17

Fed. R. Civ. Pro. 23(b) ..................................................................................... 6, 7, 18

Fed. R. Civ. Pro. 23(b)(2) ........................................................................... 2, 7, 24, 25

Fed. R. Civ. Pro. 23(b)(3) ................................................................................... passim

Fed. R. Civ. Pro. 30(b)(6) ............................................................................................... 9

.

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Between at least November 20, 2011, and November 30, 2015, Defendant Kate Spade & Company ("Kate Spade" or "Defendant") violated various consumer protection laws of California and Texas with a uniform false pricing scheme. Specifically, Kate Spade affixed price tags to its "Designed For Outlet" handbags, wallets and wristlets ("DFO Products") sold in its outlet stores ("Outlets") advertising the price indicated thereon as "our price." During the same time period, Kate Spade also utilized signage in its Outlets advertising a discount from the "our price" (such as "50% off," "30% off", etc.). This pricing scheme caused reasonable consumers, including Plaintiffs, to believe that they were receiving a substantial discount off of the price at which the products were formerly sold at Kate Spade retail boutiques. However, ███████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████ In sum, the advertised "our price" was meaningless, and was fabricated by Kate Spade to deceive customers into believing that they were obtaining a substantial discount on high quality merchandise.

California law unambiguously prohibits Kate Spade's false pricing scheme. *See*, CAL. BUS. & PROF. CODE § 17501 ("No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication."). Kate Spade's false comparative price advertising also violates the express provisions of the False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500, *et seq.* ("FAL"), the general provisions of California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ("UCL") and the Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750, *et seq.* ("CLRA"). Similarly, Texas's law also prohibits Kate Spade's false pricing scheme. *See*, TEX. BUS. COM. CODE § 17.50, *et seq.* Deceptive Trade Practices and Consumer Protection Act ("DTPA") ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) The use or employment by any person of a false, misleading, or deceptive act or practice; [or] ... (3) any unconscionable action or course of action

1   by any person…").  Further, the Federal Trade Commission ("FTC") specifically cautions against

2   "bargain advertising" where "the former price being advertised is not bona fide but fictitious—for

3   example, where an artificial, inflated price was established for the purpose of enabling the subsequent

4   offer of a large reduction." 16 C.F.R. § 233.1.  False comparative price advertising has the deceptive

5   power to exploit consumer behavioral tendencies and alter consumers' perceptions of value, thereby

6   fraudulently inducing sales.[1]

7   　　　While Kate Spade voluntarily changed its pricing scheme in December 2015, after this lawsuit

8   was filed, consumers were not made whole by this decision, which of course can be reversed by Kate

9   Spade at any time. Plaintiffs seek damages and restitution for Class members, as well as injunctive

10   relief to ensure Kate Spade does not revert back to its false pricing scheme.  The requirements of Fed.

11   R. Civ. Pro. 23(b)(3) (or alternatively, Rule 23(b)(2)) are satisfied, and certification is appropriate.

12   **II.**　　　**STATEMENT OF FACTS**

13   　　　**A.**　**Kate Spade's Deception Was Uniform**

14   　　　Kate Spade has operated Outlets in California and Texas ▮▮▮▮▮▮▮▮. CE:, EX. 2:

15   Transcript of Deposition of Rule 30(b)(6) Designee of Kate Spade & Company Ingrid Crain: pp.

16   128:17-129:4.  Kate Spade sold, and continues to sell, DFO Products alongside transfers of its

17   Mainline Products  (i.e., sold at Kate Spade boutiques ("Mainline") at its Outlets in California and

18   Texas.  *Id.* pp. 54:11-22; 56:15-25; 62:15-64:2-18; 72:8-73:6; 74:16-19; 129:4-18; 131:14-20; CE:

19   EX. 3: Spreadsheet Bates-labeled KATESPADE_000127. DFO Products, namely, all DFO handbags,

20   wallets, and wristlets sold during the class period at Outlets in California or Texas are identifiable by

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*; CE: EX. 2: pp.

22   162:5-22; 164:21-167:16. Between 2011 and 2015, ▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮. CE: EX. 3.  These products are identifiable by a Style

24   ID that is on a tag sewn into each item which begins with one of the following letter sequences:

25

26   ───────────────
　[1] Interestingly, by violating both the letter and spirit of these consumer protection laws, Kate Spade
appears to have violated its own proclaimed code of ethics. CE: EX. 1: Code of Ethics and Business

27   Practices (Bates-labeled Vandiver 000001-000005); (In this brief, the following abbreviations are
used:  CE=Compendium of Exhibits; CD=Compendium of Declarations; CER=Compendium of

28   Expert Reports; EXH=Exhibit.).

1    ███████████████████████████. *Id., also see* CE: EX. 9: Deposition of Maraga Martens: pp.

2    94:22-25; 95:1-8.    Kate Spade maintains records of these sales.  CE: EX. 2: pp. 139:23-140:12.

3    These records include ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    █████████████.  See, e.g., CE: EX. 4: Spreadsheet Bates-labeled KATESPADE_00006; EX. 2 pp.

7    209:17-214:14.

8       The price tags for DFO Products reference a dollar amount listed by Kate Spade as "our price."

9    CE: EX. 2: pp. 85:1-89:4, EX.5: ██████████████████; EX. 6: █████████████████.  Prior to

10   ██████████████████████████████████████████████████████████████████████████

11    CE: EX. 2: pp. 220:21-225:10; CE: EX. 9: pp. 81:12-82:03 Kate Spade also used signs in stores to

12    display promotional offers. *Id.* pp. 149:24-151:10; 230:20-231:23.

13       Until September 2, 2016, no written explanation of the meaning or origin of the "our price"

14    was provided to California and Texas consumers.  CE: EX. 2: pp. 201:18-204:15; 205:10-207:1; Ex.

15    7: August 18, 2016 Memo Bates-labeled KATESPADE_000115; EX. 8: Sign Explaining "our price"

16    Bates-labeled KATESPADE_000116.  As set forth in Plaintiffs' declarations, each of them observed

17    the "our price" listed on the price tags of the products they viewed and reasonably understood the

18    "our price" reference on the tag represented the former price of the same boutique-quality product as

19    sold at Kate Spade boutiques.  CD: EX. 7: Vandiver ¶¶ 4-12; CD: EX. 5: Marks ¶¶ 4-12; CD: EX.

20    6: Pickles ¶¶ 4-12. They also observed promotional signage offering percentage discounts off the

21    advertised "our price" amounts. *Id.* They each relied on their reasonable belief that the "our price"

22    amount was a former price to calculate the "discount" and bargain they expected to receive on each

23    purchase, and made their decisions to purchase DFO Products based on their calculation of the total

24    discount amount. *Id.*

25       During the Class Period, ████████████████████████████████████. CE:

26    Ex. 2: pp. 223:20-224:6. ███████████████████████████████████████

27    ██████ *Id.* pp. 85:1-89:4; CE: Ex. 5: Photo of Kate Spade Price Tag ████████; CE: Ex. 6:

28    Photo of Kate Spade Price Tag.  But ████████████████████████████████

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**



1   ████████████████████ See CE: EX. 2: pp. 220:21-225:10. Kate Spade admits that ████

2   ███████████████████████████████████ CE: EX. 2: pp. 227:5-229:15;

3   CE: EX. 9: pp.145:2-147:17. Kate Spade further admits that, ███████████████

4   ████████████████████████████████████████████████████. *EX.* 2:  pp.

5   220:21-225:10. Kate Spade admits that ██████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ███████████████████████████████████. *Id.* pp. 132:12-133:3. Kate

8   Spade admits that ████████████████████████ (*Id.* CE: EX. 2: pp.

9   162:5-22; 164:21-167:16), and indeed Plaintiffs' own investigation reveals that these products are

10  also identifiable by the Style ID referenced on a tag sewn inside of DFO Products (CE: EX. 11: Photo

11  of Interior Tag with Style ID; CE: Ex. 9: pp. 94:22-95:16; 101:12-102:2. These uniform facts support

12  certification.

### B.    Plaintiffs Believed That the "Our Price" Indicated a Genuine Former Price

#### 1.    Plaintiff Laura Marks' Purchases:

15      On March 16, 2015, Marks visited the Kate Spade Outlet store located in Livermore,

16  California, and purchased a "Wellesley" "Darla" wallet in a "Limoncello" color bearing Style ID

17  WLRU1736 ("Darla Wallet"), and a "Perri Lane Bubbles" "Romy" handbag in an "Empirered" color

18  bearing Style ID WKRU2866 ("Romy Handbag"). CD: EX. 5: Marks ¶ 5-8. On a table adjacent to

19  the handbags and wallets she observed signs indicating a 40% discount applicable to all handbags

20  and wallets.  *Id.* ¶ 10. The Romy Handbag and Darla Wallet had attached Kate Spade price tags

21  advertising a former "our price" dollar amount that were advertised in the store at a discount of 40%

22  off the "our price" amounts.  Further, and unknown to Plaintiff, the Darla Wallet and Romy Handbag

23  reference Style ID numbers that Kate Spade uses to identify these products as DFO Products, meaning

24  ████████████████████████. *Id.* CE: Ex. 2 pp. 223:20-224:6, 227:5-229:15. Ms. Marks

25  believed and relied on the fact that she was obtaining Kate Spade products at percentage discounts

26  off the "our price" prices, that the "our price" prices were true former prices at which the same

27  products were sold or offered for sale in Kate Spade's boutique stores, and that she could purchase

28  the products for far less than what that merchandise was worth and normally sold for.  CD: Marks ¶¶

4

1   5-12.  Ms. Marks would not have made the purchases if she knew that the products were never sold

2   by Kate Spade at the stated "our price" prices, or if they were outlet-exclusive products that were of

3   different and lower quality than products offered for sale in Kate Spade boutique stores.  *Id.*

4   **2.**   **Plaintiff Gaylia Pickles' Purchase.**

5   On June 11, 2015, Ms. Pickles visited the Kate Spade Outlet store located in Commerce,

6   California, and purchased a "Grey Street" "Dominique" handbag in a "Magnolia" color bearing Style

7   ID WKRU3169 ("Dominique Handbag").  CD: EX. 6: Pickles ¶ 5.  Above the handbags she observed

8   a sign indicating a 50% discount applicable to all merchandise and an additional 20% discount for

9   handbags.  *Id.* ¶ 9.  The Dominique Handbag had attached a Kate Spade price tag advertising a former

10  "our price" dollar amount that was advertised in store at a discount of 50% off plus an additional 20%

11  off. *Id.* Unbeknownst to Plaintiff, the Dominique Handbag referenced a Style ID that Kate Spade uses

12  to identify the product as a DFO Product. *Id.*; CE: Ex. 2: pp. 223:20-224:6; 227:5-229:15. Ms. Pickles

13  believed and relied on the fact that she was obtaining Kate Spade products at percentage discounts

14  off the "our price" prices, that the "our price" prices were true former prices at which the same

15  products were sold or offered for sale in Kate Spade's boutique stores, and that she could purchase

16  the products for far less than what that merchandise was worth and normally sold for.  *Id.* ¶¶ 5-12.

17  Ms. Pickles would not have made her purchases if she knew that the products were never sold by

18  Kate Spade at the stated "our price" prices, or if they were outlet-exclusive products that were of

19  different and lower quality than products offered for sale in Kate Spade boutique stores.  *Id.*

20  **3.**   **Plaintiff Donna Vandiver's Purchases.**

21  On July 12, 2015, Ms. Vandiver visited the Kate Spade Outlet store located in San Marcos,

22  Texas, and purchased a "Wellesley" "Neda" wallet in a "Porcelain" color with Style ID WLRU1153

23  ("Neda Wallet"), and a "Classic Spade" "Stevie" handbag in a "Stucco" color with Style ID

24  WKRU1509 ("Stevie Handbag"). CD: EX. 7: Vandiver ¶¶ 5-7.  In the vicinity of the handbags and

25  wallets she saw signs indicating a 50% discount applicable to all handbags and wallets. *Id.* ¶ 9. The

26  handbag and wallet each had attached Kate Spade price tags representing them to have former "our

27  price" prices that were advertised in the store at a discount of 50% off the "our price" amount.  *Id.*

28  Although Plaintiff was not aware of it, the Neda Wallet and Stevie Handbag referenced Style ID

5

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

1    numbers that Kate Spade uses to identify these products as DFO Products. *Id.*; CE: Ex. 2: pp. 223:20-

2    224:6; 227:5-229:15. Ms. Vandiver believed and relied on the fact that she was obtaining Kate Spade

3    products at percentage discounts off the "our price" prices, that the "our price" prices were true former

4    prices at which the same products were sold or offered for sale in Kate Spade's boutique stores, and

5    that she could purchase the products for far less than what that merchandise was worth and normally

6    sold for. *Id.* ¶¶ 5-12.  Ms. Vandiver would not have made the purchases if she knew that the products

7    were never sold by Kate Spade at the stated "our price" prices, or if they were outlet-exclusive

8    products that were of different and lower quality than products offered for sale in Kate Spade boutique

9    stores. *Id.*

10   ### III.    CLASS DEFINITIONS

11       Plaintiffs move the Court for an order certifying the following plaintiff classes:

12   **CALIFORNIA CLASS:**
     All consumers who purchased one or more Kate Spade Designed For Outlet handbags,
13   wallets, or wristlets (bearing a Style ID that begins with one of the following letter
     sequences: WKRG, WKRU, WLRG, or WLRU) at a Kate Spade Outlet store in the State
14   of California during the period November 15, 2011, through November 30, 2015; and

15   **TEXAS CLASS:**
     All consumers who purchased one or more Kate Spade Designed For Outlet handbags,
16   wallets, or wristlets (bearing a Style ID that begins with one of the following letter
     sequences: WKRG, WKRU, WLRG, or WLRU) at a Kate Spade Outlet store in the State
17   of Texas during the period November 15, 2011, through November 30, 2015.

18   ### IV.    LEGAL STANDARD

19       A party seeking class certification must demonstrate by a preponderance of the evidence that

20   the four requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and at least one of the

21   requirements of Rule 23(b) are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) *quoting*

22   *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  Under Rule 23(a), the Court may

23   certify a class where "(1) the class is so numerous that joinder of all members is impracticable; (2)

24   there are questions of law or fact common to the class; (3) the claims or defenses of the representative

25   parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly

26   and  adequately  protect  the  interests  of  the  class.  Courts  refer  to  these  four  requirements  as

27   'numerosity, commonality, typicality[,] and adequacy of representation.'" *Stathakos v. Columbia*

28

6

1   *Sportswear Co.*, No. 15-cv-04543-YGR, 2017 U.S. Dist. LEXIS 72417, at *36 (N.D. Cal. May 11,

2   2017) citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citations

3   omitted); *see also, Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

4         The Court must also be satisfied that the party seeking certification has met the requirements

5   of one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432

6   (2013); *Corvello v. Wells Fargo Bank N.A.*, No. 10-cv-05072-VC, 2016 U.S. Dist. LEXIS 11674, at

7   *11-12 (N.D. Cal. Jan. 29, 2016).  Rule 23(b)(3) requires that plaintiffs establish that class questions

8   predominate over individual questions, and that class treatment is superior to other forms of

9   adjudication.  The predominance inquiry focuses on "whether proposed classes are sufficiently

10  cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022

11  (9th Cir. 1998) *quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   Rule

12  23(b)(2) requires plaintiffs to establish that the "party opposing the class has acted or refused to act

13  on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

14  relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Ultimately, the Court

15  exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442

16  U.S. 682, 703 (1979); *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

17  As demonstrated below, Plaintiffs have properly satisfied all of the elements of Rule 23(a) and the

18  requirements of Rule 23(b)(3).[2]

19  **V.**   **ARGUMENT**

20      **A.   Certification Will Promote Policies Favoring Class Actions**

21        Courts have found that class actions are "desirable and should be encouraged" in order to

22  promote compliance with consumer protection laws. *Ballard v. Equifax Check Serv., Inc.,* 186 F.R.D.

23  589, 600 (E.D.Cal.1999)  (citations omitted); *Abels v. JBC Legal Grp.,* 227 F.R.D. 541, 547 (N.D.

24  Cal. 2005) (class action is superior when "[m]any plaintiffs may not know their rights are being

25  violated") (citation omitted).  As set forth below, the claims of Plaintiffs and of the Classes are suitable

26

27      [2] To the extent that the Court is not inclined to certify a damages class under Rule 23(b)(3), Plaintiffs

28  submit that they have met the requirements of 23(b)(2), and thus the Court can certify an injunctive
    class.

7

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

1   for class treatment and doing so will be in the best interests of consumers by promoting compliance

2   with the consumer protection laws of California and Texas.

3       **B.   The Classes Are "Ascertainable"**

4       "An identifiable class exists if its members can be ascertained by reference to objective

5   criteria." *Parkinson v. Hyundai*, *Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008). However, "not all

6   class members need to be ascertained prior to class certification," and the class definition need only

7   describe common characteristics sufficient to allow the members to identify themselves as part of the

8   class. *Id.* The Ninth Circuit recently specifically addressed the "ascertainability" inquiry in *Briseno*

9   *v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123-24 (9th Cir. 2017), and noted that "the rule does not

10  insist on actual notice to all class members in all cases' and 'recognizes it might be impossible to

11  identify some class members for purposes of actual notice.'" *Id.* at 1129.  The court recognized that

12  "justifying [identification of every class member] as a means of ensuring perfect recovery at the

13  expense of any recovery would undermine the very purpose of Rule 23(b)(3) – 'vindication of the

14  rights of groups of people who individually would be without effective strength to bring their

15  opponents into court at all.'" *Id.*, *citing Amchem*, 521 U.S. at 617 *quoting* Benjamin Kaplan, *A*

16  *Prefatory Note*, 10 B.C. Indus. & Com. L. Rev. 497, 497 (1969)

17      Plaintiffs' California and Texas class definitions set forth above are precise and objective. In

18  both cases, it is administratively feasible to determine membership.  Any consumer who purchased a

19  DFO Product at a Kate Spade Outlet in California or Texas, at any time during the Class periods,

20  which bears a unique internal Style ID with a certain prefix of letters indicating that it was designed

21  for outlet, is a member of the California or the Texas Class.  Putative Class members can identify

22  themselves in the following ways: 1) by reference to a purchase receipt from a Kate Spade Outlet

23  store, which identifies the date of purchase and each item's SKU number;  or, 2) by locating the Style

24  ID printed on a tag sewn to the interior of each product to determine if the product bears a Style ID

25  that identifies it as Designed for Outlet,  and locating credit card or bank statements indicating that

26  the product was purchased from Kate Spade during the relevant time period.  Additionally, Kate

27  Spade ███████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████. *See*

2   *also*, CE: EX. 10: pp. 35:22-36:24. Therefore, members of the Classes are ascertainable. Use e.g.,

3   *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL3844334, at *7 (N.D. Cal. July 15,

4   2016) (ascertainability was met by presentation of receipts or evidence of purchase by affidavit).

5   **C.   The Elements of Fed. R. Civ. P. 23(a) Are Satisfied**

6   **1.   The Classes Are Sufficiently Numerous**

7   Numerosity simply means that the Class is sufficiently numerous that individual and joinder

8   is impracticable.  Fed. R. Civ. P. 23(a).  Here, the testimony of Defendant's Rule 30(b)(6) corporate

9   designee, together with sales transaction data, demonstrates that numerosity is easily satisfied.

10  Defendant has produced several documents which demonstrate that ████████████████████

11  ████████████████████████   *See, e.g.*, CE: Ex. 6: 90-day sales transaction histories for DFO

12  Products Plaintiffs purchased Bates-labeled KATESPADE_00006; *see also* CE: Ex. 3: Spreadsheet

13  Bates-labeled KATESPADE_000127.  Joinder of each and every class member is impracticable.

14  Thus, Rule 23(a)(1) is satisfied.

15  **2.   The Classes Share Questions of Law or Fact Which Predominate**

16  Commonality requires only that the claims "depend upon a common contention" … such that

17  "determination of its truth or falsity will resolve an issue that is central to the validity of each claim

18  in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "This does not, however, mean

19  that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a

20  single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 957 (9th

21  Cir. 2013) quoting *Mazza*, 666 F.3d at 589 (emphasis in original).  Wal-Mart was subsequently

22  interpreted by the Ninth Circuit in *Jimenez v. Allstate Ins. Co.*, 756 F.3d 1161, 1165 (9th Cir. 2014),

23  and the Ninth Circuit cautioned:

24  This analysis does not turn on the number of common questions, but on their
25  relevance to the factual and legal issues at the core of the purported class' claims.
    *Compare Dukes*, 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule
26  23(a)(2), even a single common question will do.") (internal quotation marks
    omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013)
27  ("Plaintiffs need not show that every question in the case, or even a preponderance
    of questions, is capable of classwide resolution.")…As *Dukes* and all of our
28  subsequent caselaw have made clear, a class meets Rule 23(a)(2)'s commonality

9

1    requirement when the common questions it has raised are "apt to drive the resolution
2    of the litigation," no matter their number. *Jimenez*, 756 F.3d at 1165 *quoting Abdullah*, 731 F.3d at 962.

3    Here, common questions predominate and answers to those questions will serve to drive resolution of
4    the litigation.

5    It is axiomatic that in a false adverting case, the primary evidence is the advertising itself. *See,*
6    *Hoffman v. Dutch LLC*, 2017 WL840646 at *3 citing *Brockey v. Moore*, 107 Cal. App. 4th 86, 100
7    (2003) (of course the analysis used under § 17501 will also support a deceptive representation of goods
8    under the CLRA, Cal. Civ. Code § 1770.)  First, the product labeling or advertising needs to have been
9    made to the entire proposed Classes of consumers.  *See, Rogers v. Epson Am. Inc*., 648 F.App'x 717
10   (9th Cir. 2016).  Second, using an objective test, the representation must be misleading.  Finally, the
11   representation must be material to the decision to purchase the product.  Each of the latter requirements
12   are based on a "reasonable consumer" standard, i.e., a consumer who "is not versed in the art of
13   inspecting and judging a product."  *Hoffmnn, supra,* at *3 citing *Brockey v. Moore*, 131 Cal. Rptr. 2d
14   746, 756 (Cal. Ct. App. 2003).

15   ### (a)    All Members of the Classes Were Exposed to the False Advertising

16   As set forth above, Kate Spade's false advertising scheme was made to the entire proposed
17   Classes.  Kate Spade Outlets in California and Texas uniformly tagged their DFO Products with a
18   referenced "our price" and uniformly utilized signage in their stores to reflect a percentage discount
19   off the "our price."  The DFO Products were ████████████████████
20   ████████████████████████████ and Class Members were uniformly not given a discount off
21   of any genuine former price.  While Kate Spade ████████████████████████
22   ████████████ the change was immaterial to its false pricing scheme: ████████████
23   ████████████████████████████████████████████████
24   ████████████████████.  CE: EX. 5; CE: EX. 6.  Plaintiffs' expert Claudiu Dimofte opines
25   that the response that a reasonable consumer would have to a Kate Spade outlet product price tag
26   featuring both a "like style" and "our price" term combination is similar to the response the consumer
27   would have to a tag featuring just the "our price" term alone.  CER: EX. 3: Dimofte, p. 2, ¶ 4.

28   ### (b)    Whether the "Our Price" Representation Is Misleading Is Based on an

10

1        *Objective Standard Which Presents a Common Question.*

2        Whether the "our price" representation is objectively misleading is a question at the core of

3    Plaintiffs' claims and is subject to common proof. For Plaintiffs to prevail on their UCL, FAL, CLRA

4    and DTPA claims "based on false advertising or promotional practices, it is necessary only to show

5    that members of the public are likely to be deceived." *Pulaski & Middleman, LLC v. Google, Inc*.,

6    802 F.3d 979, 985 (9th Cir. 2015) *citing In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 (2015);

7    *see also*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Freeman v. Time, Inc*.,

8    68 F.3d 285, 289 (9th Cir. 1995) *quoting Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1267

9    (1992); *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) ("The DTPA was enacted to protect

10   consumers . . . and to provide consumers with a means to redress deceptive practices without the

11   burden of proof and numerous defenses encountered in a common law fraud or breach of warranty

12   suit . . . [A]ccordingly, misrepresentations that may not be actionable under common law fraud may

13   be actionable under the DTPA".) (internal citations omitted). "[I]n effect, California has created what

14   amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it

15   and bites, the defendant has caused an injury." *Pulaski*, *supra* at 985 *citing Stearns*, 655 F.3d 1013,

16   1021, n.13.

17       "[T]he plaintiff must produce evidence showing 'a likelihood of confounding an appreciable

18   number of reasonably prudent purchasers exercising ordinary care." *Singh v. Google, Inc.,* 2017 WL

19   2404986 (N.D. Cal. June 2, 2017) citing *Brockey v. Moore,* 107 Cal. App. 4th 86, 99 (2003)*.* "The

20   'misleading character' of a given representation "'appears on applying its words to the facts,'" and

21   there is no requirement that "a plaintiff must produce a consumer survey or similar extrinsic evidence

22   to prevail on a claim that the public is likely to be misled by a representation." *Id.* at 679, 681–82,

23   *quoting People v. Wahl*, 100 P. 2d 550 (Cal. App. 1940). "[D]istrict courts in California routinely

24   certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Spann*

25   *v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) *quoting Tait v. BSH Home Appliances*

26   *Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

27       ██████████████████████████████████████████████████████████████████████ The

28   determination of a common question, whether members of the public are likely to be deceived, involves

11

1   an objective inquiry. It can be managed on a class basis. The "our price" representation ███████

2   ███████████████████ leads reasonable consumers, including Plaintiffs, to believe that the "our price"

3   is a reference to the price the item sold at Kate Spade mainline stores.  Claudiu Dimofte, a leading

4   scholar in consumer psychology and consumer expectation theory, is able to opine on the impact of

5   "reference prices" on the purchasing decisions of consumers. As set forth in his Report, a reference price

6   is a price listed by a seller that is higher than the selling price, in an attempt to get consumers to use that

7   price as a reference point or anchor against which the offer will be perceived favorably (i.e., lower—as

8   in a good deal). CER: EX. 3: Dimofte, p. 2, ¶ 6. Mr. Dimofte will attest that: (1) consumers rely on

9   reference prices to form judgments about a price offer; (2) this reliance increases associated perceptions

10  of value of the deal and a willingness to purchase without further search; and, (3) consumer willingness

11  to purchase increases as the reference price (and thus the purported discount) increases. *Id.* p. 3, ¶ 8; p.

12  12, ¶ 51. Mr. Dimofte opines that when the external reference price is bona fide and truthful, its use is

13  relevant and informative for consumers' purchase decisions. *Id.* p. 40, ¶ 10. However, if the external

14  reference price is not truthful, consumers base their purchase decisions on a false sense of value and

15  thus the offer is not only irrelevant and not informative, but in fact deceptive. *Id.*

16      In this case, Mr. Dimofte concludes that ███████████████████████████████████

17  ██████ by including an "our price" which is not bona fide on every DFO Product price tag, is

18  deceptive. CER: EX. 3:  p. 3, ¶ 9. Mr. Dimofte further opines that consumers rely on Kate Spade's

19  reference prices in their purchase decisions and the "our price" causes consumers to increase their

20  perceptions of the value of the product and the deal and make them more likely to purchase DFO

21  products. *Id.* p. 12, ¶ 52. Further, the "our price" descriptor Kate Spade uses on its outlet-exclusive

22  DFO items is misleading because ██████████████████████████████████████████████

23  ████████████████,[3] and thus Kate Spade's use of the "our price" descriptor is deceptive and

24  induces reasonable consumers into purchasing Kate Spade DFO products that, absent the deception,

25  they may not have bought. *Id.* p. 13, ¶ 54-55. A trier of fact can answer the objective question whether

26

27  [3] *See* CE: EX. 2: pp.165:24-25; 166:25; 167:1-6 ██████████████████████████████████

28  ██████████████████); *see also* CE: EX. 10:  pp. 131:25; 132:1-7 ████████████████████████████

1    Kate Spade's "our price" representation is misleading by using evidence common to all members of

2    the Classes.

3              *(c)*     ***Whether the "Our Price" Representation Is Material Is Based on an***

4                       ***Objective Standard and Therefore Presents a Common Question.***

5              Both state and federal law specifically prohibit retailers from advertising false

6    "sales." *See* Cal. Bus. & Prof. Code § 17501; Cal. Civ. Code § 1770(a)(13); 16 C.F.R. §

7    233.1(a) (Federal Trade Commission regulations); Tex. Bus. & Com Code § 17.50(f) (making false

8    or misleading statements of fact concerning the existence of, or amount of price reductions.); *see also*,

9    Ste*arns supra,* at 1020. The legislature's decision to prohibit a particular misleading advertising

10   practice is evidence that the legislature has deemed that the practice constitutes a "material"

11   misrepresentation, and courts must defer to that determination. *See Hinojos, supra*, at 1107. Here,

12   Plaintiffs allege that Kate Spade falsely markets its DFO Products at reduced prices precisely because

13   consumers such as Plaintiffs reasonably regard price reductions as material information when making

14   purchasing decisions. If the trial court finds that material misrepresentations have been made to the

15   entire class, causation may be inferred as to the entire class of consumers who were exposed to the

16   misrepresentation and purchased the falsely advertised product. *See, Pulaski*, *supra*, at 985 *citing*

17   *Stearns*, 655 F.3d 1013, 1021, n.13 (noting that courts in California conclusively presume that when

18   a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury.)

19             The Court in *Hinojos*, 718 F.3d at 1098, in deciding similar false former pricing activities,

20   followed the California Supreme Court's recent guidance in *Kwikset Corp. v. Superior Court,* 51 Cal.

21   4th 310 (2011), in ruling that a representation is "material," when "a reasonable consumer would

22   attach importance to it *or* if 'the maker of the representation knows or has reason to know that its

23   recipient regards or is likely to regard the matter as important in determining his choice of action.'"

24   *Hinojos*, 718 F.3d at 1107 (*quoting, Kwikset*, 51 Cal. 4th at 322).  The *Hinojos* and *Kwikset* courts

25   each concluded that, in California, a strong legal presumption exists that false discounts are "material

26   misrepresentations that induce… [consumers] to buy products [they] would not otherwise have

27   purchased;" i.e., "price advertisements matter." *Id; see also, Kwikset*, 51 Cal. 4th at 329, 342 (a

28   consumer who relies on a product label has been harmed if he or she would not have bought the

1  product but for the misrepresentation, *or* purchased a product that he or she paid more for than he or

2  she otherwise might have been willing to pay if the product had been labeled accurately). In essence,

3  where a false price advertisement induces a purchase that otherwise would not have been made, that

4  misrepresentation is material.  *See, Hinojos*, 718 F.3d at 1107 (a representation is presumptively

5  material where a consumer makes a purchase because of false price information and states he or she

6  would not have made the purchase but for the misrepresentation.)

7       Other district courts in California (including in the Northern District) presiding over similar

8  false price cases have found that materiality and causation are in fact subject to class-wide proof and

9  thus class issues existed and predominated over any individual reliance questions under the CLRA.

10  *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 519 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312

11  (C.D. Cal. 2016) (ruling that proof in a false former pricing case will produce a common answer as

12  to whether defendant's price-comparison advertising scheme resulted in false price comparisons for

13  its products and that the question can be resolved "in one stroke" for all class members.); *see also*

14  *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) citing *Kwikset*,

15  supra at 51 (ruling that evidence that a label misleads a consumer about a product's origins, and the

16  associated value of the product, establishes that the misrepresentation is material.)

17       Similarly, under Texas' Deceptive Trade Practices and Consumer Protection Act ("DTPA")

18  any consumer may recover for "[t]he use or employment by any person of a false, misleading, or

19  deceptive act or practice."  Tex. Bus. & Com Code § 17.50.  Such deceptive practices include, but are

20  not limited to:

21       (a) passing off goods as those of another;

22       (b) causing confusion or misunderstanding as to the source of goods or services;

23       (c) representing that goods or services have characteristics, ingredients, or quantities which

24       they do not have;

25       (d) representing that goods or services are of a particular standard, quality, or grade, or that

26       goods are of a particular style or model, if they are of another;

27       (e) advertising goods or services with intent not to sell them as advertised, and

28

1       (f) making false or misleading statements of fact concerning the existence of, or amount of

2       price reductions.

3 Tex. Bus. & Com. Code § 17.46(b).  Additionally, any practice which violates the Federal Trade

4 Commission Act (FTCA) also constitutes a deceptive practice under the DTPA.[4] Tex. Bus. & Com

5 Code §17.49(b) ("[t]he provisions of this subchapter do apply to any act or practice prohibited or not

6 specifically authorized by a rule or regulation of the Federal Trade Commission.").  The DTPA was

7 enacted to protect consumers "and to provide consumers with a means to redress deceptive practices

8 without the burden of proof and numerous defenses encountered in a common law fraud or breach of

9 warranty suit.  Accordingly, misrepresentations that may not be actionable under common law fraud

10 may be actionable under the DTPA." *Miller*, 90 S.W.3d at 716.  As a consumer protection statute, it

11 is to be construed liberally to promote its central purpose.  *Id.* at 715; *see Eckman v. Centennial Sav.*

12 *Bank*, 784 S.W.2d 672, 675 (Tex. 1990).  Under the DTPA, consumers may proceed as a class, and

13 class claims arising out of the DTPA have been certified in California federal courts. *See In re*

14 *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1036 (C.D. Cal. 2015).

15    Kate Spade's corporate designee confirms that ███████████

16 ████████████ *See* CE: EX. 2: pp. 74:2-76:22; 165:24-25;

17 166:25; 167:1-6 (███████████████.); *see*

18 *also* CE: EX. 10:  pp. 131:25; 132:1-7 (████████

19 ███████████.) Additionally, Plaintiffs' expert, Gabrielle Goldaper,

20 has determined that Kate Spade's DFO Merchandise is of inferior quality than products designed for

21 Kate Spade's retail channel. CER: EX. 1: Goldaper ¶¶ 15-21, 23, 24. Despite this, Kate Spade

22 ████████████████████

23 ████████████████████

24 ████. CER: EX. 3: Dimofte ¶ 9; see *also*, CE: EX: 2: pp. 225:10-232:25; CE:

25 EX: 9: Martens pp. 71:19-74:24; 81:12-86:03. Kate Spade appears to be using its trademark to deceive

---

[4] The FTCA prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45.

1   customers into buying products at Outlets which are significantly inferior to the quality which the

2   trademark represents to consumers.  CER: EX. 2: Sarabia pp. 4-6, 10. By so doing, Kate Spade creates

3   a false illusion of greater value as to its DFO Products and induces consumers to purchase DFO

4   Products on the reasonable assumption that they are getting Kate Spade retail products at a substantial

5   discount when in fact they are not.  CER: EX. 3: Dimofte ¶ 3. Such conduct violates Tex. Bus. &

6   Com Code §§ 17.46(b)(2), (b)(5), and (b)(7).

7        Here, Claudiu Dimofte's opinions corroborate the evidence and legal presumptions discussed

8   above. Dimofte opines that over decades of research "external Reference Prices have been

9   consistently shown to have significant impact on consumers' purchasing processes and decisions,"

10  by increasing consumers' perceived value of items. CER: EX. 3: Dimofte ¶ 3. He concludes that

11  ██████████████████████████████████████████████████████████████

12  consumers misunderstand them and "are deceived into making purchases that they might not have

13  otherwise made." *Id.* 8. As such, the fact finder can determine on a Class basis whether Kate Spade's

14  misrepresentations were material, and therefore whether Class members relied on them.

15       Further, while Kate Spade has not produced any studies regarding the effect of its outlet

16  pricing on consumers, it seems obvious that Kate Spade "knows or has reason to know" that its

17  consumers "regard… or [are]likely to regard" the reference pricing on DFO Products "as important

18  in determining [their]choice of action" shopping at Kate Spade Outlets. *See, Hinojos*, 718 F.3d at

19  1107; *see also*, CER: EX. 3: Dimofte ¶ 30, 46, 47. The only reasonable purpose for Kate Spade's

20  false pricing scheme is to induce outlet customers to believe that they are getting a substantial discount

21  off of retail merchandise.   In any event, the issue of whether the misrepresentations are material can

22  be decided on a classwide basis.

23       **3.    The Claims of Plaintiffs Are Typical of the Claims of the Class**

24       Rule 23(a)(3) explicitly requires a showing that "the claims or defenses of the representative

25  parties are typical of the claims or defenses of the class." *See* Fed.R.Civ.P. 23(a)(3). The purpose of

26  this requirement "is to assure that the interest of the named representative aligns with the interests

27  of the class." *Wolin v. Jaguar Land Rover N. Am.,* LLC, 617 F.3d 1168, 1175 (9th Cir.2010)

28  (internal quotation marks omitted). "The test of typicality is whether other members have the same

1  or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

2  and whether other class members have been injured by the same course of conduct." *Id.* (internal

3  quotation marks omitted). Typicality does not require that the claims of each class member be

4  identical, although the principal case provides a unique example where the claims and defenses are

5  in fact identical.

6        Each of the Plaintiffs' claims and injuries are typical of the claims and injuries of members of

7  the Classes. In total, Plaintiffs bought five unique DFO Products at Kate Spade Outlets in California

8  or Texas during the Class Period. The price tags on these DFO Products were identical to the price

9  tags on the products purchased by Class members ████████████████████████████████

10  ████████████████████████ At the time Plaintiffs purchased their DFO Products, they did so

11  believing that the "our price" prices on the products' tags, in conjunction with the discounts they were

12  promised, indicated that the items were sold at a Kate Spade boutique store originally at the "our

13  price" price.  CD: EX.  7: (Vandiver ¶¶ 5-12), CD: EX.  5: (Marks ¶¶ 5-12), and CD: EX.  6:

14  (Pickles ¶¶ 5-12). Plaintiffs' claims and circumstances are therefore typical of the claims and

15  circumstances of the Classes.

16                 **4.**     **Plaintiffs and their Counsel Will Adequately Protect the Interests**

17                         **of the Class**

18        The adequacy requirement is satisfied where "the representative parties will fairly and

19  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions

20  determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest

21  with other class members and (2) will the named plaintiffs and their counsel prosecute the action

22  vigorously on behalf of the class?"  *In re Uber FCRA Litigation* 2017 WL 2806698 (June 29, 2017)

23  *quoting, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

24        Plaintiffs have consistently and vigorously represented the interests of the Class.  They have

25  responded to all discovery requests and otherwise have actively participated in the action and intend

26  to continue doing so.  Plaintiffs are each determined to help ensure that the pricing and discount

27  representations of the Kate Spade DFO Products make clear and unequivocally accurate

28  representations.  Plaintiffs collectively seek to recover appropriate damages and injunctive relief on

1    the behalf of the Class.  *See,* CD: EXS. 5-7.

2        The law firms of Boucher LLP, Keisel Law LLP, Markun, Zusman, Freniere, Compton LLP,

3    and the Williamson Law Firm, LLC, are experienced consumer protection firms with resources to

4    prosecute this vigorously and effectively litigate this action for the benefit of Class members. These

5    firms have been appointed to act in positions of leadership in numerous complex cases, and to act as

6    class counsel in numerous consumer class actions in state and federal courts. *See generally,* CD: EXS.

7    1-4.  Since the association of Kiesel Law LLP and Boucher LLP in early May 2017, the firms have

8    worked together in a collaborative, diligent, and efficient manner to prepare this case for class

9    certification.

10       **D.    The Elements of Fed. R. Civ. P. 23(b)(2) & (b)(3) Are Also Met by Plaintiffs.**

11           **1.    The Legal and Factual Issues Applicable to the Class Claims**

12                  **Predominate**

13       In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of

14   the three conditions of Rule 23(b). Plaintiff submits that this case satisfies Rule 23(b)(3). A class may

15   be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the

16   members of the class predominate over any questions affecting only individual members, and that a

17   class action is superior to other available methods for the fair and efficient adjudication of the

18   controversy." Fed. R. Civ. P. 23(b)(3). The U. S. Supreme Court recently discussed the elements and

19   inquiry that a court must make in order to determine whether or not claims "predominate."  *In Tyson*

20   *Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, the Court set for the standard for the inquiry as follows:

21

22   "This calls upon courts to give careful scrutiny to the relation between common and
     individual questions in a case. An individual question is one where "members of a
23   proposed class will need to present evidence that varies from member to member,"
     while a common question is one where "the same evidence will suffice for each
24   member to make a prima facie showing [or] the issue is susceptible to generalized,
     class-wide proof." [citation omitted] The predominance inquiry "asks whether the
25   common, aggregation-enabling, issues in the case are more prevalent or important than
     the non-common, aggregation-defeating, individual issues."  [citation omitted] When
26   "one or more of the central issues in the action are common to the class and can be said
     to predominate, the action may be considered proper under Rule 23(b)(3) even though
27   other important matters will have to be tried separately, such as damages or some
     affirmative defenses peculiar to some individual class members." 7AA C. Wright, A.

1    Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)
     (footnotes omitted).

2

3    *Tyson Foods,* 136 S.Ct. 1036, 1045.

4         These dictates had previously been adhered to by the Ninth Circuit.  For example, *Stearns*,

5    teaches that the analysis begins with a mere overview of the causes of action alleged.  *See*, *Stearns*

6    *supra*, 655 F.3d at 1020.  When the causes of action alleged are analyzed here, it is apparent that

7    the elements which need to be established to prove liability under the UCL, FAL, CLRA and the

8    DTPA are identical.  When a court has, as it does here, an advertisement that is uniformly and

9    identically represented to the class, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is

10   met.  There is clearly sufficient cohesiveness to warrant adjudication by representation.  *See*

11   *generally, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  There is absolutely no

12   possibility that separate adjudication of each individual Class members' claims will be required.

13   The false former "our price" scheme at issue in this case was consistently placed on every single

14   DFO Product price tag and seen by each of the members of the Classes.  The same analysis will

15   be applicable to causation, i.e. materiality.  *See generally*, CER: EX. 3: Dimofte.

16        In addition, the fact that the damages may be somewhat individualized or may present some

17   individualized inquiry is not an impediment to satisfying the predominance requirement.  As the

18   court in *Pulaski, supra,* 802 F.3d 979 at 997-98 found, damage calculations alone cannot defeat

19   class certification:

20        "We explained that *Comcast* stood for the proposition that "plaintiffs must be able to
          show that their damages stemmed from the defendant's actions that created the legal

21        liability … but the Court did not hold that proponents of class certification must rely
          upon a classwide damages model to demonstrate predominance … The putative class's

22        problem in *Comcast* was that the damages model "did not isolate damages resulting
          from any one theory of antitrust impact" [citations omitted] Following this discussion,

23        we reversed a denial of class certification in part because the "damages could feasibly
          and    efficiently    be    calculated    once    the    common    liability    questions    are

24        adjudicated." [citations omitted]

25        Plaintiffs contend that all Kate Spade's DFO Products price tags are misleading,

26   notwithstanding variations between particular products.  ████████████████████████

27   ██████████████████████████████████████████████████████████████

28   ████████████████████████████████████████   and Plaintiffs' expert witness

19

1    Gabriele Goldaper confirms that of the sample of DFO Products          she reviewed, none of

2    them were identical to a Mainline counterpart item. *See generally,* CER: EX. 1, Report of Gabriele

3    Goldaper.  As such, under Plaintiffs' theory of the case, this issue can be decided on a classwide

4    basis.

5                            **2.      Plaintiff's Theory of Recovery Lends Itself to Several Damage**

6                                      **and Restitution Models**

7            Plaintiffs set forth below four distinct damage models, and one proposed which takes into

8    account the consumers' use of the DFO Products. This Court has broad powers to enter "such orders

9    on judgments…as may be necessary to restore to any person…any money or property…which may

10   have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code §17203.  The

11   California Supreme Court made clear that the "general equitable principles underlying [these

12   provisions] as well as [their] express language arm the trial court with the cleansing power to order

13   restitution to effect complete justice." *Fletcher v. Security Pac. Nat'l Bank* 23 Cal.3d 442, 449 (1979).

14   Plaintiffs' expert Wesley L. Nutten, CPA, CMA, CFE, ABV, a partner at Desmond Marcello &

15   Amster (DM&A), with over 32 years of education and experience in the analysis of economic

16   damages, has assisted Plaintiffs with four alternative damage models: (1) full refund; (2) promised

17   percentage discount; (3) disgorgement of profits; and (4) lost perceived value.

18           California law only requires that some reasonable basis of computation of damages be used,

19   and the damages may be computed even if the result reached is an approximation." *Marsu, B.V. v.*

20   *Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir. 1999). "[T]he fact that the amount of damage may

21   not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does

22   not bar recovery." *Id.* at 939.  Importantly, each of these damage models has received support from

23   the federal judiciary. The court in *Spann, supra,* 307 F.R.D. at 530 addressed a pricing scheme using

24   the former price terminology "Original Price" and ratified a complete restitution model in the form

25   of a full refund, a "transaction value" model, and a "net profits/restitutionary disgorgement" model,

26   noting "plaintiff has presented evidence that every dollar she spent was a result of ..[the] alleged false

27   advertising" Other courts that have also addressed damage models recognize that restitution need not

28   be limited by a cost-minus-value analysis. *See Jacobo v. Ross Stores, Inc.*, 2016 WL 3482041 (Feb.

1    23, 2016); *Russel v. Kohl's Dept. Stores, Inc*., 2015 WL 12781206 (Oct. 6, 2015).

2        Each of the models discussed herein will compensate members of the Classes for damages

3    directly attributable to Kate Spade's misrepresentation on its price tags, and money spent based on

4    those representations (and no more). Therefore, Plaintiffs' proposed damages and restitution models

5    are consistent with the *Comcast* decision and Ninth Circuit authority interpreting it, and predominate

6    over individual issues of monetary relief.

7        Mr. Nutten was provided with testimony from the Kate Spade Rule 30(b)(6) designee, who

8    █████████████████████████████████████████████████████████████████████████

9    █████████████████████████████████████████.  Mr. Nutten was also provided with sales

10   and "landed cost" data for each of the products purchased by the named plaintiffs.  His analysis

11   demonstrated the simplicity with which uniform calculations can be utilized to establish class-wide

12   damages under each of the proposed models.

13        Under the "full refund model," the purchase price of each individual line item with an

14   identified "discount" of greater than 20% can be summed to yield a grand total amount paid for all

15   relevant transactions in the sample data provided.  Calculations were made by Mr. Nutten with respect

16   to the actual amounts paid and precise dollar amounts were tallied; i.e., ████████████████

17   █████████████████████████████████████████████████████████████████████████

18   ███████████████████████████████ Only a few examples are provided, however,

19   Mr. Nutten's report addresses all DFO Products purchased by Plaintiffs. For the five products

20   analyzed (3 for a three-month period and 2 for a one month period), the use of the full refund model

21   resulted in ███████████████████████ CER: EX. 5: Nutten pp. 3-4, ¶¶ 7-13, 32.

22        The calculations with respect to the "promised percentage discount model" were equally

23   straightforward.  As noted in the Nutten Report, the calculations took the difference between the

24   represented "our price" and the discounted prices actually paid.  In this regard damages could be

25   easily ascertained directly from the sales transaction data of Kate Spade.  From the identical

26   calculations, aggregate totals can also be easily determined, i.e., for the "Dominique" the promised

27   discount equated to ██████████ for the "Stevie" handbag the promised discount equated to

28   ██████████ CER: EX. 5: Nutten pp. 5-6, ¶¶ 14-20.  The total damage calculation on the five products

1   was ████████████. *Id.* ¶ 32.

2       The "disgorgement of profits model" seeks to divest defendant Kate Spade of any monies

3   obtained which are directly attributable to the illegal conduct.   This calculation identifies the

4   difference between the price actually paid for the DFO Product and its landed cost (the total

5   manufacturing cost of a product once it has landed at the buyer's door).   Because the landed costs are

6   set forth in spreadsheets produced by Kate Spade the calculations were again, quite elementary.   The

7   landed cost was deducted from the revenue received for each product to arrive at an individual

8   disgorgement amount.   Once all DFO Products were analyzed in the same manner, aggregate amounts

9   were obtained for the products and time periods for which the data had been produced; i.e., the

10  "Dominque" handbag transactions would result in disgorgement of ███████ the "Romy" handbag

11  disgorgement equates to ████████ CER. EX. 5: Nutten, p. 8, ¶¶ 23, 25. Disgorgement of profit is

12  a well-accepted method for calculating restitution and damages under California's consumer

13  protection laws and courts in the Ninth Circuit have considered it a viable theory for calculating

14  damages.   *See, Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *10 (S.D.Cal. July 30, 2013)

15  citing *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *10 (N.D.Cal. June 7, 2011).

16      In addition, under the Texas DTPA, consumers may recover either their out of pocket damages

17  or the "benefit of their bargain," whichever is greater. *Arthur Anderson & Co. v. Perry Quip.*

18  *Corm.,* 945 S.W.2d 812, 817 (Tex. 1997).   The "benefit of the bargain" model operates as an

19  expectancy theory of damages, and is measured as the difference between the value of the item as

20  represented, and the value actually received. *Manon v. Tejas Toyota*, 162 S.W.3d 743 (Tex. App

21  2005) (permitting recovery of benefit-of-bargain damages under the DTPA); *see also, W.O. Bankston*

22  *Nissan, Inc.v. Walters,* 754 S.W.2d 127, 128 (Tex. 1988).   Members of the Texas class purchased

23  handbags, wallets, and wristlets which were falsely represented as being significantly discounted from

24  their former prices.   Awarding them their expectation damages under the DTPA therefore simply

25  involves applying the advertised percentage discount consumers believed they were getting from the

26  actual former price of the item purchased. If Plaintiffs establish that Kate Spade's actions were

27  committed knowingly or intentionally, Plaintiffs would be entitled to treble damages pursuant to

28  Texas Business and Commerce Code § 17.50(b)(1).

1  Under Texas law, Mr. Nuttten calculated the "lost perceived value."  That value was the delta

2  between the "our price" and the actual amount paid for each DFO Product.  The calculations showed

3  a difference of ███████████ for the "Neda" handbag transactions in Texas; and ███████████ for the

4  "Stevie" handbag Texas transactions.  CER: EX. 5: Nutten pp. 9-10, ¶¶ 28-31.

5  Finally, some courts have taken notice that these damage models do not necessarily provide

6  the Defendant with any "credit" for the consumer's use of the products.  Plaintiffs have presented a

7  theory of recovery from a well-respected tangible assets appraisal firm.  This case, unlike other cases,

8  involves a product that that has a value and can be appraised and analyzed. These products are not t-

9  shirts or socks.  Ms. Burke, with Pall Mall Art Advisors, suggests that the condition of consumers'

10  DFO Products can be evaluated, and those consumers can be provided a refund that accounts for their

11  use of the products.  *See generally,* CER: EX. 4: Burke pp. 102.  Ms. Burke opines that a refund of

12  10%, 25%, 50%, and 75% can be provided to consumers based upon a visual inspection of the

13  condition of DFO Products purchased.  This analysis would be applicable to the "full refund model"

14  the "percentage discount model," and the "lost perceived-value model," as discussed above.  *Id.*

### E.    THE SUPERIORITY ELEMENT IS MET

16  A class action is the superior alternative (and only realistic alternative) to litigating Plaintiffs'

17  claims. *See, Hanlon*, *supra*, 150 F.3d at 1023. "[T]he purpose of the superiority requirement is to

18  assure that the class action is the most efficient and effective means of resolving the controversy.

19  Where recovery on an individual basis would be dwarfed by the cost of litigation on an individual

20  basis, this favor weighs in favor of class certification," *Wolin, supra* 617 F.3d 1168 at 1173-76.

21  Efficiency here is maximized by adjudicating on a classwide basis the relatively small

22  individual claims associated with each purchase. *See*, e.g. CER: EX: 5 Nutten).  Courts specifically

23  recognized that in consumer cases, individuals are unlikely to proceed individually because of the

24  disparity between litigation costs and any potential recovery.  *See Amchem, supra* 521 U.S. 591 at

25  617; *see also, Ballard, supra* 186 F.R.D. 589 at 600; *see also, Local Jt. Exec. Bd. of*

26  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001).

27  In addition, if only a small percentage of purchasers brought individual actions, they would

28  aggregate in the thousands.  Even discounting the fact that individual actions create the risk of

1   conflicting rulings, the time, expense, and strain on the judiciary would be prohibitive.  *See generally,*

2   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512-13 (9th Cir. 1978).

3   　　　　The principal case satisfies all elements that courts consider when evaluating superiority.  The

4   evidence clearly establishes that individual damages are *de minimis* when compared to the cost of

5   litigation.  Plaintiffs are unaware of any other actions filed to vindicate the rights of California or

6   Texas consumers.  Finally, there will be no manageability issues because, ████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████.  All of these factors, when taken in consideration

10  with the fact that members of the Classes can be identified, mitigate in favor of using the class action

11  device as the superior method of adjudicating the asserted claims.

12  　　　　　　　1.　　**Kate Spade's Failure to Act Makes Injunctive Relief Appropriate Under**

13  　　　　　　　　　　**Rule 23(b)(2)**

14  　　　　Alternatively, this case meets the certification requirements of Rule 23(b)(2).  A Rule 23(b)(2)

15  class requires plaintiffs to establish that the "party opposing the class has acted or refused to act on

16  grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

17  relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Here, final injunctive

18  relief sought by Plaintiffs would require Defendant to permanently maintain a practice that the filing

19  of this case has already motivated Defendant to initiate – providing notice to customers regarding

20  how the "our price" is calculated and when each item last sold at the listed "our price."  This relief

21  will affect all Kate Spade customers equally.

22  　　　　Defendant appears to have only modified its in-store advertising to clarify when items were

23  offered for sale at the listed "our price" once they faced liability in this action.  CD: EX. 2: pp. 201:18-

24  204:15;  205:10-207:1;  CE: EXS. 8 and 9.  "The mere fact that a defendant refrains from

25  unlawful conduct during the pendency of a lawsuit does not necessarily preclude the trial court from

26  issuing injunctive relief to prevent a post trial continuation of the unlawful conduct." *McGill v.*

27  *Citibank, N.A.*, 2 Cal. 5th 945, 958 (2017) citing *Aguilar v. Avis Rent A Car System, Inc.* 21 Cal. 4th

28  121, 133 (1999) (plur. opn. of George, C. J.).  As long-standing Supreme Court precedent makes

1   clear, "A defendant's voluntary cessation of a challenged practice does not deprive a federal court of

2   its power to determine the legality of the practice. If it did, the courts would be compelled to leave

3   the defendant free to return to his old ways. *Friends of the Earth, Inc. v. Laidlaw Envtl Servs. (TOC)*

4   *Inc.*, 528 U.S. 167, 188 (1999); *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept.*

5   *of Health & Human Res.*, 532 U.S. 598, 609 (2001) ("'It is well settled that a defendant's voluntary

6   cessation of a challenged practice does not deprive a federal court of its power to determine the

7   legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not

8   reasonably be expected to recur.'"). Indeed, prior to the filing date of this action, there is no evidence

9   that Defendant intended to, or even considered, changing its pricing scheme to be more transparent.

10  Without an injunction, Kate Spade is free to return to its deceptive false former "our price" advertising

11  of DFO Products.

12      The California Supreme Court has also recently ruled that public injunctive relief may issue

13  against Kate Spade even if no class is certified, and Plaintiffs' claims proceed only on an individual

14  basis. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 960-62 (2017) (holding that "public injunctive relief

15  remains a remedy available to private plaintiffs under the UCL and the false advertising law, as well

16  as under the CLRA"); *citing Kraus v. Trinity Mgmt. Servs., Inc.* 23 Cal. 4th 116, 121 (2000)

17  (explaining that under the UCL, not all actions "brought on behalf of absent persons by a private

18  party" had to be "certified as a class action."). Accordingly, even if the Court certifies a 23(b)(3)

19  class and declines to certify a 23(b)(2) class, a class-wide injunction can still issue under *McGill.*

20      **VI.      <u>CONCLUSION</u>**

21      For the reasons stated herein, Plaintiffs request that the Court certify the above-referenced

22  classes of consumers under Fed. R. Civ. P. 23(b)(2) or, alternatively, (b)(3).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Respectfully submitted,

2    Dated: July 7, 2017                    **BOUCHER LLP**

3

4                                           By:  /s/ Shehnaz M. Bhujwala
5                                                Raymond P. Boucher
                                                 Shehnaz M. Bhujwala
6    Dated:  July 7, 2017

7                                           **MARKUN ZUSMAN FRENIERE**
8                                           **& COMPTON LLP**

9                                           By:  /s/ David S. Markun
10                                               David S. Markun
                                                 Mark A. Ozzello
11                                               Ari Y. Basser

12

13   Dated:  July 7, 2017                   **KIESEL LAW LLP**

14

15                                          By:  /s/ Jeffrey A. Koncius
                                                 Paul R. Kiesel
                                                 Jeffrey A. Koncius
16                                               Ashley M. Conlogu

17

18   Dated:  July 7, 2017                   **WILLIAMSON LAW FIRM, LLC**

19

20                                          By:  /s/ Che' D. Williamson
                                                 Che' D. Williamson
21

22                                          *Attorneys for Plaintiffs Laura Marks, Gaylia*
                                            *Pickles, and Donna Vandiver and the putative*
23                                          *California  and Texas Classes*

24

25

26

27

28

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**

**ATTESTATION OF E-FILED SIGNATURE**

I, Mark A. Ozzello, co-counsel for Plaintiffs and the proposed classes, am the ECF

user whose ID and password are being used to file the attached PLAINTIFFS' MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION. In

compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Shehnaz M. Bhujwala, David S.

Markun, Jeffrey A. Koncius and Che' D. Williamson have concurred in this filing.


Dated: July 7, 2017

_____
Mark A. Ozzello

1

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION (Case No. 3:15-CV-05329-VC)**